Case No. 25-2935

# United States Court of Appeals for the Ninth Circuit

EPIC GAMES, INC.,

*Plaintiff–Appellee,*

*v.*

APPLE INC.,

*Defendant–Appellant.*

On Appeal from the United States District Court
for the Northern District of California (Hon. Yvonne Gonzalez Rogers)
No. 4:20-cv-05640-YGR

## EMERGENCY MOTION UNDER CIRCUIT RULE 27-3
## FOR A PARTIAL STAY PENDING APPEAL

### RELIEF REQUESTED BY MAY 28, 2025

Cynthia E. Richman
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, DC 20036
(202) 955-8500

Mark A. Perry
Zachary D. Tripp
Joshua M. Wesneski
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7511

*Counsel for Apple Inc.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, the undersigned counsel of record certifies that Apple Inc. has no parent corporation and no publicly held corporation owns 10% or more of its stock.

*/s/ Mark A. Perry*

Mark A. Perry
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7511
Mark.Perry@weil.com

May 7, 2025

# TABLE OF CONTENTS

Introduction ................................................................................................ 1

Background ................................................................................................. 5

Discussion ................................................................................................. 10

    I.    Apple Is Likely to Succeed on the Merits ....................................... 10

        A.    The New Prohibitions Are Unlawful ...................................... 10

        B.    The New Rules Constitute Impermissible Punishment ....... 17

        C.    A Conflicting State Judgment Precludes Prospective Enforcement Of The Injunction ............................................... 18

    II.    Apple Will Be Irreparably Harmed Absent a Stay .......................... 21

    III.    The Remaining Factors Favor a Stay ............................................. 23

Conclusion ................................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**                                                           **Page(s)**

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*,
    559 F.3d 1046 (9th Cir. 2009) ............................................................. 22

*Batts v. Tow-Motor Forklift Co.*,
    66 F.3d 743 (5th Cir. 1995) .................................................................. 19

*Beverage v. Apple Inc.*,
    101 Cal. App. 5th 736 (2024) ...................................................... 4, 9, 20

*Blue Diamond Cal Co. v. Trs. of UMWA Combined Ben.*
    *Fund*,
    249 F.3d 519 (6th Cir. 2001) ................................................................ 19

*Cal. Grocers Ass'n v. Bank of Am.*,
    22 Cal. App. 4th 205 (1994) ................................................................. 13

*Cedar Point Nursery v. Hassid*,
    594 U.S. 139 (2021) ........................................................................ 3, 14

*Chavez v. Whirlpool Corp.*,
    93 Cal. App. 4th 363 (2001) ................................................................. 20

*Davies v. Grossmont Union High Sch. Dist.*,
    930 F.2d 1390 (9th Cir. 1991) .............................................................. 19

*Fed. Ins. Co. v. Kingdom of Saudi Arabia* (*In re Terrorist*
    *Attacks on Sept. 11, 2001*),
    741 F.3d 353 (2d Cir. 2013) ................................................................. 19

*FTC v. Qualcomm*,
    935 F.3d 752 (9th Cir. 2019) ................................................................ 22

*Gates v. Shinn*,
    98 F.3d 463 (9th Cir. 1996) .................................................................. 11

*Goldberg v. Barreca*,
    2017 WL 3671292 (D. Nev. Aug. 24, 2017) ........................................ 24

*In re Google Play Store Antitrust Litig.*,
  2024 WL 4438249 (N.D. Cal. Oct. 7, 2024) ........................................ 14

*Growe v. Emison*,
  507 U.S. 25 (1993) .............................................................................. 21

*Guaranty Trust Co. v. York*,
  326 U.S. 99 (1945) .............................................................................. 21

*Hall v. City of Los Angeles*,
  697 F.3d 1059 (9th Cir. 2012) ............................................................ 16

*Hernandez v. Sessions*,
  872 F.3d 976 (9th Cir. 2017) .............................................................. 23

*Horne v. Flores*,
  557 U.S. 433 (2009) ............................................................................ 19

*Index Newspapers LLC v. U.S. Marshals Serv.*,
  977 F.3d 817 (9th Cir. 2020) .............................................................. 21

*Int'l Union, United Mine Workers of Am. v. Bagwell*,
  512 U.S. 821 (1994) .................................................................... 1, 4, 17

*Institute of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*
  774 F.3d 935 (9th Cir. 2014) .............................................................. 12

*Lazzareschi Inv. Co. v. S.F. Fed. Sav. & Loan Ass'n.*,
  22 Cal. App. 3d 303 (1971) ................................................................ 13

*Melendres v. Arpaio*,
  695 F.3d 990 (9th Cir. 2012) .............................................................. 24

*Moody v. Netchoice, LLC*,
  603 U.S. 707 (2024) ....................................................................... 4, 16

