# EXHIBIT J

DANIEL G. SWANSON, SBN 116556
dswanson@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

CYNTHIA E. RICHMAN (D.C. Bar No.
492089; *pro hac vice*)
crichman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Telephone: 202.955.8500
Facsimile: 202.467.0539

JULIAN W. KLEINBRODT, SBN 302085
jkleinbrodt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: 415.393.8200
Facsimile: 415.393.8306

MARK A. PERRY, SBN 212532
mark.perry@weil.com
JOSHUA M. WESNESKI (D.C. Bar No.
1500231; *pro hac vice*)
joshua.wesneski@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Telephone: 202.682.7000
Facsimile: 202.857.0940

Attorneys for Defendant APPLE INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC.<br><br>      Plaintiff, Counter-defendant<br><br>v.<br><br>APPLE INC.,<br><br>      Defendant, Counterclaimant | Case No. 4:20-cv-05640-YGR<br><br>**APPLE INC.'S MOTION FOR RELIEF FROM THE JUDGMENT UNDER FEDERAL RULE 60(B)**<br><br>The Honorable Yvonne Gonzalez Rogers<br>Hearing Date: November 12, 2024 (noticed date)<br>Hearing Time: 2:00pm PST<br>Courtroom 1, 4th Floor |

**NOTICE OF MOTION**

**TO ALL PARTIES HEREIN AND THEIR ATTORNEYS OF RECORD**

PLEASE TAKE NOTICE THAT on Tuesday, November 12, 2024 at 2:00pm PST, or as soon thereafter as the matter may be heard by the Court, at the courtroom of the Honorable Yvonne Gonzalez Rogers, Courtroom 1 – 4th Floor, United States District Court, 1301 Clay Street, Oakland, California, Apple Inc. ("Apple") will and hereby does move that this Court provide relief under Federal Rule of Civil Procedure 60(b)(5) from the judgment, and enter an order vacating or narrowing the injunction entered on September 10, 2021 ("Injunction"). *See* Dkt. No. 813.

This motion is based on this notice and supporting memorandum, the trial record, the appellate record, intervening decisions from the California Sixth District Court of Appeal and U.S. Supreme Court, and other information of which the Court may take judicial notice. The parties met and conferred, and were not able to resolve the issues without motion practice.

Dated: September 30, 2024

Respectfully submitted,

By: */s/ Mark A. Perry*
Mark A. Perry
WEIL, GOTSHAL & MANGES LLP

Attorney for Apple Inc.

1

**TABLE OF CONTENTS**

2

**Page**

3 Introduction .................................................................................................................. 1

Background .................................................................................................................. 2

4
    A.   *Epic v. Apple* ................................................................................................ 2

5
    B.   *Beverage v. Apple* ........................................................................................ 4

6
    C.   *Murthy v. Missouri* ...................................................................................... 6

7 Legal Standard ............................................................................................................ 6

8 Argument .................................................................................................................... 8

  I.   *Beverage* and *Murthy* establish that the Injunction is unlawful ......................... 8

9
    A.   *Beverage* establishes that the UCL ruling is incorrect as a matter of state law ................. 8

10
    B.   *Murthy* clarifies that Epic lacks Article III standing to seek nationwide injunctive relief

11
        running to third-party developers ...................................................................... 11

12
        1.   *Murthy* clarifies the "tall order" of establishing a future injury that depends on
            the conduct of independent third parties .................................................. 12

13
        2.   *Murthy*'s demands are not satisfied as to the Injunction of Apple's conduct
14
            toward third-party developers ................................................................. 13

15
  II.  In light of *Beverage* and *Murthy*, it is no longer equitable to continue enjoining Apple from
      imposing anti-steering rules ............................................................................. 15

16
    A.   The *Beverage* decisions warrant vacating the Injunction ............................... 16

17
    B.   At a minimum, *Beverage* and *Murthy* together warrant narrowing the Injunction to
        apply solely to Epic and its affiliates ................................................................. 18

18
        1.   Article III, comity, and federalism concerns strongly support narrowing the
19
            Injunction .......................................................................................... 18

20
        2.   The equities favor narrowing the Injunction ........................................... 22

Conclusion ................................................................................................................ 24

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**                                                                       **Page(s)**

*245 Park Member LLC v. HNA Grp. (Int'i),*
  674 F. Supp. 3d 28 (S.D.N.Y. 2023) ........................................................................23

*Agostini v. Felton,*
  521 U.S. 203 (1997) .............................................................................. 6, 7, 15, 20

*Allergan, Inc. v. Athena Cosms., Inc.,*
  738 F.3d 1350 (Fed. Cir. 2013).............................................................................19

*Artec Grp. v. Klimov,*
  No. 15-cv-03449-EMC, 2017 WL 5625934 (N.D. Cal. Nov. 22, 2017).........................7

*Asencio v. Miller Brewing Co.,*
  283 F. App'x 559 (9th Cir. 2008)..........................................................................8, 9

*Associated Builders & Contractors v. Michigan Dep't of Lab. & Econ. Growth,*
  543 F.3d 275 (6th Cir. 2008) ...........................................................................13, 23

*Bellevue Manor Assocs. v. United States,*
  165 F.3d 1249 (9th Cir. 1999).............................................................................6, 22

*Beverage v. Apple Inc.,*
  101 Cal. App. 5th 736 (2024).........................................................................*passim*

*Beverage v. Apple Inc.,*
  No. S285154 (Cal. May 29, 2024) ............................................................................5

*Burnthorne-Martinez v. Sephora USA, Inc.,*
  No. 16-cv-02843-YGR, 2016 WL 6892721 (N.D. Cal. Nov. 23, 2016) ........................21

*Bynoe v. Baca,*
  966 F.3d 972 (9th Cir. 2020)............................................................................15, 18

*California ex rel. Becerra v. EPA,*
  978 F.3d 708 (9th Cir. 2020)...............................................................1, 7, 15, 16, 18

*Cameron v. Apple Inc.,*
  No. 19-cv-3074-YGR (N.D. Cal. Nov. 16, 2021).....................................................3, 15

*Chavez v. Whirlpool Corp.,*
  93 Cal. App. 4th 363 (2001) ...........................................................................*passim*

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) ...............................................................................................12

*Doe v. Briley,*
  562 F.3d 777 (6th Cir. 2009).....................................................................................7

*Flores v. Huppenthal*,
    789 F.3d 994 (9th Cir. 2015)...........................................................................................21

*Georgia v. President of the U.S.*,
    46 F.4th 1283 (11th Cir. 2022).......................................................................................19

*Gibson v. Berryhill*,
    411 U.S. 564 (1973) .......................................................................................................16

*Gill v. Whitford*,
    585 U.S. 48 (2018) .........................................................................................................18

*Gondeck v. Pan Am. World Airways, Inc.*,
    382 U.S. 25 (1965) .........................................................................................................17

*Growe v. Emison*,
    507 U.S. 25 (1993) .........................................................................................................16

*Guillen v. Bank of Am. Corp.*,
    No. 5:10-cv-05825-EJD, 2011 WL 4071996 (N.D. Cal. Aug. 31, 2011).......................21

*Hawaii v. Office of Hawaiian Affs.*,
    556 U.S. 163 (2009) .......................................................................................................19

*Hegler v. Borg*,
    50 F.3d 1472 (9th Cir. 1995)...........................................................................................12

*Henson v. Fid. Nat'l Fin., Inc.*,
    943 F.3d 434 (9th Cir. 2019)...........................................................................................17

*Herrera v. Zumiez, Inc.*,
    953 F.3d 1063 (9th Cir. 2020)...........................................................................................9

*Horne v. Flores*,
    557 U.S. 433 (2009) ...................................................................................................7, 22

*Keegan v. Grant Cnty. Pub. Util. Dist. No. 2*,
    661 P.2d 146 (Wash. Ct. App. 1983)................................................................................9

*Keith v. Volpe*,
    118 F.3d 1386 (9th Cir. 1997)..........................................................................................16

*Killgore v. SpecPro Pro. Servs., LLC*,
    51 F.4th 973 (9th Cir. 2022) .............................................................................................8

*L.A. Haven Hospice, Inc. v. Sebelius*,
    638 F.3d 644 (9th Cir. 2011)............................................................................................21

*Levin v. Com. Energy, Inc.*,
    560 U.S. 413 (2010) ............................................................................................18, 19, 20

*Marroquin v. City of Los Angeles,*
  112 F.4th 1204 (9th Cir. 2024)........................................................................6

*Monsanto Co. v. Spray-Rite Serv. Corp.,*
  465 U.S. 752 (1984) ....................................................................................11

*Missouri v. Biden,*
  83 F.4th 350 (5th Cir. 2023), *rev'd,* 144 S. Ct. 1972 (2024) ........................13

*Murthy v. Missouri,*
  144 S. Ct. 1972 (2024)..........................................................................*passim*

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.,*
  555 U.S. 438 (2009) ................................................................................3, 23

*Pierce v. Cook & Co.,*
  518 F.2d 720 (10th Cir. 1975)......................................................................17

*Poublon v. C.H. Robinson Co.,*
  846 F.3d 1251 (9th Cir. 2017).........................................................................9

