# EXHIBIT K

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| EPIC GAMES, INC., | Case No. 4:20-cv-05640-YGR |
|---|---|
| Plaintiff, Counter-defendant | |
| v. | **ORDER DENYING APPLE'S MOTION TO STAY INJUNCTION PENDING APPEAL** |
| APPLE INC., | |
| Defendant, Counterclaimant. | Dkt. No. 821 |

The Court is in receipt of Apple Inc.'s Motion to Stay part of the Court's injunction pending resolution of all appeals, specifically that portion prohibiting developers from including "in their apps and their metabuttons, external links, or other calls to action that direct customers to purchasing mechanisms, in addition to In-App Purchasing ["IAP"]." (*See* Dkt. No. 821.)

Having considered all the filings, and oral argument, the Court finds Apple has failed to satisfy its burden, and the request as framed is **DENIED**. In short, Apple's motion is based on a selective reading of this Court's findings and ignores all of the findings which supported the injunction, namely incipient antitrust conduct including supercompetitive commission rates resulting in extraordinarily high operating margins and which have not been correlated to the value of its intellectual property. This incipient antitrust conduct is the result, in part, of the antisteering policies which Apple has enforced to harm competition. As a consequence, the motion is fundamentally flawed. Further, even if additional time was warranted to comply with the limited injunction, Apple did not request additional time other than ten days to appeal this ruling. Thus, the Court does not consider the option of additional time, other than the requested ten days.

The Court analyzes the motion using a four-factor test to determine whether a stay is appropriate, namely whether (i) the movant demonstrates a strong showing of likelihood of success on the merits; (ii) the movant would be irreparably injured absent a stay; (iii) issuance of

1    the stay will substantially injure the other parties interested in the proceeding; and (iv) an
2    evaluation of where the public interest lies. *Nken v. Holder*, 556 U.S. 418, 426 (2009). Apple
3    bears the burden of demonstrating that the Court should exercise its discretion to stay the
4    injunction. *Id*. at 433-34.
5         In considering Apple's likelihood of success on the merits, Apple notes that it will argue
6    on appeal that the Court applied the wrong test in its analysis of California's Unfair Competition
7    Law ("UCL"), plaintiff lacked standing, and the injunction was not within the Court's authority.
8    Contrary to Apple's assertions, the Court evaluated the UCL claims using two tests, not one. *See*
9    Order at Law Sections VI.C.1 and 2. Furthermore, the Court's Order analyzed the basis for Epic
10   Game's standing under the UCL. *See* Order at Law Section Law, VI. A. Moreover, Apple's
11   citations to Epic Games' alleged loss of standing does not persuade.[1]
12        Here, as noted, the antisteering provisions are one of the key provisions upon which Apple
13   has been able to successfully charge supracompetitive commissions untethered to its intellectual
14   property. *See* Order at Fact Sections IV and V. Evidence admitted at trial demonstrate that Epic
15   Games and its related companies receive royalties from numerous companies who use the Unreal
16   Engine for apps. *See e.g.* DX-4022. Apple's commission rates depress those royalties and
17   suppress competition in the industry generally, and in which Epic Games operates. This is
18   sufficient to establish Article III standing. *See Franchise Tax. Bd. of California v. Alcan*
19   *Aluminum Ltd.*, 493 U.S. 331, 336 (1990) (finding that parent company had Article III standing to

---

[1] Indeed, Apple relies on a handful of distinguishable cases that deal with whether the party initially had standing, not the loss of standing (mootness), in support of its proposition that Epic Games lacks standing to enforce the injunction. *See Lujuan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992) (finding that environmental groups did not have standing to challenge regulation of the Secretary of the Interior which interpretated Section 7 of the Endangered Species Act, finding that plaintiff did not meet the imminent injury requirement for Article III because plaintiffs intent to "return to the places they had visited before" was not actual or imminent); *Davis v. FEC*, 554 U.S. 734-35 (2008) (finding that self-financed candidate had standing to challenge the constitutionality of the Millionaires' Amendment of the Bipartisan Campaign Reform Act, noting that "the standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed"); *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004) (finding that plaintiff did not have standing to seek injunction where plaintiff no longer had contractual relationship with defendant at the time of lawsuit).

