**No. 25-2935**

# In the United States Court of Appeals for the Ninth Circuit

EPIC GAMES, INC.,

*Plaintiff-Appellee,*

*v.*

APPLE INC.,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Northern District of California,
No. 4:20-cv-05640-YGR

**BRIEF OF AMICI CURIAE NETCHOICE AND COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION IN SUPPORT OF APPELLANT'S MOTION FOR PARTIAL STAY PENDING APPEAL**

Scott A. Keller
Steven P. Lehotsky
Jeremy Evan Maltz
LEHOTSKY KELLER COHN LLP
200 Massachusetts Ave. NW, Suite 700
Washington, DC 20001
(512) 693-8350
scott@lkcfirm.com

*Counsel for Amici Curiae*

CORPORATE DISCLOSURE STATEMENT

No. 25-2935

EPIC GAMES, INC.,
*Plaintiff-Appellee,*

*v.*

APPLE INC.,
*Defendant-Appellant.*

Under Federal Rule of Appellate Procedure 26.1, NetChoice and CCIA certify that they have no parent corporation, and that no publicly held company owns 10% or more of their stock.

/s/ *Scott A. Keller*
Scott A. Keller
*Counsel for Amici Curiae*

i

TABLE OF CONTENTS

Table of Authorities ........................................................................................ iii
Interest of Amici Curiae ................................................................................. 1
Introduction .................................................................................................... 3
Argument ........................................................................................................ 4
    I.   Strict First Amendment scrutiny applies when the government compels speech dissemination. ........................................ 4
    II.  Judicial injunctions compelling speech do not get a lower level of First Amendment scrutiny ........................................................ 6
Conclusion ...................................................................................................... 8
Certificate of Service ...................................................................................... 9

# Table of Authorities

Page(s)

**Cases**

*Bank of Hope v. Miye Chon*,
   938 F.3d 389 (3d Cir. 2019) ............................................................................... 7

*Citizens United v. FEC*,
   558 U.S. 310 (2010) ..................................................................................... 3, 6

*City of Boerne v. Flores*,
   521 U.S. 507 (1997) ........................................................................................ 4

*Entm't Software Ass'n v. Blagojevich*,
   469 F.3d 641 (7th Cir. 2006) ........................................................................... 6

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*,
   515 U.S. 557 (1995) ..................................................................................... 3, 5

*Madsen v. Women's Health Ctr., Inc.*,
   512 U.S. 753 (1994) ........................................................................................ 6

*Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*,
   584 U.S. 617 (2018) ........................................................................................ 5

*Moody v. NetChoice, LLC*,
   603 U.S. 707 (2024) ................................................................................ 2, 3, 4

*Nat'l Ass'n of Mfrs. v. SEC*,
   800 F.3d 518 (D.C. Cir. 2015) ..................................................................... 4, 5

*Nat'l Inst. of Family & Life Advocates v. Becerra*,
   585 U.S. 755 (2018) ................................................................................ 4, 5, 6

*Pac. Gas & Elec. Co. v. Pub. Utilities Comm'n of Cal.*,
   475 U.S. 1 (1986) ........................................................................................ 3, 5

*Phi Theta Kappa Honor Soc'y v. HonorSociety.org., Inc.*,
    2025 WL 1030240 (5th Cir. Apr. 7, 2025) ........................................................7

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011) ..........................................................................................6

*Spokane Arcades, Inc. v. Brockett*,
    631 F.2d 135 (9th Cir. 1980) ............................................................................7

*Zauderer v. Office of Disciplinary Counsel*,
    471 U.S. 626 (1985) ..........................................................................................6

iv

## INTEREST OF AMICI CURIAE

NetChoice is a national trade association of online businesses that share the goal of promoting free enterprise and free expression on the Internet.[1] A list of NetChoice's members is available at: https://tinyurl.com/yuwv2eat. NetChoice fights to ensure the internet remains innovative and free. Toward those ends, NetChoice engages in litigation, amicus curiae work and political advocacy.

CCIA is an international, not-for-profit association that represents a broad cross-section of communications, technology, and Internet industry firms that collectively employ more than 1.6 million workers, invest more than $100 billion in research and development, and contribute trillions of dollars in productivity to the global economy. For more than 50 years, CCIA has promoted open markets, open systems, and open networks, including as a party to or amicus in litigation. In addition, CCIA regularly advocates for the application of First Amendment protections for lawful online speech. A list of CCIA members, which includes Appellant Apple, is available at https://www.ccianet.org/members.