*NCAA v. Alston*,
  594 U.S. 69 (2021) .............................................................................. 23

*Nken v. Holder*,
  556 U.S. 418 (2009) ............................................................................ 10

*Philip Morris USA Inc. v. Scott,*
    561 U.S. 1301 (2010) (Scalia, J., in chambers)...................................23

*Pierce v. Cook & Co.,*
    518 F.2d 720 (10th Cir. 1975).........................................19, 21

*R.R. Comm'n of Tex. v. Pullman Co.,*
    312 U.S. 496 (1941)........................................................21

*Ritter v. Smith,*
    811 F.2d 1398 (11th Cir. 1987).........................................19

*Schmidt v. Lessard,*
    414 U.S. 473 (1974)........................................................12

*Taggart v. Lorenzen,*
    587 U.S. 554 (2019).............................................1, 11, 13

*Terminal R.R. Ass'n v. United States,*
    266 U.S. 17 (1924).........................................................13

*United States v. Armour & Co.,*
    402 U.S. 673 (1971)........................................................17

*United States v. Colgate & Co.,*
    250 U.S. 300 (1919)........................................................20

*United States v. DAS Corp.,*
    18 F.4th 1032 (9th Cir. 2021) .....................................11, 12

*United States v. Microsoft Corp.,*
    147 F.3d 935 (D.C. Cir. 1998) ........................................17

*United States v. United Mine Workers of Am.,*
    330 U.S. 258 (1947)......................................................4, 19

*Venoco, LLC v. Plains Pipeline, L.P.,*
    2022 WL 1090947 (9th Cir. Apr. 12, 2022) .....................19

*Young v. United States ex rel. Vuitton et Fils SA,*
    481 U.S. 787 (1987)........................................................18

*Ysleta Del Sur Pueblo v. Texas,*
   596 U.S. 695 (2022)................................................................. 15

## Statutes

28 U.S.C. § 1738 ................................................................. 19

Cal. Bus. & Prof. Code § 17200 ("UCL") ........................................ *passim*

## Other Authorities

Fed. R. Civ. P. 60(b)........................................................... 16, 17

Fed. R. Civ. P. 65(d)........................................................... 10

## INTRODUCTION

The district court's extraordinary Order includes a new injunction that permanently precludes Apple from exercising control over core aspects of its business operations, including charging for use of its property and protecting the integrity of its platform and in-app purchase mechanism. Ex. A. These restrictions, which will cost Apple substantial sums annually, are based on conduct that has never been adjudicated to be (and is not) unlawful; rather, they were imposed to punish Apple for purported non-compliance with an earlier state-law Injunction that is itself invalid.

The Order proves the wisdom of the Supreme Court's observations that the contempt power is a "severe remedy," *Taggart v. Lorenzen*, 587 U.S. 554, 560–61 (2019), that is "uniquely is 'liable to abuse,'" *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994). In its merits appeal, Apple will demonstrate that it complied with the underlying Injunction by allowing iOS app developers to convey information to users about alternative purchase options. Apple will also show that the contempt and discovery sanctions are unwarranted, and that the district court committed other reversible errors including invasion of the attorney-client privilege.

In this motion, Apple seeks a stay of the prohibitions on (1) charging any commission or fee for transactions made through external purchase

links, and (2) setting any conditions on the language or placement of links or other references to external purchase options. These new rules were not part of the original Injunction:

| Original Injunction | New Injunction |
|---|---|
| Bars Apple from: | Bars Apple from: |
| "prohibiting developers from … including in their apps and their metadata buttons, external links, or other calls to action that direct customers to purchasing mechanisms, in addition to In-App Purchasing [IAP] …." | **1. Imposing any commission or any fee on purchases that consumers make outside an app**, and as a consequence thereof, no reason exists to **audit, monitor, track or require developers to report purchases** or any other activity that consumers make outside an app;<br><br>**2. Restricting or conditioning developers'** style, **language**, formatting, quantity, **flow or placement of links for purchases outside an app**;<br><br>3. Prohibiting or limiting the use of buttons or other calls to action, or otherwise **conditioning the content**, style, **language**, formatting, **flow or placement of these devices for purchases outside an app**;<br><br>4. Excluding certain categories of apps and developers from obtaining link access;<br><br>5. Interfering with consumers' choice to proceed in or out of an app by using anything other than a neutral message apprising users that they are going to a third-party site; and<br><br>6. Restricting a developer's use of dynamic links that bring consumers to a specific product page in a logged-in state rather than to a statically defined page, including restricting apps from passing on product details, user details or other information that refers to the user intending to make a purchase. |

2

Apple is likely to succeed on the merits of its challenges to these rules, which dramatically expand the original Injunction.