*Pyramid Lake Paiute Tribe of Indians v. Hodel,*
  882 F.2d 364 (9th Cir. 1989).........................................................................20

*Richardson v. United States,*
  841 F.2d 993 (9th Cir. 1988)............................................................ 1, 8, 9, 21

*Rogers v. Lyft, Inc.,*
  452 F. Supp. 3d 904 (N.D. Cal. 2020)......................................................21, 22

*Royal Crown Ins. Corp. v. Northern Mariana Islands,*
  447 F. App'x 760 (9th Cir. 2011)...................................................................10

*Rufo v. Inmates of Suffolk Cnty. Jail,*
  502 U.S. 367 (1992) ................................................................................ 7, 16

*Ryman v. Sears, Roebuck & Co.,*
  505 F.3d 993 (9th Cir. 2007)...........................................................................9

*S. Or. Barter Fair v. Jackson County,*
  372 F.3d 1128 (9th Cir. 2004).................................................................... 1, 13

*State Farm Fire & Cas. Co. v. Abraio,*
  874 F.2d 619 (9th Cir. 1989)...........................................................................9

*Stephan v. Dowdle,*
  733 F.2d 642 (9th Cir. 1984)...........................................................................9

*Summers v. Earth Island Inst.,*
  555 U.S. 488 (2009) .......................................................................... 2, 18, 22

*Sweeton v. Brown*,
27 F.3d 1162 (6th Cir. 1994)........................................................................................7

*Syst. Fed'n No. 91, Ry. Emps. Dep't v. Wright*,
364 U.S. 642 (1961) .....................................................................................................7

*In re Terrorist Attacks on Sept. 11, 2001*,
741 F.3d 353 (2d Cir. 2013)............................................................................... 17, 20

*The Jeanery, Inc. v. James Jeans, Inc.*,
849 F. 2d 1148 (9th Cir 1988)...................................................................................11

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ...................................................................................................18

*United States v. AMC Ent., Inc.*,
549 F.3d 760 (9th Cir. 2008)............................................................................... 19, 21

*United States v. Harris*,
531 F.3d 507 (7th Cir. 2008).......................................................................................7

*United States v. Holtzman*,
762 F.2d 720 (9th Cir. 1985)......................................................................................23

*United States v. Sineneng-Smith*,
590 U.S. 371(2020) ....................................................................................................14

*United States v. Texas*,
599 U.S. 670 (2023) ...................................................................................................19

*Venoco, LLC v. Plains Pipeline, L.P.*,
No. 21-55193, 2022 WL 1090947 (9th Cir. Apr. 12, 2022)........................ 2, 16, 17, 19

*Verde Media Corp. v. Levi*,
No. 14-cv-00891-YGR, 2015 WL 2379564 (N.D. Cal. May 18, 2015)........................19

*Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko, LLP*,
540 U.S. 398 (2004) ...............................................................................................3, 23

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)...................................................................................................20

*York v. Starbucks Corp.*,
No. 08-cv-07919 GAF PJWX, 2011 WL 4597489 (C.D. Cal. Aug. 5, 2011)..................8

*Zogenix, Inc. v. Fed. Ins. Co.*,
No. 4:20-CV-06578-YGR, 2022 WL 3908529 (N.D. Cal. May 26, 2022)......................9

**Constitution & Statutes**

15 U.S.C. § 1.................................................................................................................2

28 U.S.C. 1738 .................................................................................................................. 16

U.S. Const. Art. III, § 2, cl. 1 ........................................................................................... 12

U.S. Const. Amend. X ...................................................................................................... 16

Cal. Bus. & Prof. Code § 16700 *et seq.* ........................................................................... 2

Cal. Bus. & Prof. Code § 17200 *et seq.* .................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 60(b)(5) ............................................................................................. *passim*

Fed. R. Civ. P. 60(b)(6) ................................................................... 1, 15, 16, 17, 19

Restatement (Second) of Judgments § 28 (1982). ......................................................... 20

Restatement (Second) of Judgments § 29 (1982). ......................................................... 20

**INTRODUCTION**

Federal Rule of Civil Procedure 60(b)(5) authorizes a court to relieve a party from a judgment when "applying it prospectively is no longer equitable." Apple respectfully submits that two recent developments make it no longer equitable to continue applying the Injunction prospectively. At a minimum, they warrant narrowing the Injunction so that it applies solely to Epic and its corporate affiliates. First, the California courts have held that Apple's enjoined anti-steering rules are not "unfair" under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*. *Beverage v. Apple Inc.*, 101 Cal. App. 5th 736 (2024), *review denied* (July 10, 2024). Second, the U.S. Supreme Court has emphasized the need for "specific causation findings" based on "specific evidence" to prove Article III standing for injunctive relief where the plaintiff's injury depends on the future conduct of independent third parties. *Murthy v. Missouri*, 144 S. Ct. 1972, 1987, 1991 n.7 (2024).

*Beverage* and *Murthy* were not available to this Court when it entered the Injunction or to the Ninth Circuit when it affirmed, but they show that the Injunction rests on two errors. First, under *Beverage*, Apple's anti-steering rules do not violate California's UCL. "In a case governed by state law, a federal court is not free to disregard an intervening decision of a state appellate court, even if it requires a reexamination of the law of the case" following appellate review. *Richardson v. United States*, 841 F.2d 993, 1000 (9th Cir. 1988). Second, under the standing analysis set forth in *Murthy*, there is no basis under Article III to enjoin Apple's conduct towards third-party developers. This Court must follow *Murthy* because it is an intervening decision of the Supreme Court that provides "clarifi[cation]" and "important guidance" on a threshold constitutional issue. *S. Or. Barter Fair v. Jackson County*, 372 F.3d 1128, 1136, 1137 (9th Cir. 2004).

*Beverage* warrants vacating this Court's Injunction because it directly contravenes the UCL rulings made by this Court and the Ninth Circuit. "[W]hen a district court reviews an injunction based solely on law that has since been altered to permit what was previously forbidden, it is an abuse of discretion to refuse to modify the injunction in the light of the changed law." *California ex rel. Becerra v. EPA*, 978 F.3d 708, 718–19 (9th Cir. 2020). For example, the Ninth Circuit has held that a district court abused its discretion in declining to grant relief under Rule 60(b)(6)—even after a prior Ninth Circuit affirmance—when a California appellate court disagreed and reached the opposite conclusion in

an intervening decision applying the same "doctrine to the same defendant on the basis of virtually identical facts." *Venoco, LLC v. Plains Pipeline, L.P.*, No. 21-55193, 2022 WL 1090947, at *3 (9th Cir. Apr. 12, 2022). That is what happened here.

At a minimum, *Beverage* and *Murthy* together establish that this Court should narrow the Injunction to apply solely to Epic and its affiliates. Enforcing an injunction that runs to others without the requisite showings of traceability and redressability exceeds the "proper—and properly limited—role of the courts in a democratic society." *Summers v. Earth Island Inst.*, 555 U.S. 488, 492–93 (2009) (citation omitted). The Injunction also raises acute comity and federalism concerns: It indefinitely enjoins conduct that the California courts have now held is lawful, it exports that incorrect legal ruling nationwide, and it effectively overrides *Beverage* by providing non-party developers with state-law relief that *Beverage* would foreclose if those same developers brought their own actions against Apple, even though Epic never sought to certify a class. Narrowing the Injunction to Epic and its affiliates would significantly ease those concerns.

Apple respectfully submits that the intervening decisions in *Beverage* and *Murthy* warrant relief from the UCL judgment, and an order vacating or, in the alternative, narrowing the Injunction.

## BACKGROUND

### A.  *Epic v. Apple*

Epic filed this lawsuit in August 2020. After a bench trial, the Court entered judgment rejecting Epic's claims under the federal Sherman Act, 15 U.S.C. § 1, and the California Cartwright Act, Cal. Bus. & Prof. Code § 16700 *et seq*. The Court also exercised its supplemental jurisdiction to hold that Apple's anti-steering rules were "unfair" under the California UCL. Dkt. No. 812 ("Rule 52 Order"), at 161–66. The Court rejected Apple's argument that the legality of its rules under the antitrust laws precluded analogous UCL "unfairness" claims. *See id.* at 162 n.631 (discussing *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001)); Dkt. No. 779-1 ¶¶ 609–12 (relying on *Chavez*).

Although Epic never sought class certification and opted out of a then-pending developer class action, the Court enjoined Apple from applying its then-existing anti-steering rules to any developer nationwide. *See* Dkt. No. 813 ¶ 1. Specifically, the Court enjoined Apple from "prohibiting developers from … including in their apps and their metadata buttons, external links, or other calls to action that

direct customers to purchasing mechanisms" other than Apple's own In-App Purchase System ("IAP"). *Id.* ¶ 1(i).[1]

Apple moved for a stay of the Injunction arguing, among other things, that Epic lacked Article III standing. *See* Dkt. No. 821, at 14. Epic opposed, contending that Apple's anti-steering rules maintained supracompetitive commissions, which indirectly reduced Epic's royalties earned for its *Unreal Engine* software that it licenses to developers. *See* Dkt. No 824, at 13; Dkt. No. 835, at 7:2–13. Relying on that representation about *Unreal Engine* royalties, this Court denied the motion. *See* Dkt. No. 830, at 2. The Ninth Circuit stayed the Injunction pending appeal. C.A. Dkt. No. 27.