1   challenge the taxes that their wholly owned subsidiaries were required to pay). Thus, this
2   argument fails.
3       Next, the Court addresses Apple's claim of irreparable injury. Again, the evidence does
4   not support Apple's position. Apple focuses part of its irreparable harm argument on harm that
5   could occur in the form of loss of trust and integrity in the iOS ecosystem by way of allowing
6   developers to include their links and metabuttons in their apps. Apple's arguments are
7   exaggerated. The reader rule, cross-play, and cross-wallet all reflect trial examples that
8   alternatives outside the app can be accommodated. Mr. Kosmynka's declaration does not change
9   the result. In most ways, he merely repeats arguments that the Court considered as part of its
10  Order. That the injunction may require additional engineering or guidelines is not evidence of
11  irreparable injury. Rather, at best, it only suggests that more time is needed to comply. Apple,
12  though, did not request additional time to comply. It wants an open-ended stay with no
13  requirement that it make any effort to comply. Time is not irreparable injury.
14      The third and fourth elements overlap so the Court addresses them collectively: injury to
15  other parties and public interest. The evidence from the trial revealed that the party who would
16  benefit primarily from a stay *pending all resolution of all appeals* is Apple. The Court can
17  envision numerous avenues for Apple to comply with the injunction and yet take steps to protect
18  users, to the extent that Apple genuinely believes that external links would create issues. The
19  Court is not convinced, but nor is it here to micromanage. Consumers are quite used to linking
20  from an app to a web browser. Other than, perhaps, needing time to establish Guidelines, Apple
21  has provided no credible reason for the Court to believe that the injunction would cause the
22  professed devastation. Links can be tested by App Review. Users can open browsers and retype
23  links to the same effect; it is merely inconvenient, which then, only works to the advantage of
24  Apple.[2]

---

[2] The Court also notes that while Mr. Kosmynka claims that Apple verifies purchases.
Apple's Head of Pricing, Mr. Grey, testified at trial that Apple simply asks the developer to
confirm delivery and then it issues a receipt. Order, p. 117.

3

With respect to the alleged need for clarification because, anecdotally, some developers may not understand the scope of the injunction, the parties themselves have not indicated any confusion. The Developer Agreement prohibits third party in-app purchasing systems other than Apple's IAP. The Court did not enjoin that provision but rather enjoined the prohibition to communicate external alternatives and to allow links to those external sites. Apple still maintains the convenience of IAP and, if it can compete on pricing, developers may opt to capitalize on that convenience, including any reassure that Apple provides to consumers that it may provide a safer or better choice. The fact remains: it should be their choice. Consumer information, transparency, and consumer choice is in the interest of the public.

The request for a ten-day extension to file an appeal to the Ninth Circuit is **DENIED**. Given the promptness of this decision, more time remains before the injunction takes place than at least two of those authorities upon which Apple relies for requesting such relief. *See Campbell v. National Passenger Railroad Corp.*, No. 05-CV-5434, 2009 WL 4546673, at *2 (N.D. Cal. Nov. 30, 2009) (ordering that defendant comply with the injunction within 10 days from the date of the Court's order on the motion to stay pending appeal); *see also Conservation Cong. v. U.S. Forest Serv.*, No. CIV. S-11-2605 LKK, 2012 WL 3150307, at *2 (E.D. Cal. Aug. 1, 2012) (providing twenty-one day extension to seek appeal). Here, the Court afforded Apple 90 days to comply and it still has approximately 30 days before the injunction goes into effect. Thus, the Court sees no need for an additional 10 days for Apple to file its appeal of this ruling. Granting this extension would extend the deadline to the end of December just before the December holidays which itself is inconvenient.

For the foregoing reasons, the Court **DENIES** Apple's motion to stay the injunction pending appeal. The Court also **DENIES** Apple's request for a temporary stay of an additional 10 days.

This order terminates docket No. 821.

**IT IS SO ORDERED.**

Dated: November 9, 2021

_____
YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT JUDGE

4