Particularly relevant here, Amici litigated the Supreme Court's landmark case on the First Amendment's protections for online editorial

---

[1] Apple is a member of CCIA's trade association. But no counsel for a party authored this brief in whole or in part, and no party made a monetary contribution intended to fund the preparation or submission of this brief. *See* Fed. R. App. P. 29(a)(4)(E).

1

discretion: *Moody v. NetChoice, LLC & NetChoice, LLC v. Paxton*, 603 U.S. 707 (2024). Accordingly, Amici are uniquely qualified to explain how that decision—and the Supreme Court's other First Amendment precedent—protects against any governmental action that "direct[s]" any private entity "to accommodate messages it would prefer to exclude." *Id.* at 731.

2

## INTRODUCTION

"Courts, too, are bound by the First Amendment." *Citizens United v. FEC*, 558 U.S. 310, 326 (2010). Under the First Amendment, "the choice to speak includes within it the choice of what not to say," so "compelling a private corporation to provide a forum for views other than its own may infringe the corporation's freedom of speech." *Pac. Gas & Elec. Co. v. Pub. Utilities Comm'n of Cal.*, 475 U.S. 1, 9 (1986) (plurality op.) ("*PG&E*").[2]

As the Motion demonstrates, the district court's new injunction in this case implicates Apple's free-speech rights by prohibiting "Apple from setting conditions for link placement and language" in In-App Purchasing (IAP). Mot.3. This requirement, in effect, compels Apple to disseminate speech against its will. For example, it will have the effect of "enabling disparagement of IAP and links within the IAP buy-flow—allow[ing] developers to divert customers away from IAP from within the App Store's proverbial checkout aisle." Mot.15.

But the First Amendment does not permit any governmental actor to "direct" a private entity "to accommodate messages it would prefer to exclude," without satisfying heightened First Amendment scrutiny. *Moody v. NetChoice, LLC*, 603 U.S. 707, 731 (2024). A governmental compelled-speech requirement is all the "more constitutionally offensive" when a company

---

[2] All subsequent citations to *PG&E* are to the plurality opinion. *See Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 573, 575-76, 580 (1995) (recognizing that *PG&E*'s plurality opinion is this case's holding).

3

must accommodate speech that would "condemn" itself. *Nat'l Ass'n of Mfrs. v. SEC*, 800 F.3d 518, 530 (D.C. Cir. 2015). Yet that is precisely what the district court's new injunction would require Apple to do.

Accordingly, this Court should carefully scrutinize the First Amendment implications of the district court's injunction and subject to strict scrutiny all provisions of the injunction that compel speech.

## ARGUMENT

### I. Strict First Amendment scrutiny applies when the government compels speech dissemination.

Under the First Amendment, the government cannot "direct[]" a private entity "to accommodate messages it would prefer to exclude." *Moody*, 603 U.S. at 731. In "a slew of individual cases," the Supreme Court has consistently reaffirmed that the government cannot compel private entities to engage in particular speech or disseminate the speech of others. *Id.* at 727-31 (collecting cases). After all, when the government compels speech dissemination, that necessarily alters the content of the speech that the private entity *does* want to disseminate. *E.g.*, *Nat'l Inst. of Family & Life Advocates v. Becerra*, 585 U.S. 755, 766 (2018) ("*NIFLA*"). Strict scrutiny is "the most demanding test known to constitutional law." *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997). And it requires the government to "prove[]" that its requirements "are narrowly tailored to serve compelling state interests." *Id.* at 766.

Particularly relevant here, *PG&E* held that the government cannot compel private entities to carry particular messages. The Supreme Court

4

therefore invalidated a requirement mandating a company "to use *its* property"—a billing envelope with a newsletter that *PG&E* transmitted to each customer—"as a vehicle for spreading a message with which [the company] disagree[d]." 475 U.S. at 17. Otherwise, under this "coerced access," the company "'may be forced either to appear to agree . . . or to respond.'" *Hurley*, 515 U.S. at 575-76 (quoting *PG&E*, 475 U.S. at 15).