First, it is unlawful to prohibit Apple from charging a commission on linked transactions. The original Injunction says nothing about commissions or pricing, and the court admitted it "did not select a rate." Order 58. The commission is also not the same conduct that formed the basis of the Injunction—the Order is targeting Apple's new practice of charging a commission on linked transactions, which did not even exist at the time of the original trial or appeal. Yet the Order permanently imposes a commission of zero on such transactions, in violation of California law— which prohibits judicial ratemaking—as well as the Takings Clause of the Constitution. *See Cedar Point Nursery v. Hassid*, 594 U.S. 139 (2021). A federal court cannot force Apple to permanently give away free access to its products and services, including intellectual property.

Second, it is unlawful to bar Apple from setting conditions for link placement and language. The Injunction says nothing about this, and Apple conditioned the language and placement of links to prevent developers from placing links within Apple's "buy flow," the digital equivalent of the checkout aisle. Allowing developers to interfere with and disparage IAP effectively

defeats IAP exclusivity—which this Court previously sustained. It also violates the First Amendment by requiring Apple to "accommodate messages it would prefer to exclude." *Moody v. Netchoice, LLC*, 603 U.S. 707, 731 (2024).

These new rules are not temporary sanctions for non-compliance that Apple can purge. Nor are they mere clarifications of the Injunction. Instead, the district court took the highly irregular step of imposing new, different, and *permanent* restrictions because, in its view, Apple "flouted the Court's order." Order 60 n.65. Even if that were true, that is punitive, but punishment cannot be imposed in civil contempt. *Bagwell*, 512 U.S. at 828. The new rules therefore violate foundational principles of due process, in addition to being substantively unlawful.

These new rules are independently invalid because the power of prospective enforcement "falls with an injunction which events prove was erroneously issued." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 295 (1947). After the Injunction here issued, the California courts rendered a judgment that Apple's same anti-steering rules are not unfair under the UCL. *Beverage v. Apple Inc.*, 101 Cal. App. 5th 736, 746–50 (2024).

The district court erred as a matter of law in prospectively enforcing the Injunction in the teeth of this conflict between state and federal judgments.

Without a stay, these extraordinary intrusions into Apple's business will cause grave irreparable harm. Depriving Apple of control over core features of the App Store is, standing alone, sufficient to warrant a stay. The new rules profoundly undercut the integrated iOS ecosystem that this Court sustained as lawful and that is the foundation of user trust and confidence in the App Store. The district court acknowledged that compliance will cost Apple "hundreds of millions to billions" of dollars annually, Order 16, which Apple can never recoup. Consumers would suffer from the destabilizing effects of the new injunction, while Epic would not be harmed by a stay. This Court should enter an immediate stay of the prohibitions highlighted in the table above.

## BACKGROUND

This is the latest chapter in Epic's largely unsuccessful effort to use competition law to change how Apple runs the App Store. In 2021, the district court rejected all of Epic's antitrust claims, finding that Apple is not a monopolist. But as relevant, the court ruled narrowly that a categorical "anti-steering" provision violated California's Unfair Competition Law, and

issued a limited Injunction prohibiting Apple from enforcing that rule. This Court affirmed in relevant part. Most recently, the district court concluded that Apple had violated the original Injunction and purported to exercise civil contempt powers to impose a brand new—and punitive—permanent injunction that fundamentally changes Apple's business.

Apple invented the iPhone, the iOS operating system, and the App Store. Oliver Decl. ¶ 2. Apple's iOS ecosystem "enables Apple to offer customers a seamless experience across Apple's products and services which are foundational to the user experience." *Id.* ¶ 3. Apple provides proprietary, intellectual property-protected tools and technologies to develop iOS apps, and monetizes these and other investments by requiring developers to pay a commission (of 15–30%) whenever they make a sale through the App Store of a "digital good or service" (*i.e.*, content within an app). *Id.* ¶¶ 4–5. Apple's IAP mechanism is a suite of services that, among other things, facilitates the purchase and sale of such in-app content. *Id.* ¶¶ 5–6.

Epic brought this lawsuit in 2020, asserting claims under the federal and state antitrust laws as well as the UCL. Ex. B, at 1. Epic's complaint primarily challenged Apple's requirements that iOS apps be distributed through the App Store and that IAP be the exclusive mechanism for

purchasing in-app content. Epic mentioned in passing Apple's anti-steering rule, which prohibited developers from including "buttons, external links, or other calls to action" encouraging users to purchase digital goods or services elsewhere, rather than using Apple's IAP. *Id.* ¶ 130.

After a bench trial, the district court rejected all of Epic's challenges to the App Store distribution and IAP exclusivity requirements. Ex. C. The court recognized that these requirements have numerous procompetitive benefits, including security, privacy, and efficiency. The court found, however, that although the anti-steering provision did not violate the antitrust laws, it was "unfair" under the UCL because it "hid[] information for consumer choice." *Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898, 1057 (N.D. Cal. 2021). The court found "a nationwide remedy to eliminate [this] provision[] [was] warranted." *Id.* at 922. The short and simple Injunction—in a standalone document—bars Apple from "prohibiting developers from [] including in their apps and their metadata buttons, external links, or other calls to action" steering users to alternatives to IAP. Ex. D, ¶ 1.