The Ninth Circuit affirmed this Court's rejection of Epic's claims under the Sherman Act. *See Epic Games, Inc. v. Apple Inc.*, 67 F.4th 946, 966 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 681 (2024). Epic did not appeal the rejection of its Cartwright Act claims.

Apple cross-appealed the UCL Injunction. Apple argued that this Court's Article III holding was premised on misrepresentations by Epic about its *Unreal Engine* royalties. The evidence established that those royalties depend on gross sales, not net profits after commission, so Apple's commission did not affect them. C.A. Dkt. No. 93, at 103–04. On the merits, Apple argued, among other things, that the UCL claim failed as a matter of law under *Chavez* because the same conduct had been held not to violate the antitrust laws. *Id.* at 105. And Apple argued, among other things, that its anti-steering rules were unilateral conduct protected under established antitrust principles. *See* C.A. Dkt. 183, at 10–11 (citing *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 448 n.2, 457 (2009), and *Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 415–16 (2004)).

Epic did not defend its prior representations regarding the *Unreal Engine* license structure. Epic instead argued for the first time that "marketplace dynamics" supported standing, contending that, "[i]f *Unreal Engine* developers could inform their customers that out-of-app purchases are available at lower rates than in-app purchases through IAP, consumers would have the choice to seek the better deal." C.A. Dkt. No. 163, at 90.

---

[1] This Court also enjoined Apple from prohibiting certain out-of-app steering communications. Dkt. No. 813 ¶ 1(ii). Apple ceased prohibiting those communications as part of the developer class-action settlement in *Cameron v. Apple Inc.*, No. 19-cv-3074-YGR (N.D. Cal. Nov. 16, 2021), Dkt. 453.

The Ninth Circuit affirmed. First, the Court held that Epic had Article III standing, albeit on different grounds from this Court. The Ninth Circuit found that Epic has subsidiaries on the App Store and that any loss of profits by those subsidiaries indirectly harms Epic. 67 F.4th at 1000. The Ninth Circuit next found that Apple's anti-steering rules indirectly injured Epic in its capacity as "a competing game distributor through the Epic Games Store." *Id.* The Court reasoned that, "[i]f consumers can learn about lower app prices, which are made possible by developers' lower costs, and have the ability to substitute to the platform with those lower prices, they will do so—increasing the revenue that the Epic Games Store generates." *Id.* Epic had never mentioned harm via the Epic Games Store as a basis for standing. Neither Epic nor the Ninth Circuit cited specific evidence or findings showing that developers would in fact face lower costs because of the Injunction, would pass on those lower costs to users, or would direct users to the Epic Games Store specifically (instead of to their own websites or another platform). *See* C.A. Dkt. No. 163, at 87–91; *Epic Games*, 67 F.4th at 1003. The Ninth Circuit held that the nationwide remedy was appropriate because it was tied to Epic's alleged injuries. *Epic Games*, 67 F.4th at 1003.

Second, the Ninth Circuit affirmed this Court's determination that Apple's anti-steering rules violate the UCL as "unfair." The Ninth Circuit held that Epic's failure to prove its antitrust claims did not involve a "categorical legal bar" that would provide a "safe harbor" under *Chavez. Id.* at 1001 (emphasis omitted).

The Ninth Circuit denied the parties' petitions for rehearing, and the Supreme Court denied their petitions for certiorari. The Injunction took effect on January 16, 2024. Apple removed the anti-steering rules from its App Store Review Guidelines applicable to apps on the U.S. storefronts of the iOS and iPadOS App Stores. *See* Dkt. No. 871.

## B.   *Beverage v. Apple*

In *Beverage*, consumers of Epic's *Fortnite* game filed a putative class action against Apple in California state court. They alleged that Apple's rules—including the same anti-steering rules enjoined here—violated the Cartwright Act as well as the UCL. After this Court entered its Injunction but before the Ninth Circuit decision, the California trial court dismissed the *Beverage* complaint for failure to state a claim. It ruled that (1) Apple's anti-steering rules were protected under *Colgate* as a unilateral refusal

1   to deal; and (2) under *Chavez*, such unilateral conduct is not actionable under the UCL as "unfair." *See*

2   *Beverage*, 101 Cal. App. 5th at 746. On appeal, the *Beverage* plaintiffs challenged that second ruling,

3   contending that *Chavez* was wrongly decided and that the Sixth District Court of Appeal should follow

4   the UCL "unfairness" decisions of this Court and the Ninth Circuit. *Id.* at 753–756 & n.6.

5        The Sixth District Court of Appeal affirmed, squarely rejecting that argument. *Id.* The Court of

6   Appeal held that "the *Colgate* doctrine provides Apple with a 'safe harbor' against Plaintiffs' UCL claim

7   under the 'unfair' prong." *Id.* at 755. The court explained that the Cartwright Act is narrower than the

8   Sherman Act: The Cartwright Act does not reach every "contract"; instead, it "prohibit[s] only

9   anticompetitive conduct by two or more entities in conspiracy or in combination." *Id.* at 754.

10   Accordingly, the court explained, the California legislature affirmatively decided to preclude liability

11   for "a claim describing only a unilateral refusal to deal without alleging a corresponding illegal

12   conspiracy or combination." *Id.* at 749–50. The *Beverage* court further observed that the legislature had

13   amended the Cartwright Act since *Chavez* and since the California courts had adopted *Colgate*, but had

14   not overruled those decisions. *Id.* at 754. Accordingly, the court concluded, the California legislature

15   intended to protect unilateral refusals to deal: It had "considered [the] situation and concluded no action

16   should lie." *Id.* at 753–54 (emphasis omitted) (citation omitted).

17        Notably, the *Beverage* trial and appellate courts expressly declined to follow the determinations

18   in this case that Apple's anti-steering rules are unfair. *See id.* at 756 n.6; Perry Decl., Ex. 1 ("*Beverage*

19   *First Trial Court Order*"), at 14 n.7. The Court of Appeal found the *Epic* decisions not "persuasive on

20   the precise issue presented by this appeal" because they mentioned *Chavez* "only in passing" and did not

21   "engage[ ] a rigorous analysis of the *Colgate* doctrine and its effect on UCL claims." *Beverage*, 101 Cal.

22   App. 5th at 756 n.6.

23        The plaintiffs timely sought California Supreme Court review, arguing that the California

24   Supreme Court should instead follow the *Epic* decisions. *See* Petition for Review, *Beverage v. Apple*

25   *Inc.*, No. S285154, at 8 (Cal. May 29, 2024) (emphasizing that the Court of Appeal "decline[d] to follow

26   recent federal decisions involving *exactly the same facts* as the current case"). On July 10, 2024, the

27   California Supreme Court denied the petition for review. Perry Decl., Ex. 4. The Court of Appeal entered

28   remittitur on August 26, 2024, ending the case. Perry Decl., Ex. 5.

**C.    *Murthy v. Missouri***

On June 26, 2024, the U.S. Supreme Court decided *Murthy*. In *Murthy*, plaintiffs sued members of the Biden Administration, claiming they unlawfully pressured social media platforms to suppress "misinformation." 144 S. Ct. at 1981. The district court issued a nationwide preliminary injunction, restricting the government officials from communicating with platforms to suppress protected content. *Id.* at 1984. The Fifth Circuit affirmed in relevant part. *See id*.

The Supreme Court vacated for lack of Article III standing. The Supreme Court emphasized that the plaintiffs' claims of injury depended on how independent third parties (social media platforms) would respond to future pressure by government officials. That "one-step-removed, anticipatory nature of [their] alleged injuries" made proving standing a "tall order." *Id.* at 1986. To avoid "guesswork as to how independent decisionmakers will exercise their judgment," the plaintiffs in *Murthy* were required to establish "a substantial risk that, in the near future, at least one platform will restrict the speech of at least one plaintiff in response to the actions of at least one Government defendant." *Id.* (citation omitted).

The Court faulted the Fifth Circuit for "approach[ing] standing at a high level of generality." *Id.* at 1987. It then methodically addressed the standing of each plaintiff, finding a "lack of specific causation findings" and a lack of "specific facts" to connect each step of the causal chain on traceability and redressability. *Id.* at 1987, 1989–96 & n.7.

### LEGAL STANDARD

Under Rule 60(b)(5), a district court may relieve a party from a judgment when "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). That Rule "codifies the courts' traditional authority, inherent in the jurisdiction of the chancery, to modify or vacate the prospective effect of their decrees." *Bellevue Manor Assocs. v. United States*, 165 F.3d 1249, 1252 (9th Cir. 1999) (internal quotation marks omitted). "'Rule 60(b)(5) is routinely used to challenge the continued validity of consent decrees' and 'injunction[s].'" *Marroquin v. City of Los Angeles*, 112 F.4th 1204, 1217 (9th Cir. 2024) (quoting *Bellevue Manor*, 165 F.3d at 1253).