This kind of coerced speech is precisely what the injunction here might require. As Apple notes, the injunction could require Apple to disseminate speech that "includes disparaging statements about IAP." Mot.16. The First Amendment allows no such thing. It "makes the requirement more constitutionally offensive" when companies are required to accommodate speech that would "condemn" themselves. *Nat'l Ass'n of Mfrs.*, 800 F.3d at 530. As *PG&E* observed, it does not matter that Apple can respond with its own speech, because merely being put to the choice violates the First Amendment. Justifying compelled speech dissemination because speakers can "dissociat[e]" themselves from the compelled speech with "a disclaimer" would unconstitutionally "justify any law compelling speech." *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 584 U.S. 617, 663 (2018) (Thomas, J., concurring in part).

Likewise, the fact that the district court's injunction arguably operates in the commercial context does not diminish the First Amendment's protections. For example, the more lenient "*Zauderer* standard does not apply here." *NIFLA*, 585 U.S. at 768. That standard is "limited to 'purely factual

5

and uncontroversial information about the terms under which services will be available.'" *Id.* (cleaned up) (quoting *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 651 (1985)). This injunction is not at all limited to compelling "purely factual and uncontroversial information." *Id.* And the speech compelled by the injunction "in no way relates to the services that" Apple provides. *Id.* at 769. "Instead, it requires" Apple "to disclose information about" *others'* services. *Id.* Specifically, it requires Apple to "broadcast competing developer speech." Mot.16. This is a significant intrusion on Apple's First Amendment right to be free from government compelled speech.

Because *Zauderer* does not apply, this Court should apply strict scrutiny. *E.g.*, *Entm't Software Ass'n v. Blagojevich*, 469 F.3d 641, 651-52 (7th Cir. 2006).[3]

## II. Judicial injunctions compelling speech do not get a lower level of First Amendment scrutiny.

The First Amendment equally applies when the *judiciary* compels speech. *E.g.*, *Citizens United*, 558 U.S. at 326. This Court should therefore closely analyze the First Amendment implications posed by the district court's order.

In general, judicial injunctions are subject to the First Amendment's stringent limitations. *E.g.*, *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753,

---

[3] Even if strict scrutiny did not apply, commercial speech intermediate scrutiny is a demanding standard. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 571-72 (2011). Because the speech compelled by the injunction is unrelated to the Apple services, the injunction flunks this level of scrutiny as well.

6

764-66 (1994) ("Injunctions . . . carry greater risks of censorship and discriminatory application than do general ordinances."); *Bank of Hope v. Miye Chon*, 938 F.3d 389, 397 (3d Cir. 2019); *Spokane Arcades, Inc. v. Brockett*, 631 F.2d 135, 138 (9th Cir. 1980), *aff'd*, 454 U.S. 1022 (1981). That includes injunctions compelling speech. *See, e.g., Phi Theta Kappa Honor Soc'y v. HonorSociety.org., Inc.*, 2025 WL 1030240, at *3 (5th Cir. Apr. 7, 2025) ("The disclaimer [compelled by injunction] constitutes impermissible compelled speech.").

Under this precedent, the district court's compelled-speech injunction must satisfy First Amendment strict scrutiny. But the district court did not even attempt this analysis, which alone is a basis to stay the compelled-speech part of the court's new injunction. In any event, this broad compelled-speech injunction is not the least restrictive means of—or even narrowly tailored to—furthering a sufficient governmental interest. It should therefore be stayed pending appeal.

7

## Conclusion

This Court should stay the district court's compelled-speech injunction pending appeal.

Dated: May 12, 2025          Respectfully submitted.

/s/ *Scott A. Keller*
Scott A. Keller
Steven P. Lehotsky
Jeremy Evan Maltz
LEHOTSKY KELLER COHN LLP
200 Massachusetts Ave. NW, Suite 700
Washington, DC 20001
(512) 693-8350
scott@lkcfirm.com

*Counsel for Amici Curiae*

8

## Certificate of Service

On May 12, 2025, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court.

*/s/ Scott A. Keller*
Scott A. Keller

9

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number 24-6256**

I am the attorney or self-represented party.

**This brief contains 1405 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[x] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3), as calculated under Cir. R. 32-3.

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

  [ ] it is a joint brief submitted by separately represented parties;

  [ ] a party or parties are filing a single brief in response to multiple briefs; or

  [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** */s/ Scott A. Keller*     **Date** May 12, 2025

10