This Court issued a stay pending appeal, *Epic Games, Inc. v. Apple, Inc.*, No. 21-16506 (9th Cir. Dec. 8, 2021), ECF No. 27, and affirmed in

relevant part.  This Court upheld Apple's ability to require the exclusive use of IAP for in-app transactions, but predicted that state courts would find Apple's anti-steering provision to be unfair because it "decrease[d] consumer information."  67 F.4th 946, 966, 972, 1001 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 681 & 682 (2024).  The Court affirmed the Injunction to "prevent[] Apple from enforcing the [anti-steering] provision against any developer." *Id.*

On January 16, 2024, Apple filed a Notice of Compliance explaining its response to the Injunction.  Ex. E.  Apple eliminated its prior prohibition against in-app steering and adopted a new entitlement framework that expressly allowed developers to include buttons, links, and other calls to action steering users to purchase alternatives outside the app.  Ex. F, § 3.1.1(a); *see also* Ex. G, § 3.3.  As relevant, developers could include such content anywhere in the app so long as it did not disparage IAP and did not appear "on any page that is part of an in-app flow to merchandise or initiate a purchase using in-app purchase."  Ex. G, § 3.3.  If a user taps on a link, continues to the developer's website, and completes the transaction within the next seven days, the entitlement established a 12% or 27% commission.

Ex. G §§ 1, 4, 5.1.  That is lower than Apple's commission on IAP transactions within the app.

While acknowledging that the Injunction does not "explicitly prohibit" Apple's new framework, Epic immediately challenged it as contrary to the Injunction's "purpose" and "spirit."  Ex. H, at 17–18.  The district court made a preliminary finding that, "viewed holistically, Apple's practice changes undermine the spirit of the injunction by limiting competition, impeding the free flow of information, and constraining user choice."  Ex. I, at 3.  The court thereafter held two evidentiary hearings nearly a year apart, with extensive discovery ordered in between.

While Epic's challenge to injunction compliance was pending, the California courts held that Apple's anti-steering provision is not "unfair" under California law.  *See Beverage v. Apple Inc.*, 101 Cal. App. 5th 736 (2024).  Because the state and federal judgments conflict, Apple promptly moved to prospectively vacate the UCL judgment under Rule 60(b)(5).  Ex. J.  As explained below, however, the district court refused to accept the *Beverage* judgment that the anti-steering rule is not "unfair."

On April 30, 2025, the district court issued its Order holding Apple in civil contempt, including a new permanent injunction barring Apple from

engaging in conduct that was not adjudicated at trial or addressed by the Injunction.  Order 75–76.  Relying on Apple's internal forecasts, the court stated that these changes would cost Apple "hundreds of millions to billions" annually depending on developer implementation and consumer adoption. *Id.* at 16–17.  The district court required *immediate* compliance and preemptively denied a stay pending appeal.  *Id.* at 76.  Apple immediately complied.  Oliver Decl. ¶ 14.  Apple now seeks a partial stay pending appeal.

## DISCUSSION

This Court should immediately stay the prohibition against charging any commission on linked transactions and the prohibition against conditioning link placement or language.  The traditional factors, *see Nken v. Holder*, 556 U.S. 418, 434 (2009), all favor an immediate stay of those extraordinary intrusions into Apple's operation of the App Store pending resolution of Apple's merits appeal.

## I.    Apple Is Likely to Succeed on the Merits

### A.    The New Prohibitions Are Unlawful

Contempt is unavailable if "there is [a] *fair ground of doubt* as to the wrongfulness of the defendant's conduct," *i.e.*, if there is an "objectively reasonable basis for concluding that the [defendant's] conduct might be

lawful." *Taggart*, 587 U.S. at 557, 560 (citation omitted). The "standard is generally an *objective* one." *Id.* at 561. "When construing a judgment," this court "look[s] to the natural reading of its text." *United States v. DAS Corp.*, 18 F.4th 1032, 1040 (9th Cir. 2021) (citation omitted). "If the judgment is unambiguous, the court may not consider 'extraneous' evidence to explain it." *Id.* (citation omitted).

The district court violated those principles. The original Injunction is short and unambiguous: Apple cannot "prohibit developers" from "including … buttons, external links, or other calls to action" to IAP alternatives. Ex. D ¶ 1. The Injunction nowhere mentions a commission or the placement of links.