Rule 60(b)(5) relief is warranted when "the party seeking relief from an injunction or consent decree can show 'a significant change either in factual conditions or in law.'" *Agostini v. Felton*, 521 U.S. 203, 215 (1997) (citation omitted). "[T]he passage of time frequently brings about changed

circumstances—changes in the nature of the underlying problem, changes in governing law or its interpretation by the courts, and new policy insights—that warrant reexamination of [an] original judgment." *Horne v. Flores*, 557 U.S. 433, 447 (2009); *see also Sys. Fed'n No. 91, Ry. Emps. Dep' v. Wright*, 364 U.S. 642, 650 n.6 (1961) ("There are many cases where a mere change in decisional law has been held to justify modification of an outstanding injunction.").

A change in decisional law qualifies as "significant" when it "undermine[s] the assumptions" or "erode[s]" the basis for the original order, even when it leaves the legal framework "largely unchanged." *Agostini*, 521 U.S. at 218, 222–23. Courts have likewise relieved a party from a judgment under Rule 60(b)(5) based on legal developments, "clarifications" of the law, and "continuing trends" in Supreme Court cases. *See Doe v. Briley*, 562 F.3d 777, 779 (6th Cir. 2009) (affirming vacatur of consent decree when "subsequent caselaw has swept away the decree's constitutional foundation"); *United States v. Harris*, 531 F.3d 507, 513 (7th Cir. 2008) (relief warranted if there is "change in, or clarification of, law that makes clear that the earlier ruling was erroneous"); *Sweeton v. Brown*, 27 F.3d 1162, 1166–67 (6th Cir. 1994) ("Ongoing injunctions should be dissolved when they no longer meet the requirements of equity. The law changes and clarifies itself over time. Neither the doctrines of *res judicata* or waiver nor a proper respect for previously entered judgments requires that old injunctions remain in effect when the old law on which they were based has changed."); *cf. Artec Grp. Inc. v. Klimov*, No. 15-cv-03449-EMC, 2017 WL 5625934, at *3 (N.D. Cal. Nov. 22, 2017) (reconsidering order on motion to dismiss for lack of personal jurisdiction based on "a continuing trend in Supreme Court authority"). Even for a consent decree, modification may be warranted "when … decisional law has changed to make legal what the decree was designed to prevent." *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 388 (1992). And when no consent decree is involved, a court must modify the injunction "in light … of the changed law" when the injunction is "based solely on law that has since been altered to permit what was previously forbidden." *EPA*, 978 F.3d at 718–19.

**ARGUMENT**

**I.   *BEVERAGE* AND *MURTHY* ESTABLISH THAT THE INJUNCTION IS UNLAWFUL**

    **A.   *Beverage* establishes that the UCL ruling is incorrect as a matter of state law**

This Court addressed whether Apple's anti-steering rules were "unfair" under the UCL without the benefit of any state court decision addressing that issue. It therefore was required to "predict how the highest state court would decide the state law issue." *Killgore v. SpecPro Pro. Servs., LLC*, 51 F.4th 973, 982 (9th Cir. 2022). This Court found that Apple's rules were "unfair" and that *Chavez* "does not counsel otherwise," and it enjoined Apple from enforcing those rules against any developer nationwide. Rule 52 Order 162 n.631, 168.

The *Beverage* decisions now settle the same question of California law underlying the Injunction, and they reach the opposite conclusion: Under *Beverage*, the conclusive determination of the California courts is that Apple's anti-steering rules are not "unfair" under the UCL. *Beverage*, 101 Cal. App. 5th at 755–56. This is not simply an intervening development or clarification on a general point of law—it is state-law precedent evaluating the *same* conduct by the *same* defendant under the *same* state law. *Beverage* is now the authoritative state-law pronouncement on the exact UCL issue in this case.

"In a case governed by state law, a federal court is not free to disregard an intervening decision of a state appellate court, even if it requires a reexamination of the law of the case"—including when the Ninth Circuit has previously affirmed. *Richardson*, 841 F.2d at 1000; *see also Asencio v. Miller Brewing Co.*, 283 F. App'x 559, 561 (9th Cir. 2008) ("An exception to the law of the case doctrine allows the district court sitting in diversity to reexamine the previously decided issue when 'there has been a dispositive intervening decision of an intermediate appellate state court.'" (quoting *Richardson*, 841 F.2d at 996)); *York v. Starbucks Corp.*, No. 08-cv-07919 GAF PJWX, 2011 WL 4597489, at *2 (C.D. Cal. Aug. 5, 2011) (similar). For example, in *Richardson*, the district court applied the state-law legal standard articulated by the Ninth Circuit in a prior published decision in the case rather than following the intervening decision of an intermediate state appellate court coming out the other way. 841 F.2d at 994–95. The Ninth Circuit reversed, holding that the state court's disagreement "with the Ninth Circuit's analysis" on the same state-law issue required the district court to depart from the law of the case. *Richardson*, 841 F.2d at 996–97. Notably, the Ninth Circuit found the intervening decision sufficient to

---

1  depart from law of the case even though the state appellate court applied a state-law standard that had

2  been "consistently followed by [Washington] courts," *Keegan v. Grant Cnty. Pub. Util. Dist. No. 2*, 661

3  P.2d 146, 150 (Wash. Ct. App. 1983), without changing the legal standard. *See Richardson*, 841 F.2d at

4  997; *see also Stephan v. Dowdle*, 733 F.2d 642, 642 (9th Cir. 1984) (district court was required to follow

5  intermediate state appellate court that reached "opposite conclusion" of Ninth Circuit on state law);

6  *Asencio*, 283 F. App'x at 561 (affirming district court decision that followed intervening California

7  intermediate appellate decision rather than prior Ninth Circuit decision).

8  Consistent with *Richardson* and other precedent, the law of the case doctrine is no barrier to

9  revisiting the Injunction in light of *Beverage*. As in *Richardson*, the *Beverage* appellate court followed

10  a longstanding doctrine of state law (*Chavez*), but expressly departed from the Ninth Circuit's state-law

11  analysis. Accordingly, this Court must follow the *Beverage* appellate decision unless there is

12  "convincing evidence that the state's supreme court likely would not follow it." *Ryman v. Sears, Roebuck*

13  *& Co.*, 505 F.3d 993, 994 (9th Cir. 2007). No such evidence exists. To the contrary, the California

14  Supreme Court denied a petition for review in *Beverage*, and "the importance of relying on a state

15  appellate court's ruling is heightened when 'the highest court has refused to review the lower court's

16  decision.'" *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1266–67 (9th Cir. 2017) (citation omitted);

17  *see also Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1069–70 (9th Cir. 2020) (similar); *State Farm Fire &*

18  *Cas. Co. v. Abraio*, 874 F.2d 619, 622 (9th Cir. 1989) (similar); *Zogenix, Inc. v. Fed. Ins. Co.*, No. 4:20-

19  CV-06578-YGR, 2022 WL 3908529, at *7 n.4 (N.D. Cal. May 26, 2022) (state intermediate appellate

20  decision was "binding" where facts were "analogous," the decision was the "only California state law

21  decision to decide this issue," and the California Supreme Court denied the petition for review).

22  The *Beverage* appellate decision also identified a critical missing link in the UCL analysis in

23  *Epic*, warranting reexamination of the Injunction. As noted, the California Court of Appeal declined to

24  follow the *Epic* decisions because the federal courts mentioned *Chavez* "only in passing" and did not

25  "engage[ ] a rigorous analysis of the *Colgate* doctrine and its effect on UCL claims." *Beverage*, 101 Cal.

26  App. 5th at 756 n.6. The *Beverage* appellate decision thus clarifies that Apple's anti-steering rules cannot

27  be enjoined under the UCL without a "rigorous analysis" of whether those rules are protected as

28  unilateral conduct under *Colgate*. *Id.*

---

1    The previous *Epic* decisions did not address whether Apple's anti-steering rules were such

2  unilateral conduct. As the *Beverage* trial and appellate courts noted, that dispositive legal question has

3  never explicitly been resolved in this litigation. *See* 101 Cal. App. 5th at 756 n.6; *Beverage* First Trial

4  Court Order 14 n.7. Epic specifically challenged only two provisions in the Apple Developer Program

5  License Agreement (DPLA): one requiring developers to distribute iOS apps only through the App Store

6  and the other requiring developers to use IAP for in-app purchases of digital goods and services. *See*

7  Rule 52 Order 3, 141–42. In its Sherman Act ruling, this Court concluded that the DPLA was unilateral

8  conduct outside the scope of Section 1. *See id.* at 141–43. The Ninth Circuit disagreed on that narrow

9  issue, explaining that Section 1 reaches "[e]very contract" and that the DPLA is a "contract" even if it is

10  a contract of adhesion. *See* 67 F.4th at 982; *cf.* Rule 52 Order 157 n.624 (suggesting that the DPLA may

11  include terms that are bilateral restraints of trade). But the conclusion that the DPLA is a "contract" does

12  not address or establish whether Apple's separate anti-steering Guidelines are unilateral conduct under

13  *Colgate*, as adopted by the California courts, much less whether they are condemnable under the

14  narrower Cartwright Act. Apple set forth its anti-steering rules through its App Store Review Guidelines,

15  which the DPLA incorporates but which Apple imposes and can alter unilaterally. *See* Rule 52 Order

16  31; *id.* at 36–41 (describing Apple's exclusive management of the Guidelines). There is accordingly no

17  law of the case on that critical point.