In concluding otherwise, the district court relied on its separate findings of fact (most of which dealt with other issues), which it called a "180-page Injunction." Order 59. That is legal error. An injunction must "describe in reasonable detail—and *not by referring to the complaint or other document*—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(C) (emphasis added); *see Gates v. Shinn*, 98 F.3d 463, 468 (9th Cir. 1996) (meaning must be found "within [injunction's] four corners"). The court's findings of fact are an "other document," so they cannot restrain new "act or

acts": "findings of fact" can be considered only to resolve ambiguity in an injunction's text, of which there is none here. *DAS*, 18 F.4th at 1041 (citation omitted). The district court dubbed this argument "ludicrous," Order 57, but that is the clear requirement of Rule 65(d) and this Court's caselaw. These "are no mere technical requirements": "basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974).

The district court additionally invoked the Injunction's "spirit," Order 61, relying on this Court's observation that a party may violate "the spirit of [an] injunction, even though its strict letter may not have been disregarded." *Institute of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 949 (9th Cir. 2014). But in that case, unlike this one, the defendant aided and abetted the same conduct that had already been enjoined as unlawful. Moreover, this Court's subsequent decisions confirm that a court may consider "extraneous evidence" only to help interpret an "ambiguous" judgment. *DAS*, 18 F.4th at 1040 (citation omitted). "[A] decree will not be expanded by implication or intendment beyond the meaning of its terms when read in the light of the issues[,] and the purpose for which the suit was

brought." *Terminal R.R. Ass'n v. United States*, 266 U.S. 17, 29 (1924).  The court erred in expanding the Injunction far beyond its terms.

### 1.    The Court Erred In Setting Apple's Prices

The Injunction does not bar Apple from charging a commission on linked transactions, which is an entirely new practice whose legality has never been adjudicated.  Moreover, the district court recognized that, "in the absence of IAP, Apple could still charge a commission on developers." *Epic Games, Inc.*, 559 F. Supp. 3d at 1042.  "In such a hypothetical world, developers could potentially avoid the commission while benefitting from Apple's innovation and intellectual property free of charge." *Id.* at 1042 n.617.  The court found that "Apple is entitled to . . . further guard against the uncompensated use of its intellectual property." *Id.* at 1042.  Given these statements, it was at least "objectively reasonable" for Apple to conclude it could charge a commission. *See Taggart*, 587 U.S. at 560.

Indeed, the Injunction *could not* have prohibited Apple's commission.  The UCL does not authorize courts to engage in overt and arbitrary rate-setting of this kind. *See Cal. Grocers Ass'n v. Bank of Am., Nat'l Tr. & Sav. Ass'n*, 22 Cal. App. 4th 205, 217–18 (1994), *review denied* (June 9, 1994); *Lazzareschi Inv. Co. v. S.F. Fed. Sav. & Loan Ass'n.*, 22 Cal. App. 3d 303, 311

(1971).  Other courts recognize that such "detailed rate-setting" is "beyond [the district court's] proper role."  *In re Google Play Store Antitrust Litig.*, 2024 WL 4438249, at *9 (N.D. Cal. Oct. 7, 2024).  Neither federal antitrust law nor the California UCL permit courts to set prices for private companies.  Yet that is exactly what the district court has done here—ordered Apple to charge nothing for its products and services, to the tune of "hundreds of millions to billions" of dollars.  Order 16.

The Takings Clause prohibits the government from directing private companies to permanently give away access to their property for free.  *See Cedar Point Nursery*, 594 U.S. at 149.  Yet the court has done just that, permanently depriving Apple of the right to exclude, which is "universally" held to be "fundamental" and "one of the most essential sticks" in the property bundle.  *Id.* at 149–50 (citations omitted).  At minimum, Apple has been deprived of its right to control access to federally protected intellectual property on terms of its choosing.  *See* Oliver Decl. ¶ 16.  At the same time, developers have been granted a permanent easement to use that valuable property—including platform technologies, software tools, engagement with the userbase, and other products and services—without having to pay for it.

14

### 2.     The Court Erred In Precluding Link Restrictions

Again, the Injunction says nothing about the placement or language of links within an app; it merely bars Apple from "prohibiting" such links. And it is well-settled that allowing something "subject to fixed rules about the time, place, and manner in which [that activity] may be conducted" does not "prohibit" it. *Ysleta Del Sur Pueblo v. Texas*, 596 U.S. 695, 697 (2022) (collecting cases). Indeed, the district court previously noted that Apple could comply by implementing reasonable "engineering or guidelines," Ex. K, at 3, and recognized in the Order that some rules are not prohibitions, Order 62 n.66. At minimum, it was objectively reasonable for Apple to conclude that it could maintain the exclusivity of IAP, including by prohibiting disparagement of IAP and placement of links in the IAP buy flow.