18    There is now, however, state law authority directly on point as to the lawfulness of Apple's

19  anti-steering provisions under *Colgate* and the Cartwright Act. Under *Erie*, the state trial court's

20  judgment is persuasive on matters of state law. *See, e.g.*, *Royal Crown Ins. Corp. v. Northern Mariana*

21  *Islands*, 447 F. App'x 760, 762 n.1 (9th Cir. 2011). And the *Beverage* trial court decision is persuasive

22  and indeed correct on this point.

23    First, as the *Beverage* trial court explained, Apple's anti-steering Guidelines are "open, unilateral

24  conduct by Apple, essentially a 'take it or leave it' deal—not threats, boycotts or other such 'affirmative

25  action' to coerce developers into a conspiracy with Apple against others." Perry Decl., Ex. 2 ("*Beverage*

26  Second Trial Court Order"), at 7. "[A] claim describing only a unilateral refusal to deal without alleging

27  a corresponding illegal conspiracy or combination does not state an actionable antitrust claim" under the

28  Cartwright Act. *Beverage*, 101 Cal. App. 5th at 749–50. The Court's factual finding that "a developer

---

1    must accept [Apple's] provisions (including the challenged restrictions) to distribute games on iOS,"

2    Rule 52 Order 142, leads to the same conclusion as the *Beverage* trial court: Apple unilaterally imposes

3    the Guidelines as a "take it or leave it" deal, which generally is not actionable under the Cartwright Act.

4    *Beverage* Second Trial Court Order 7.

5          Second, as the *Beverage* trial court further explained, there is no coercion that would take Apple's

6    Guidelines outside of *Colgate*'s protection. Under *Colgate*, as applied by the California courts, "coercion

7    does not include the mere 'announcement' of a policy and refusal to deal with those who do not comply,

8    even when coupled with 'measures to monitor compliance that do not interfere with … freedom of

9    choice.'" *Beverage* Second Trial Court Decision 6 (citation omitted); *see also The Jeanery, Inc. v. James

10   Jeans, Inc.*, 849 F. 2d 1148, 1158-59 (9th Cir 1988) ("[T]he privilege of independent action … under

11   *Colgate*" extends to "exposition, persuasion, argument, or pressure." (citation omitted)). Apple

12   unilaterally established its App Review terms as a condition of dealing with Epic and every other

13   developer. It never forced Epic to accept its terms by threats or coercion: Epic voluntarily became an

14   iOS app developer, profiting substantially. *See Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752,

15   761 (1984) ("Under *Colgate*, the manufacturer can announce its resale prices in advance and refuse to

16   deal with those who fail to comply."). That is unilateral conduct without coercion.

17         Again, this Court's findings further support that conclusion. This Court found that Apple is not

18   required to grant Epic access to its iOS platform because it is Apple's property and not an "essential

19   facility." Rule 52 Order 158–59. Apple therefore does not coerce developers when it simply sets the

20   terms of dealing. And this Court found that Apple was permitted to enforce its policy by removing Epic

21   from the App Store. *Id.* at 178–79 (Apple merely "enforced [its] rights as plaintiff's own internal

22   documents show Epic Games expected."). Apple's anti-steering Guidelines therefore are unilateral

23   conduct and are not actionable as "unfair," as clarified in *Beverage*.

### B. *Murthy* clarifies that Epic lacks Article III standing to seek nationwide injunctive relief running to third-party developers

26         The Supreme Court's intervening decision in *Murthy*—decided after the Ninth Circuit's

27   decision—further undercuts the current Injunction by clarifying that Epic lacks standing to enjoin

28   Apple's conduct toward third-party developers.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

      **1.** ***Murthy* clarifies the "tall order" of establishing a future injury that depends on the conduct of independent third parties**

      To establish Article III standing, a plaintiff must show that it has suffered, or will suffer, an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013); *see* U.S. Const. Art. III, § 2, cl. 1. The Court in *Murthy* did not set a "new and elevated standard for redressability" or traceability, but it did clarify their applicability to a case like this one. 144 S. Ct. at 1996 n.11.

      The Court in *Murthy* explained that it is a "tall order" to establish standing for an injunction when the plaintiff's theory of future injury depends on anticipated conduct of "independent decisionmakers." *Id.* at 1986. In such a case, the plaintiff must "show a substantial risk that, in the near future, at least one" of those third parties will act in the way that contributes to the injury. *Id.*; *see also id.* (describing "challenges" of proving standing based on "one-step-removed, anticipatory" injuries). The Court held that, in such a case, courts cannot "approach[] standing at a high level of generality." *Id.* at 1987. Rather, "specific causation findings" must link together each step of the causal chain on traceability and redressability. *Id.* And the Court clarified that the plaintiff, not a court, must devise and support the theory of standing. *See id.* at 1991 n.7. The Court found it "especially important to hold the plaintiffs to their burden in a case like this one, where the record spans over 26,000 pages and the lower courts did not make any specific causation findings." *Id.* Indeed, the Court rejected a theory of standing articulated for the first time by the dissenting Justices because "the plaint[i]fs" had not carried their burden. *Id.*

      The Court's application of the specificity requirement is further illuminating. Over the course of seven pages, the Court reviewed the evidence in detail, plaintiff-by-plaintiff, and concluded that the record evidence was insufficiently specific to support each link in the causal chain on traceability and redressability. *E.g.*, *id.* at 1989 (finding that with respect to COVID-19 viewpoint suppression, "neither the timing nor the platforms line up"); *id.* at 1990–92 (concluding that the inferences from evidence were "weak[]"); *id.* at 1992 (noting that even the strongest evidence for standing was based on a "weak record" and gave that plaintiff "little momentum"); *id.* at 1995 (noting a "redressability problem" because evidence showed that the administration "wound down" its pandemic response measures "[a]round the

---

1  same time" plaintiff Hines last reported that Facebook had restricted her posts, making it "unlikely" an

2  injunction would benefit her going forward).

3       **2.  *Murthy*'s demands are not satisfied as to the Injunction of Apple's conduct
           toward third-party developers**

4       A Supreme Court decision that "provide[s] important guidance in [the] case" warrants departure

5  from law of the case, even when the Ninth Circuit has previously affirmed. *S. Or. Barter Fair*, 372 F.3d

6  at 1136; *see also Hegler v. Borg*, 50 F.3d 1472, 1478 (9th Cir. 1995) (recognizing "an exception to the

7  law of the case doctrine" in that the Ninth Circuit "must apply intervening Supreme Court authority to a

8  subsequent appeal"); *Associated Builders & Contractors v. Mich. Dep't of Lab. & Econ. Growth*, 543

9  F.3d 275, 277–79 (6th Cir. 2008) (dissolving injunction after intervening Supreme Court ERISA

10 decision clarified that previously enjoined state law was not preempted). Under *Murthy*, Epic lacks

11 standing to enjoin Apple's application of its anti-steering rules toward third-party developers.

12      Under *Murthy*, it is a "tall order" for Epic to obtain standing to enjoin Apple's conduct towards

13 third-party developers, who are "independent decisionmakers." 144 S. Ct. at 1986.[2] To support such a

14 theory, Epic had the burden of proving that (1) third-party developers would imminently react to a

15 change in Apple's policies by steering iOS users to the Epic Games Store as a place for purchasing in-

16 app digital goods or services; (2) such steering by third-party developers would imminently cause their

17 customers to make purchases on the Epic Games Store through external links; and (3) enjoining Apple's

18 restrictions on such steering would imminently cause an indirect increase in Epic's profits. *See Epic*

19 *Games*, 67 F.4th at 1000.

20      Without the benefit of *Murthy*, however, the Ninth Circuit addressed standing at a "high level of

21 generality." 144 S. Ct. at 1987. The Ninth Circuit's analysis of the Epic Games Store standing theory

22 consists of two short sentences, *see* 67 F.4th at 1000, with no "specific causation findings" or "specific

23 facts" to support the many steps in the causal chain on traceability and redressability, *Murthy*, 144 S. Ct.

24 at 1987, 1991 n.7. That is similar to the level of generality in the Fifth Circuit's three-paragraph

25 discussion of standing, which the Supreme Court reversed in *Murthy* as insufficiently specific. *See*

26 *Missouri v. Biden*, 83 F.4th 350, 370–71 (5th Cir. 2023), *rev'd*, 144 S. Ct. 1972 (2024).

27

---

28 [2] Epic's subsidiaries are not "independent decisionmakers" under the Ninth Circuit's ruling. *See* 67 F.4th
   at 1000–01. They accordingly fall outside the scope of *Murthy*.

The absence of specific factual findings is especially problematic because findings and record evidence contradict the theory of standing the Ninth Circuit announced *sua sponte*. Apple's in-app steering Guidelines prohibited developers from steering users to alternative mechanisms for purchasing in-app digital content and services available *on iOS apps*. Rule 52 Order 31. But the Epic Games Store is not a mechanism for directly purchasing iOS content in the United States. As this Court found, "the Epic Games Store serves as a platform to sell gaming apps which operated on PC and Mac computers." *Id.* at 15; *see also id.* at 15–16. The Epic Games Store thus does not distribute apps or in-app content on the iOS platform in the United States. And notably, this Court further found that PC and Mac distribution were a different market, outside the market of digital mobile gaming transactions. *Id.* at 84–85 ("[T]he relevant product market does not appear to be so wide as to include all platforms at this time"); *id.* at 133, 151. That is a fundamental disconnect between Apple's in-app steering rules and any claimed indirect impact on the future profitability of the Epic Games Store.