The district court's new ban on conditioning the language and placement of links—thus enabling disparagement of IAP and links within the IAP buy-flow—allows developers to divert customers away from IAP from within the App Store's proverbial checkout aisle, as they are already attempting to do. That degrades the integrity of the IAP mechanism, which Apple has required for in-app purchases of digital content since the advent of the App Store. Oliver Decl. ¶ 20. This Court previously sustained IAP

15

exclusivity, recognizing procompetitive benefits and holding that Apple's tie between app distribution and in-app payment was "clearly lawful." *Epic Games*, 67 F.4th at 998.  It was objectively reasonable for Apple to continue maintaining the exclusivity of IAP—including through language and placement rules—given this Court's prior mandate approving that practice. *See Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012).

Even more, the First Amendment "offers protection when an entity engaging in expressive activity . . . is directed to accommodate messages it would prefer to exclude." *Moody v. NetChoice, LLC*, 603 U.S. 707, 731 (2024). But the Order requires Apple to broadcast competing developer speech, including disparaging statements about IAP, *in the middle of the proverbial checkout aisle*.  Imagine a customer has come to a bookstore trusting its selection and curation of titles.  The Order is akin to a requirement that the store include in the checkout aisle a billboard advertising that the same books are available on the publishers' own websites, with a link to purchase them there without paying the bookstore a penny—and disparaging the bookstore's prices or services.  That is an extraordinary intrusion into property rights and a clear violation of the First Amendment. *See id.* at 729.

### B.    The New Rules Constitute Impermissible Punishment

The Order also violates bedrock due process protections.  The "specific harm alleged" and found at trial was that Apple's prior rule that banned in-app steering was unfair.  559 F. Supp. at 943–44, 1054.  Before the Injunction went into effect, Apple eliminated that prohibition and expressly allowed in-app steering.  Apple thus stopped the enjoined conduct.  Everything at issue in the contempt proceeding was new conduct never adjudged to be "unfair" under the UCL.

The district court repeatedly referred to Apple's "new anticompetitive acts."  Order 3; *see also id.* at 58, 63, 78.  But it enjoined them anyway, depriving Apple of notice and an opportunity to prove the lawfulness of those new practices.  "[F]ull litigation" is required before modifying a decree to bar new conduct.  *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971).  That is particularly true where, as here, the original Injunction was entered *sua sponte* by the district court with no adversarial hearing.  *See United States v. Microsoft Corp.*, 147 F.3d 935, 943–44 (D.C. Cir. 1998).

Civil contempt sanctions may only coerce compliance with an existing order, and not punish non-compliance.  *See Bagwell*, 512 U.S. at 826–28.  But the commission and buy-flow bans do not coerce Apple into compliance with

17

the original Injunction and there is no way for Apple to purge: They are new *permanent* and punitive sanctions that will *forever* deprive Apple of core property rights and control over its business. In a dynamic and evolving technological environment, these new rules will handcuff Apple's ability to compete in perpetuity.

These are not mere "clarifications." *See* Order 74. The Order punishes Apple with entirely new obligations that the Injunction clearly does not impose. Moreover, the district court's rationale was punitive: It dismissed Apple's statutory and constitutional arguments on the ground that "Apple flouted the Court's order." *Id.* at 60 n.65. That is improper punishment, not civil contempt. *See Young v. United States ex rel. Vuitton et Fils SA*, 481 U.S. 787 (1987). No matter how much the court disagreed with Apple's positions, it cannot unilaterally punish Apple.

## C. A Conflicting State Judgment Precludes Prospective Enforcement Of The Injunction

As an independent basis for reversal, the Injunction cannot be enforced prospectively because it is invalid as a matter of state law. Rule 60(b)(5) provides for vacatur of an injunction where "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). And the right to prospectively enforce an injunction "falls with an injunction which events prove was

18

erroneously issued." *Mine Workers*, 330 U.S. at 295; *see also Horne v. Flores*, 557 U.S. 433, 448 (2009); *Davies v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390, 1394 (9th Cir. 1991). As a matter of law, events prove the original Injunction was wrongly issued and cannot be enforced prospectively.

Specifically, relief from a judgment is warranted where, due to a subsequent development, "two cases arising out of the same transaction result in conflicting judgments." *Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743, 748 n.6 (5th Cir. 1995); *Pierce v. Cook & Co.*, 518 F.2d 720, 723 (10th Cir. 1975) (en banc)); *see also Fed. Ins. Co. v. Kingdom of Saudi Arabia* (*In re Terrorist Attacks on Sept. 11, 2001)*, 741 F.3d 353, 357 (2d Cir. 2013); *Blue Diamond Coal Co. v. Trs. of UMWA Combined Ben. Fund*, 249 F.3d 519, 525 (6th Cir. 2001); *Ritter v. Smith*, 811 F.2d 1398, 1402–03 (11th Cir. 1987). It is an abuse of discretion to deny relief when a federal judgment based on state law conflicts with a state judgment on the same state-law claim, even when the federal judgment was affirmed in an earlier appeal. *See Venoco, LLC v. Plains Pipeline, L.P.*, 2022 WL 1090947, at *2–3 (9th Cir. Apr. 12, 2022).