The Ninth Circuit also adopted a theory of standing that Epic did not advance in this Court or on appeal, a practice that *Murthy* forecloses, particularly in a "case like this one" with a long and complex record. *See* 144 S. Ct. at 1991 n.7. There is good reason for that rule: The Ninth Circuit lacked specific evidence or findings to support its theory of third-party standing in part because Epic had never advanced or supported that theory. *Cf. United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) ("in the first instance and on appeal," courts "rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." (citation omitted)).

To be sure, Judge Smith's concurrence in the order staying the mandate stated that record is "filled with support" for Epic's standing to enjoin Apple's conduct towards third-party developers. *See Epic Games, Inc. v. Apple, Inc.*, 73 F.4th 785, 786 (9th Cir. 2023) (Smith, J., concurring). That single-judge opinion was written without the benefit of *Murthy*, however, and the cited evidence does not satisfy *Murthy*'s requirements.

Judge Smith pointed to record evidence about cross-platform games, *see id.* at 787, but that evidence does not close the *Murthy* gap. Among other things, the record lacks specific findings or evidence that ending Apple's anti-steering rules would cause developers of cross-platform games to steer users *to the Epic Games Store specifically. See* Rule 52 Order 83–85. Instead of steering users to the

1    Epic Games Store, developers could continue using IAP, or could steer users to their own websites or a

2    competing platform. *See id.* (discussing Sony PlayStation, Nintendo Switch, Microsoft Xbox, and Nvidia

3    GeForce Now). There are no specific findings or record evidence on that point.

4    The concurrence also focused on Apple's out-of-app steering rule prohibiting developers from

5    using information "obtained from account registration" to "encourage[] users to use a purchasing method

6    other than [IAP]." *Id.* at 31–32; *see also Epic* Games, 73 F.4th at 787. But there are no specific findings

7    or evidence on whether ending this anti-steering rule would cause third-party developers to try and steer

8    users to the Epic Games Store to distribute iOS in-app digital content (or content available on iOS via a

9    cross-platform game). In any event, Apple removed its out-of-app steering rule as part of the *Cameron*

10    class action settlement. *See* Stipulation of Settlement § 5.1.3, *Cameron v. Apple Inc.*, No. 19-cv-3074-

11    YGR (Aug. 26, 2021), Dkt. No. 396-1, Ex. A. Accordingly, even if that rule had indirectly injured Epic

12    in the past, it no longer does so prospectively for reasons that are independent of the Injunction. *See* p.3

13    n.1, *supra*. That prior rule thus provides no basis to continue a nationwide injunction, nor can it justify

14    enjoining Apple prospectively from imposing a separate prohibition against in-app links, buttons, and

15    other calls to action.

16    Under *Murthy*, Epic therefore failed to carry its burden and lacks Article III standing to enjoin

17    Apple's conduct towards developers other than Epic and its affiliates. To the extent the Injunction is not

18    vacated outright under *Beverage*, it should be narrowed to Epic and its affiliates under *Murthy*.

## II.    IN LIGHT OF *BEVERAGE* AND *MURTHY*, IT IS NO LONGER EQUITABLE TO CONTINUE ENJOINING APPLE FROM IMPOSING ANTI-STEERING RULES

21    Rule 60(b)(5) relief is warranted when an intervening decision "undermine[s] the assumptions"

22    or "erode[s]" the basis for the original order, even when it leaves the legal framework "largely

23    unchanged." *Agostini*, 521 U.S. at 218, 222–23 (citation omitted). And "when a district court reviews an

24    injunction based solely on law that has since been altered to permit what was previously forbidden, it is

25    an abuse of discretion to refuse to modify the injunction in the light of the changed law." *EPA*, 978 F.3d

26    at 718–19; *see Bynoe v. Baca*, 966 F.3d 972, 984 (9th Cir. 2020) (relief from judgment appropriate even

27    under Rule 60(b)(6) when intervening decision "resolve[s] an unanswered question of law"). Here, there

28    are two intervening decisions that require either vacatur or at least modification of the Injunction.

### A.    The *Beverage* decisions warrant vacating the Injunction

The intervening *Beverage* decisions warrant vacating the Injunction under Rule 60(b)(5). This Court entered a nationwide injunction based on its resolution of an unanswered question of state law, holding that Apple's prior anti-steering rules violate the UCL. The California courts have since answered that precise question, holding that those same Apple anti-steering rules comply with the UCL and are lawful. The California courts therefore "permit what was previously forbidden" by the Injunction in this case. *EPA*, 978 F.3d at 718–19; *see also Rufo*, 502 U.S. at 388 ("[D]ecisional law has changed to make legal what the decree was designed to prevent.").

A direct and irreconcilable conflict now exists between *Beverage* and the Injunction: If Apple were to engage prospectively in the very conduct that the *Beverage* decisions held was lawful under California law, Apple would violate this Court's Injunction issued under the same state law. The Injunction thus renders the *Beverage* decisions largely ineffective. But "elementary principles of federalism and comity embodied in the full faith and credit statute" means that federal courts must "give [state court] judgment[s] *legal effect*." *Growe v. Emison*, 507 U.S. 25, 35–36 (1993); *see also Gibson v. Berryhill*, 411 U.S. 564, 581 (1973) (relying on "considerations of equity, comity, and federalism" to vacate a judgment for reconsideration in light of an intervening decision of state law); 28 U.S.C. § 1738 (the judicial proceedings of any state "shall have the same full faith and credit in every court within the United States"); *Keith v. Volpe*, 118 F.3d 1386, 1393 (9th Cir. 1997) (a federal consent decree cannot override valid state law, when the court does not identify a federal law justifying the decree; and "policy concerns" do not suffice) (citing U.S. Const. Amend. X).

The Ninth Circuit has recognized that such a direct conflict between a state appellate court decision and a federal decision requires relief even from a *retrospective* judgment under Rule 60(b)(6). In *Venoco*, as here, (1) the district court ruled in favor of the plaintiff under California law; (2) the Ninth Circuit affirmed; and (3) a California Court of Appeal later issued a decision that expressly departed from the Ninth Circuit in a case applying the same state-law "doctrine to the same defendant on the basis of virtually identical facts." 2022 WL 1090947, at *2–3; *see also id.* (the case involved "the same oil spill, the same legal doctrine, and the same defendant"). The district court denied a Rule 60(b)(6) motion, but the Ninth Circuit reversed in a summary order, holding that the district court abused its discretion by

1    declining to follow the intervening state court decision. The Ninth Circuit found the "direct relationship

2    between the original judgment and the change in law" to be "especially important" and to "tip[] the

3    scales heavily toward" relief. *Id.* at *2. The Court emphasized that declining to grant relief "would only

4    injure comity interests." *Id.* at *3. Because the case "hinge[d]" on California law, it went "to the heart of

5    comity's concern with tensions 'between the independently sovereign state and federal judiciaries.'" *Id.*

6    at *3 (citation omitted). That was "especially" true, the Ninth Circuit observed, because the case applied

7    the same "doctrine to the same defendant on the basis of virtually identical facts." *Id.*; *see also Gondeck*

8    *v. Pan Am. World Airways, Inc.*, 382 U.S. 25, 26–27 (1965) (granting relief out of time in the "interests

9    of justice" to avoid "unfair" results when other victims of the same accident had subsequently obtained

10   relief); *In re Terrorist Attacks on Sept. 11, 2001*, 741 F.3d 353, 357 (2d Cir. 2013) (abuse of discretion

11   to deny Rule 60(b)(6) relief following intervening federal appellate decision to avoid "inconsistent

12   results between two sets of plaintiffs suing for damages based on the same incident"); *Pierce v. Cook &*

13   *Co.*, 518 F.2d 720, 723 (10th Cir. 1975) (Rule 60(b)(6) relief warranted when the "federal courts in

14   which [the movants] were forced to litigate have given them substantially different treatment than that

15   received in state court by another injured in the same accident").