The district court committed legal error and abused its discretion in enforcing the Injunction prospectively notwithstanding the direct conflict

19

between the UCL judgment here and the subsequent *Beverage* judgment. The *Beverage* plaintiffs challenged Apple's same anti-steering rule under the same UCL "unfairness" prong that Epic invoked here. The state trial court rejected the claim on the merits, holding that the anti-steering provision was unilateral conduct immunized from UCL "unfairness" liability under *United States v. Colgate & Co.*, 250 U.S. 300 (1919), and *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363 (2001). *See Beverage*, 101 Cal. App. 5th at 746, 750. The Court of Appeal affirmed, and the Supreme Court denied review.

The judgment for Apple in *Beverage* directly conflicts with the judgment against Apple here. The federal judgment rests on the district court's determination that California courts would find Apple's anti-steering provisions "unfair" under the UCL. In *Beverage*, the California courts adjudicated the *exact same claim* against Apple and reached the opposite conclusion, expressly *rejecting* the federal courts' construction of state law. *See id.* at 756 n.6 ("We … do not find [the federal] decisions persuasive on the precise issue presented by this appeal.").

The district court did not even address the conflict between the judgments, instead noting that *Beverage* did not "change" California law. Order 49. But ironically, that proves Apple's point: The anti-steering rule

has *never* been "unfair" under the UCL, as Apple has maintained since day one; and the California courts have now rendered a *final judgment in favor of Apple* that the anti-steering rule is *not* unfair.

The *Erie* doctrine exists to avoid the inequity that arises if "the outcome of the litigation in the federal court" on state law is not "substantially the same" as in state court. *Guaranty Trust Co. v. York*, 326 U.S. 99, 109 (1945). Here, "[t]he outcome determination principle mandated by [*Erie*] has been violated." *Pierce*, 518 F.2d at 723. In our system of dual sovereignty, the state courts' judgment on the same state-law claim controls. *See* 28 U.S.C. § 1738; *Growe v. Emison*, 507 U.S. 25, 35–36 (1993); *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941). Apple is thus likely to succeed in establishing that the two requirements challenged here cannot be imposed as a matter of federal law.

## II. Apple Will Be Irreparably Harmed Absent a Stay

Without a stay of the challenged prohibitions, Apple will suffer serious and irreparable harm.

The district court has taken control over key portions of the App Store, barring Apple from charging a commission or setting conditions on link placement or language. That threatens lasting and irreparable harm to the

iOS ecosystem.  Oliver Decl. ¶¶ 15–20.  The Order "disrupt[s] and change[s] the whole nature of [Apple's] business," *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1058 (9th Cir. 2009), requiring "fundamental business changes" that "cannot be easily undone," *FTC v. Qualcomm*, 935 F.3d 752, 756 (9th Cir. 2019).  These new rules compromise the integrity of Apple's integrated ecosystem by giving developers unlimited free ability to interfere with IAP while encouraging consumers to use alternative purchase options within Apple's buy flow.  Oliver Decl. ¶ 20.  These requirements deprive Apple of its basic right to control the terms of access to its own intellectual property, services, and tools.  *Id.* ¶ 16.

The loss of commission revenue is also irreparable.  IAP is the primary mechanism through which Apple monetizes the App Store, enabling Apple to invest in, operate, and improve its products and services.  *Id.* ¶¶ 5, 19.  The district court recognized that Apple's projections "estimat[ed] a revenue impact of hundreds of millions to billions" from allowing links with no commission.  Order 16–17.  Even if Apple ultimately wins this appeal, Apple could not recover any losses from Epic (the sole plaintiff) because the money would benefit developers who are not parties to this suit.  Because Apple could not recoup those losses in this litigation, they constitute irreparable

harm. *See Philip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1304–05 (2010) (Scalia, J., in chambers).

"It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quotation marks and citations omitted). Apple will also suffer irreparable injury to its reputation and goodwill that it has built for decades and which is foundational to Apple's brand. Oliver Decl. ¶ 20. Apple accordingly will suffer serious irreparable harm without a stay.

## III. The Remaining Factors Favor a Stay

Epic will suffer little or no harm from a stay. It has no apps on the App Store and cannot directly benefit from the ordered changes. Ex. L, at 38. Epic never attempted to prove injury to itself or its subsidiaries from Apple's compliance framework, and the district court did not grant Epic any remedial relief for Apple's past conduct.