16           Rule 60(b)(5) relief is even more clearly warranted here. First, as in *Venoco*, this case involves

17   application of the same doctrine "to the same defendant on the basis of virtually identical facts." 2022

18   WL 1090947, at *2–3. Leaving the Injunction in place thus "would only injure comity interests" and

19   would go "to the heart" of comity's concerns. *Id.* Second, as in *Venoco*, the California Court of Appeal

20   expressly departed from the *Epic* decisions. The Court of Appeal stated that the decisions were not

21   "persuasive," mentioned *Chavez* "only in passing," and failed to engage in a "rigorous analysis of the

22   *Colgate* doctrine and its effect on UCL claims." *Beverage*, 101 Cal. App. 5th at 756 n.6. Third, the legal

23   standard here is more easily satisfied than in *Venoco*. For retrospective relief, Rule 60(b)(6) imposes a

24   higher standard, limiting relief to "extraordinary circumstances." *Henson v. Fid. Nat'l Fin., Inc.*, 943

25   F.3d 434, 443, 446–53 (9th Cir. 2019). For prospective relief, by contrast, Rule 60(b)(5) requires merely

26   that it no longer be "equitable" to continue applying the injunction. Fed. R. Civ. P. 60(b)(5). Indeed, the

27   Ninth Circuit has made clear that district courts *must* grant prospective relief under Rule 60(b)(5) when

28   an injunction's legal underpinnings are subsequently removed and no consent decree is involved. *See*

---

1    *EPA*, 978 F.3d at 718–19; *Bynoe*, 966 F.3d at 984. It is thus no longer equitable to continue enjoining

2    Apple from engaging in the very conduct that the *Beverage* decisions hold is lawful.

**B.    At a minimum, *Beverage* and *Murthy* together warrant narrowing the Injunction to apply solely to Epic and its affiliates**

At a minimum, this Court should narrow the Injunction to apply only to Epic and its affiliates. Under *Beverage* and *Murthy*, the portion of the Injunction that enjoins Apple's conduct towards third-party developers oversteps the Court's authority under Article III and gives rise to acute comity and federalism problems. The balance of the equities also powerfully supports narrowing the Injunction.

**1.    Article III, comity, and federalism concerns strongly support narrowing the Injunction**

Under *Murthy*, Epic has failed to adduce sufficient evidence to establish Article III standing to obtain injunctive relief against Apple with respect to third parties. In light of that decision, the nationwide Injunction raises serious concerns about overstepping the "proper—and properly limited—role of the courts in a democratic society." *Summers*, 555 U.S. at 492–93. Article III's limitations are "fundamental to the judiciary's proper role in our system of government." *Murthy*, 144 S. Ct. at 1985 (citation omitted). A court's "constitutionally prescribed role" is to "vindicate the individual rights of the people appearing before it." *Gill v. Whitford*, 585 U.S. 48, 72 (2018). "Federal courts do not possess a roving commission to publicly opine on every legal question. Federal courts do not exercise general legal oversight of the Legislative and Executive Branches, *or of private entities*." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423–24 (2021) (emphasis added). Any "remedy must … be limited to the inadequacy that produced the injury in fact that the plaintiff has established." *Gill*, 585 U.S. at 68 (citation omitted). Otherwise, an uninjured plaintiff is, "by definition, not seeking to remedy any harm to herself but instead is merely seeking to ensure a defendant's 'compliance with regulatory law.'" *TransUnion*, 594 U.S. at 427 (citation omitted). Those Article III considerations weigh heavily in favor of narrowing the Injunction.

Comity and federalism concerns also strongly support narrowing the Injunction. The Ninth Circuit affords great weight to comity and federalism concerns in the Rule 60(b) context. *See* pp.16–18, *supra*. Comity is grounded in "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their

1  separate functions in separate ways." *Levin v. Com. Energy, Inc.*, 560 U.S. 413, 421 (2010) (citation

2  omitted); *see also Verde Media Corp. v. Levi*, No. 14-cv-00891-YGR, 2015 WL 2379564, at *4 (N.D.

3  Cal. May 18, 2015) ("Needless decisions of state law should be avoided both as a matter of comity and

4  to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."

5  (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). When a state intermediate

6  court decision applies the same doctrine "to the same defendant on the basis of virtually identical facts,"

7  comity concerns are sufficient to justify even Rule 60(b)(6) relief from a retrospective judgment

8  applicable only to the named private parties in a case. *See Venoco*, 2022 WL 1090947, at *3.

9         Those concerns are far more pronounced when a federal court has relied on state law to

10  prospectively enjoin conduct nationwide that the state courts have since held is lawful under state law.

11  Unlike a retrospective judgment, the injury to comity from a prospective injunction in contravention of

12  state law is ongoing. Even worse, the injury extends nationwide. "[T]he issuance of an injunction under

13  state law prohibiting otherwise lawful conduct in another state raises serious concerns." *United States v.*

14  *AMC Ent., Inc.*, 549 F.3d 760, 772 (9th Cir. 2008) (quoting *Herman Miller, Inc. v. Palazzeti Imps. &*

15  *Exps., Inc.*, 270 F.3d 298, 327 (6th Cir. 2001)). As the Eleventh Circuit has explained, "nationwide

16  injunctions frustrate foundational principles of the federal court system" and "disturb comity by

17  hindering other courts from evaluating legal issues for themselves." *Georgia v. President of the U.S.*, 46

18  F.4th 1283, 1305 (11th Cir. 2022); *see also United States v. Texas*, 599 U.S. 670, 694 (2023) (Gorsuch,

19  J., concurring) (noting problems with decrees that "purport to define the rights and duties of sometimes

20  millions of people who are not parties before them"); *Allergan, Inc. v. Athena Cosms., Inc.*, 738 F.3d

21  1350, 1358 (Fed. Cir. 2013) ("The injunction impermissibly imposes the UCL on entirely extraterritorial

22  conduct regardless of whether the conduct in other states causes harm to California."). The Supreme

23  Court has invalidated a statewide injunction on the ground that it "improperly prevent[ed] the citizens

24  of the State from addressing the issue [of statewide relief] through the processes provided by the State's

25  constitution." *Hawaii v. Office of Hawaiian Affs.*, 556 U.S. 163, 176–77 (2009).

26         Here, California's process for resolving questions about the scope of the UCL has run its course

27  "through the processes provided by the State's constitution." *Id.* at 177. The California courts have

28  concluded that Apple's anti-steering rules are lawful. The nationwide Injunction, however, makes it

1    illegal for Apple to apply those same rules to any developer in California or in the nation. The Injunction

2    thus subverts comity by overriding the determination of the California courts, rather than leaving them

3    "free to perform their separate functions in separate ways." *Levin*, 560 U.S. at 421 (citation omitted).

4           The conflict with *Beverage* and *Murthy* also greatly exacerbates the Rule 23 and preclusion

5    problems that arise from the nationwide Injunction. Under ordinary principles of finality, even though

6    the Injunction is based on a determination of state law that the state courts have since rejected as

7    incorrect, Epic could potentially still be entitled to its win as a party. Principles of finality can sometimes

8    outweigh the interest of correcting an erroneous and inequitable decision. *Cf. Pyramid Lake Paiute Tribe*

9    *of Indians v. Hodel*, 882 F.2d 364, 369 n.5 (9th Cir. 1989); *but see Agostini*, 521 U.S. at 218, 222, 223

10   (a change in decisional law warrants relief from a prospective order when the change "undermine[s] the

11   assumptions" or "erode[s]" the basis for the original order, even when it leaves the legal framework

12   "largely unchanged"); *In re Terrorist Attacks*, 741 F.3d at 358 ("[T]he interest in finality must yield to

13   the interests of justice" to avoid "treat[ing] cases arising from the same incident differently"). Third-

14   party developers are not parties to this litigation, however. Epic did not seek to represent or certify a

15   nationwide developer class, and it opted out of a parallel developer class action. *See* Rule 52 Order 23–

16   24; *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360–61 (2011) (describing stringent

17   requirements for class certification). And as non-parties, third-party developers could not rely on this

18   Court's judgment and instead would have to independently establish that Apple's anti-steering rules are

19   "unfair."[3] They could not do so under *Beverage*.

20          Prospective application of the nationwide Injunction subverts those bedrock principles of law.

21   Enjoining Apple's conduct nationwide gives third-party developers the benefit of a legal determination

22   that they never sought and, post-*Beverage*, could not obtain if they sued Apple themselves. That

23   effectively converts Epic's single-plaintiff suit into a nationwide Rule 23(b)(2) class action, even though

24   Epic did not invoke (or make the requisite showings under) Rule 23, and the resulting class-wide

25   injunction contravenes California law. Prospective application of the nationwide Injunction thus

26   

27   [3] In a separate suit against Apple, developers could not rely on the issue-preclusive effect of the *Epic* judgment. Issue preclusion is unavailable when there has been an "intervening change in the applicable legal context." Restatement (Second) of Judgments § 28 (1982). Non-mutual preclusion is additionally

28   unavailable when "[t]he determination relied on as preclusive [i]s itself inconsistent with another determination of the same issue." *Id.* § 29.

1   deprives the California courts of the ability to determine important questions of California law. Federal

2   courts ordinarily must follow the decisions of the state intermediate courts as to state law, not the other

3   way around. *See Richardson*, 841 F.2d at 1000; *see also, e.g.*, *Burnthorne-Martinez v. Sephora USA,*

4   *Inc.*, No. 16-cv-02843-YGR, 2016 WL 6892721, at *7 (N.D. Cal. Nov. 23, 2016); *Guillen v. Bank of*

5   *Am. Corp.*, No. 5:10-cv-05825-EJD, 2011 WL 4071996, at *4 (N.D. Cal. Aug. 31, 2011).