The public interest also favors a stay. "Judges make for poor 'central planners' and should never aspire to the role." *NCAA v. Alston*, 594 U.S. 69, 103 (2021) (citation omitted). Yet the district court has exerted control over core features of the App Store through a seriously flawed ruling. At minimum, it is in the public interest to pause those massive changes until

23

this Court has an opportunity to decide this appeal. *See Goldberg v. Barreca*, 2017 WL 3671292, at *8 (D. Nev. Aug. 24, 2017) ("[T]he public interest is best advanced by this court's restraint from meddling in private business dealings."), *aff'd*, 720 F. App'x 877 (9th Cir. 2018). And the vindication of constitutional rights is always in the public interest. *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012).

Hundreds of millions of consumers use the App Store platform. Their interests, as well as the security and privacy of the App Store, are threatened by implementing destabilizing changes before the serious questions Apple has raised are fully adjudicated. *See Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020); *Melendres*, 695 F.3d at 1002. Indeed, non-party developers are already seizing upon the Order to reduce consumer choice (and damage Apple's business) by, among other things, impeding the use of IAP. Oliver Decl. ¶¶ 17–18. These developments threaten to compromise and degrade the experience of users who trust Apple to deliver a seamless App Store experience. *Id.* ¶ 9. This will engender confusion among customers and erode the goodwill in Apple. *Id.* ¶ 20.

The district court's requirement of immediate implementation exacerbates all of these problems. This Court's intervention is urgently

warranted to avert the worst of these harms until Apple's appeal can be resolved on the merits.

## CONCLUSION

This Court should immediately stay pending appeal the rulings barring Apple from (1) charging any commission or fee on purchases made outside an app (Order 75 ¶ 1); and (2) setting conditions on language, placement or flow for buttons, links, or other calls to action (Order 75 ¶¶ 2–3).

Respectfully submitted,

|  |  |
|---|---|
|  | */s/ Mark A. Perry* |
| Cynthia E. Richman | Mark A. Perry |
| GIBSON, DUNN & CRUTCHER LLP | Zachary D. Tripp |
| 1700 M Street, N.W. | Joshua M. Wesneski |
| Washington, DC 20036 | WEIL, GOTSHAL & MANGES LLP |
| (202) 955-8500 | 2001 M Street NW, Suite 600 |
|  | Washington, DC 20036 |
|  | (202) 682-7511 |
|  | Mark.Perry@weil.com |

May 7, 2025

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record certifies that the Motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) and Circuit Rule 27-1(1)(d) because, excluding the parts of the Brief exempted by Fed. R. App. P. 27(a)(2)(B), this document contains 5,173 words.

This document complies with the typeface requirements of Fed. R. App. P. 27(d) because this document has been prepared in a proportionally spaced typeface using Century Schoolbook font in 14 point size.

*/s/ Mark A. Perry*
Mark A. Perry
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7511
Mark.Perry@weil.com

May 7, 2025

26

## INDEX OF EXHIBITS

| Exhibit | Document Description |
|---------|---------------------|
| A | Order Granting Epic's Motion to Enforce Injunction; Denying Apple's Motion to Set Aside Judgment; Denying Apple's Motion Under Fed. R. Evid. 502(d); Denying Apple's Motion for Entry of Judgment on Its Indemnification Counterclaim; and Referral to the United States Attorney Re: Criminal Contempt, D.C. Dkt. 1508 (Apr. 30, 2025) |
| B | Complaint for Injunctive Relief, D.C. Dkt. 1 (Aug. 13, 2020) |
| C | Judgment, D.C. Dkt. 814 (Sept. 10, 2021) |
| D | Permanent Injunction, D.C. Dkt. 813 (Sept. 10, 2021) |
| E | Notice of Compliance by Apple Inc., D.C. Dkt. 871 (Jan. 16, 2024) |
| F | CX-0013 —App Store Review Guidelines effective as of date of compliance |
| G | CX-0002 — StoreKit External Purchase Link Entitlement Addendum for US Apps effective as of date of compliance |
| H | Epic's Motion to Enforce Injunction, D.C. Dkt. 897 (Mar. 13, 2024) |
| I | Order Setting Evidentiary Hearing Re: Motion to Enforce Injunction, D.C. Dkt. 925 (Apr. 23, 2024) |
| J | Apple's Motion to Set Aside Judgment Under Fed. R. Civ. P. 60(b), D.C. Dkt. 1018 (Sept. 30, 2024) |
| K | Order Denying Apple's Motion to Stay Injunction Pending Appeal, D.C. Dkt. 830 (Nov. 9, 2021) |
| L | Apple's Post-Evidentiary Hearing Trial Brief, D.C. Dkt. 1324 (Mar. 7, 2025) |

## CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2025, I electronically filed the foregoing Motion to **Stay Injunction Pending Appeal** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system, which will send notification of such filing to all ACMS participants.

/s/ *Mark A. Perry*

Mark A. Perry
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7511
Mark.Perry@weil.com

May 7, 2025