6       Narrowing the Injunction to Epic and its subsidiaries would significantly mitigate the conflict

7   with the *Beverage* decisions, eliminate the *Murthy* problem, and ease the Rule 23 and preclusion

8   problems. If the Injunction applied only to Epic and its subsidiaries—like a typical non-class action—

9   the Injunction and the *Beverage* decisions could coexist without significantly interfering with one

10  another. Apple would have won one case against one set of plaintiffs, and lost another case against a

11  different plaintiff. Each judgment would be limited to its own parties, and the *Beverage* decisions would

12  carry their usual precedential and persuasive force in future litigation with others.

13      The Ninth Circuit has narrowed nationwide injunctions out of comity to other courts. For

14  example, in *AMC Entertainment*, the Ninth Circuit relied on comity concerns to hold that a district court

15  abused its discretion in entering a nationwide injunction after another circuit had "judicially repudiated"

16  the underlying legal position. 549 F.3d at 772–73; *see id.* at 770 ("Courts ordinarily should not award

17  injunctive relief that would cause substantial interference with another court's sovereignty."). The Ninth

18  Circuit has further held that a district court "abused its discretion by entering a nationwide injunction"

19  when, among other things, "several other courts of appeals [we]re currently reviewing" the same

20  question. *L.A. Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 661, 665 (9th Cir. 2011); *see also Flores*

21  *v. Huppenthal*, 789 F.3d 994, 1008 (9th Cir. 2015) (vacating statewide injunction when plaintiffs did not

22  allege statewide injury). Here, the California courts in *Beverage* have "review[ed]" and "judicially

23  repudiated" the UCL determination, and *Murthy* further undermines Epic's standing to pursue

24  nationwide relief. In light of those developments, this Court should similarly narrow the Injunction.

25      Other district courts have also refused to grant nationwide relief on the basis of California law.

26  In *Rogers v. Lyft, Inc.*, 452 F. Supp. 3d 904 (N.D. Cal. 2020), *aff'd*, 2022 WL 474166 (9th Cir. Feb. 16,

27  2022), for example, three individual Lyft drivers did not seek a class action, but nonetheless sought a

28  nationwide injunction to benefit all Lyft drivers based on alleged violations California law. *Id.* at 919.

---

APPLE'S MOTION FOR RELIEF FROM JUDGMENT     21     CASE NO. 4:20-CV-05640-YGR

1 The district court held that Article III foreclosed the court from issuing class-wide injunctive relief in a

2 non-class action. *Id.* at 919–20. The court emphasized that federal courts cannot "adjudicate a standalone

3 'abstract' request for an injunction 'apart from any concrete application' of the challenged policy 'that

4 threatens imminent harm' to the plaintiffs." *Id.* at 920 (quoting *Summers*, 555 U.S. at 494). In light of

5 *Murthy* and *Beverage*, this Court similarly should cease enjoining Apple's conduct towards developers

6 other than Epic and its affiliates. That would return this case to the familiar posture of individual non-

7 class litigation between private parties.

8    **2. The equities favor narrowing the Injunction**

9   For the reasons set forth above, it is not equitable to continue enjoining Apple from imposing

10 anti-steering rules prospectively, particularly as to developers other than Epic and its subsidiaries. The

11 intervening decisions in *Beverage* and *Murthy* establish both that Apple's prior rules do not violate

12 California law, and that Epic lacks standing to seek a nationwide injunction running to non-parties.

13   There is nothing on Epic's side of the equitable ledger. Epic no longer has any apps of its own

14 on the App Store. Epic's indirect interest in Apple's treatment of Epic's subsidiaries, *see Epic Games*,

15 67 F.4th at 1000–01, provides no basis to justify the nationwide Injunction, *see* p.13 n.2, *supra*. Epic has

16 no cognizable interest in Apple's treatment of third-party developers (*i.e.*, developers other than its

17 affiliates) because Epic has never attempted to prove, and lacks specific findings or evidence, that

18 Apple's anti-steering rules will imminently harm Epic in its capacity as the proprietor of the Epic Games

19 Store. *See* pp.13–15, *supra*. The relief Apple seeks is purely prospective, and any finality interests that

20 Epic might assert are further weakened with respect to a "sweeping public-litigation-type injunction"

21 like this one. *Bellevue*, 165 F.3d at 1257; *cf. Horne*, 557 U.S. at 447 ("Rule 60(b)(5) serves a particularly

22 important function in … 'institutional reform litigation.'").

23   Apple has been diligent bringing this motion to the Court's attention. The U.S. Supreme Court

24 decided *Murthy* on June 26, 2024, and issued its judgment on July 29, 2024. *See Murthy*, 144 S. Ct. at

25 1972; Perry Decl., Ex. 7. The California Supreme Court denied the *Beverage* petition on July 11, 2024,

26 and the Court of Appeal issued its remittitur on August 26, 2024. Perry Decl., Exs. 4, 5. The parties met

27 and conferred on August 28, 2024, consistent with the Court's Standing Order in Civil Cases requiring

28 parties to meet and confer "before the filing of any motion" to determine whether the motion can be

avoided or deferred until after this Court's multi-defendant criminal trial. The parties agreed that Epic would not raise any claim of undue delay based on Apple deferring its filing from August 28, 2024, until one business day after the last calendared date for that trial. Apple filed on September 30, 2024, the first business day after the last calendared date of that trial. *See United States v. Holtzman*, 762 F.2d 720, 725 (9th Cir. 1985) (reversing district court finding a five-year period unreasonable, emphasizing "the prospective nature of the injunction calls for leniency in interpreting the reasonable time requirement"); *Associated Builders,* 543 F.3d at 279 (6th Cir. 2008) (rejecting "unduly strict reading of the reasonable-time requirement" because it would "tend to force premature Rule 60(b)(5) motions"); *see also 245 Park Member LLC v. HNA Grp. (Int'i) Co.*, 674 F. Supp. 3d 28, 36 n.5 (S.D.N.Y. 2023) (collecting cases finding Rule 60(b)(6) motions timely within 5 to 18 months), *c'f'd*, 2024 WL 1506798 (2d Cir. Apr. 8, 2024).

More broadly, Apple has diligently protected its rights throughout this litigation. Apple has consistently argued that *Chavez* foreclosed Epic's UCL "unfairness" claim. *See* Dkt. No. 779-1 ¶ 610; C.A. Dkt No. 93, at 105; C.A. Dkt. No. 183, at 9–12. Apple additionally argued in this Court that Apple's unilateral conduct was protected under the *Colgate* line of authority. *See* Dkt. No. 779-1 ¶ 375; *see also id.* ¶¶ 263–83 (Apple cannot be held liable for "a refusal to deal with Epic on its preferred terms"); *id.* ¶ 493 (similar). And Apple argued on appeal that its anti-steering Guidelines were unilateral conduct protected by multiple judicially created antitrust doctrines and protected by *Chavez* because of Epic's failure to prove its antitrust claims. *See* C.A. Dkt. No. 93, at 62–66, 105; C.A. Dkt. No. 183, at 10–11 (giving as examples *linkLine*, 555 U.S. at 448 n.2, 457, and *Trinko*, 540 U.S. at 415–16). Apple has similarly been diligent in raising its Article III objection. This issue first arose when this Court entered the UCL injunction with nationwide scope. Apple responded by filing post-trial stay papers challenging Epic's standing to pursue nationwide relief. *See* Dkt. No. 821, at 14–15. Apple reiterated that argument on appeal, *see* C.A. Dkt. No. 93, at 102–04; C.A. Dkt. No. 183, at 1–5, and in a petition for a writ of certiorari, *see* Petition for Writ of Certiorari, *Apple Inc. v. Epic Games, Inc.*, 144 S. Ct. 681 (2024) (No. 23-344).

Vacating the Injunction entirely would obviate the ongoing Injunction enforcement proceedings, whereas narrowing the Injunction would simplify those proceedings by focusing the inquiry specifically

on Apple's conduct towards Epic and its subsidiaries. Either way, the burden on the parties and the judicial system would be alleviated. If anything, those proceedings make it more important for this Court to reexamine the antecedent question of whether it is equitable to continue applying the underlying Injunction prospectively.

\* \* \* \* \*

This Court entered its Injunction, and the Ninth Circuit affirmed, without the benefit of *Beverage* or *Murthy*. The California courts had not resolved the legality of Apple's anti-steering rules under the UCL's "unfairness" prong. The Supreme Court had not addressed the level of evidentiary specificity needed to establish standing to seek an injunction where injury depends on the future conduct of independent actors. The California courts have now resolved the UCL question in *Beverage*, and the U.S. Supreme Court has provided an important clarification of the Article III issue in *Murthy*.

The *Beverage* decisions alone justify vacating the Injunction. At a minimum, *Beverage* and *Murthy* together establish that it is no longer equitable to continue enjoining Apple from applying its anti-steering rules to third-party developers nationwide. An injunction based on state law—when the state courts have held that the enjoined conduct is lawful—is inequitable, at least if applied nationwide beyond the plaintiff in the particular case.

### CONCLUSION

For the foregoing reasons, Apple respectfully requests the Court relieve Apple from the judgment and either vacate the Injunction or, at a minimum, narrow it so that it applies only to Epic and its corporate affiliates.

Dated: September 30, 2024

Respectfully submitted,

By: */s/ Mark A. Perry*
Mark A. Perry
WEIL, GOTSHAL & MANGES LLP

Attorney for Apple Inc.