# No. 25-2935

### IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

EPIC GAMES, INC.,

*Plaintiff-Appellee,*

v.

APPLE INC.,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Northern District of California,
No. 4:20-cv-05640-YGR
Hon. Yvonne Gonzalez Rogers

**BRIEF OF AMICUS CURIAE DIGITAL CONTENT NEXT IN SUPPORT OF APPELLEE'S OPPOSITION TO APPELLANT'S MOTION FOR PARTIAL STAY PENDING APPEAL**

Karl Huth
Matthew Reynolds
J. Lee Hill
Jack Mitchell
HUTH REYNOLDS LLP
41 Cannon Court
Huntington, NY 11743
(631) 263-3648
*Counsel for Amicus Curiae
Digital Content Next*

# CORPORATE DISCLOSURE STATEMENT

No. 25-2935

Epic Games, Inc.,
*Plaintiff-Appellee,*

v.

Apple Inc.,
*Defendant-Appellant.*

Under Federal Rule of Appellate Procedure 26.1, Digital Content Next certifies that it has no parent corporation, and that no publicly held company owns 10% or more of its stock.

Date: May 21, 2025

                                                            Huth Reynolds LLP

                                                            */s/ Karl Huth*
                                                            Karl Huth
                                                            *Counsel for Amicus Curiae*
                                                           *Digital Content Next*

# TABLE OF CONTENTS

INTEREST OF AMICUS CURIAE ............................................................................1

INTRODUCTION ....................................................................................................3

ARGUMENT ............................................................................................................6

    I.    The District Court Order Clarifying and Enforcing Its Prior Injunction Is Lawful. ................................................................................................................6

    II.    A Stay Would Cause Lasting Harm to DCN Members and the Public ........7

    III.    Apple's Requested Stay Would Upend the Status Quo and Further Disrupt the Mobile App Space. ...............................................................................10

CONCLUSION ......................................................................................................12

## TABLE OF AUTHORITIES

**Cases**

*Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946 (9th Cir. 2023) ................................... 3

*International Union, UMWA v. Bagwell*, 512 U.S. 821, 114 S.Ct. 2552 (1994) ....... 7

## TABLE OF AUTHORITIES

**Cases**

*Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946 (9th Cir. 2023) ................................... 3

*International Union, UMWA v. Bagwell*, 512 U.S. 821, 114 S.Ct. 2552 (1994) ....... 7

iii

## TABLE OF AUTHORITIES

**Cases**

*Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946 (9th Cir. 2023) ................................... 3

*International Union, UMWA v. Bagwell*, 512 U.S. 821, 114 S.Ct. 2552 (1994) ....... 7

Digital Content Next ("DCN") submits this brief[1] as amicus curiae in opposition to Appellant Apple Inc.'s ("Apple") motion for a partial stay pending appeal, Dkt. No. 7-1 (the "Motion").[2]

**INTEREST OF AMICUS CURIAE**

Founded in 2001, DCN is the only trade organization dedicated to serving the needs of high-quality digital content companies that enjoy trusted, direct relationships with consumers and advertisers. DCN's members include many of the most trusted and well-respected publishing brands in the United States. Together, DCN's members have an unduplicated audience of 259 million unique visitors and reach 95 percent of the U.S. online population. DCN's member list is a "who's who" of the American media and publishing industry:

---

[1] Apple and Epic consented to the filing of this brief. No party's counsel authored this brief in whole or in part, no party or their counsel contributed money intended to fund the preparation or submission of this brief, and no person other than DCN or its counsel contributed money that was intended to fund preparing or submitting the brief.

[2] Unless otherwise indicated herein, all defined terms take on the meaning given to them in Apple's Motion.

1

**DCN Member Organizations**



These organizations, which represent a range of editorial perspectives, play a critical role in providing news, entertainment and information to the public. Apple, through its anticompetitive actions and disregard for the Injunction, has placed significant burdens on DCN members' ability to provide these services.

Consumers choose DCN member brands because they value trustworthy information that has gone through a rigorous editorial process. In light of Apple's dominant market position, DCN's members must work extensively with and through Apple to promote and distribute their original content and apps, engage with subscribers, and find new audiences. DCN and its members would thus be directly impacted by Apple's requested stay and have a substantial interest in ensuring that the district court's Injunction against Apple is enforced.

2

DCN's members have been subject to Apple's anti-steering restrictions for years. Apple's anticompetitive behavior has injured not only DCN and its members, but also the entire American public, which relies on DCN's members and the content they provide. DCN accordingly has a unique perspective that can aid the Court in resolving, and rejecting, Apple's Motion.

**INTRODUCTION**

In 2021, at the conclusion of a three-week bench trial, the district court issued its Injunction, accompanied by a 180-page order prohibiting Apple's "anti-steering provisions". On appeal, this Court affirmed the district court's finding that Apple's actions violated California competition law and left the Injunction in place.[3] Apple sought Supreme Court review of this Court's decision, challenging the breadth and nationwide scope of the Injunction, but the Supreme Court declined to grant certiorari, allowing the Injunction to take effect.

At that point, having exhausted its legal avenues to challenge the Injunction, Apple was required to comply with it. But instead of complying, Apple deliberately circumvented the Injunction through new policies designed to preserve the benefits (and incredible profitability) of Apple's unlawful scheme. After extensive discovery, the district court called out Apple's deceptive and contumacious conduct for what it was: an end-run around the plain language and purpose of the Injunction. Apple now

---

[3] *See Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 966, 1002-1003 (9th Cir. 2023).

3

requests a partial stay of the district court's Order so that it can continue to reel in supracompetitive fees at the expense of fair competition and the American public.

Apple's request for a stay is unwarranted and contrary to the public interest. *First*, Apple's Motion is premised on mischaracterizing the Order as an improper "new" injunction rather than what it is: enforcement of the original Injunction, which this Court has already upheld. Apple's position is both wrong and cynical; as shown by the ample record below, Apple, at every turn, designed its policies to circumvent the Injunction, and even put up a high-ranking executive to lie under oath to conceal Apple's culpability. The district court's Order is lawful, as it simply clarifies and enforces the Injunction by prohibiting the specific conduct Apple used to circumvent it. Entering Apple's requested stay would frustrate the purpose of the Injunction and allow Apple to continue its policies of unlawfully constraining market competition and freedom of information.

*Second*, a stay would cause lasting harm to DCN's members by allowing Apple to use anticompetitive commissions and restrictions to prohibit those participants from employing linked-out transactions, thus stifling the freedom of the press to disseminate information to the public without Apple first getting its anticompetitive cut.

*Third*, Apple's Motion should be rejected because, in contrast to the ordinary circumstances in which a stay is designed to preserve the status quo, a stay here

4

would *overturn* the existing status quo prescribed by the Injunction and now enforced through the Order. App developers, including DCN members, have already begun to adjust and update their apps on the App Store to take advantage of the protections afforded by the Injunction. This has allowed developers to reengage the public in new ways—*i.e.*, precisely the kind of competitive market environment that the Injunction was designed to ensure. A stay would harm the relationship between DCN members and their customers, and chill ongoing efforts by DCN's members to provide consumers with news and information at lower prices or to reinvest in the creation of new content.

While Apple claims it faces irreparable harm and that its business has been disrupted by the Order, Apple has proven itself to be highly resilient and more than capable of revising its App Store policies in real time. Indeed, by the end of ***the very same day*** that the Supreme Court denied certiorari and the Injunction went into effect, Apple had already filed its Notice of Compliance contending that it had adjusted its practices to comply with the Injunction. In the time since the Order was issued, many developers, including DCN members, have already submitted or begun developing revised apps in reliance on the Injunction. There is no emergency here other than Apple's desire to continue flouting court orders and shielding itself from the forces of competition. Apple's Motion should be rejected.

5

# ARGUMENT

### I. The District Court Order Clarifying and Enforcing Its Prior Injunction Is Lawful.

The Order is lawful and proper. The district court used the Order both to clarify the Injunction and to enforce it by putting an end to Apple's willful violations. The court's Order was well supported by overwhelming evidence from both the original trial and from the injunction enforcement phase, demonstrating that Apple deliberately and deceitfully circumvented the Injunction.

The Order was necessary to clarify the Injunction and to enforce it. Courts have the power to do both. As the district court found, Apple violated the Injunction, choosing to "defy this Court's order and manufacture post hoc justifications for maintaining an anticompetitive revenue stream." Order.76. Apple's conduct violated both the "spirit" and the "literal text" of the Injunction. Order.57. Thus, the Order stems from Apple's violation of the Injunction—it is not an entirely "brand new" injunction, as Apple claims. Mot.6.

Apple wrongly characterizes the Order as "punitive". Mot.6. In fact, the Order explicitly states that the district court was only placing "*restrictions* on the specific actions Apple took to violate this Court's Injunction". Order.76 (emphasis in original). The district court mentioned the possibility of imposing monetary civil contempt sanctions but *declined to do so*, noting only that such sanctions *may* be appropriate in the future if Apple attempted to violate the Injunction *again*.

6

Order.76.[4] The relevant parts of the Order do not constitute punishment or monetary sanctions of any kind.

The Order's enforcement of the Injunction is not a new "sanction", as Apple contends; to the contrary, the Order is remedial, and puts an end to Apple's proven violations of the Injunction.[5] Unlike the "paradigmatic" civil contempt sanction of imprisoning a contemnor until the contemnor complies with an injunction, *International Union, UMWA v. Bagwell*, 512 U.S. 821, 114 S.Ct. 2552, 2557 (1994), the Order does not force compliance through punishment but rather prohibits the actions that Apple took to violate the Injunction. While the district court could have used its civil contempt authority to impose additional "new" injunctions, the plain language of the Order demonstrates that it did not. Instead, the district court merely clarified that the specific actions Apple took to circumvent the court's Injunction were prohibited.

## II. A Stay Would Cause Lasting Harm to DCN Members and the Public.

Requiring Apple to finally abide by the terms of an Injunction that it has been circumventing since 2021 would not harm Apple's interest. Granting Apple's stay, however, would adversely impact the critical press function played by DCN's

---

[4] While the Order's referral to the U.S. Attorney for criminal contempt raises a possibility of criminal punishment, that is unrelated to the remedial relief granted by the Order.

[5] The Order additionally imposed a discovery sanction for Apple's abusive withholding of nonprivileged documents, but that is not relevant to the stay.

7

members.[6] Staying the effectiveness of the Order, and thereby allowing Apple to continue financially penalizing and constraining DCN members from employing competitive payment options, would also harm the public interest by throttling content creation and reducing the public's access to independent media sources, television, film, and other content.

Apple's Motion seeks to allow Apple to "[i]mpos[e] any commission or any fee on purchases that consumers make outside an app" and "audit, monitor, track or require developers to report purchases". Mot.2. These fees target one type of external transaction: the very linked transactions that the district court found to be a competitive threat. Apple's proposed commissions would deter implementation of external links and chill consumers from using external links that could allow developers, including publishers and news organizations, to provide access to quality content at lower prices or to increase their investment in journalistic activities.

---

[6] Putative amicus curiae NetChoice submitted a proposed amicus brief that argues, paradoxically, that the Order violates the First Amendment by constraining Apple's purported right to **restrict the speech of developers on the App Store**. *See* Dkt No. 11-2. NetChoice's argument is baldly cynical, given the district court's extensive findings that Apple's policies were designed to restrict free trade and the ability of app developers to compete fairly with the prices on Apple's App Store. The Court should reject NetChoice's invitation, in a fashion reminiscent of the discredited *Lochner* era jurisprudence, to wield Apple's "freedom of speech" as a sword to undermine that very same freedom in the app developer community as well as the freedom of press. NetChoice's organization includes other massive, dominant platforms that obviously benefit from preserving anticompetitively high rates at the expense of consumers and content producers.

8

Apple's requested stay would accordingly hamstring the ability of DCNs' members to fulfill their critical First Amendment functions as publishers and members of the press.

Especially given the importance of subscription models to many DCN members, Apple's foreclosure of linked-out payment options will cause lasting injury. That injury will compound over time, because a renewing subscriber who has been steered to make purchases within IAP will typically continue passively renewing in the same manner. Persuading a subscriber to change a payment method is an expensive and time-consuming process that requires the content provider to change its app, advise its customers of the changes, and encourage them to change their payment preferences. If Apple's Motion is granted, that process would be made even more unpredictable, as Apple could seek to impose commissions, restrictions and design requirements that impose additional friction and increase the chance that a subscriber will fail to switch. Consequently, even a temporary stay would cause long-term damage to DCN members.

Apple's proposed stay would injure all DCN members. That includes members that participate in Apple's Video Partner Program ("VPP") and News Partner Program ("NPP"). These programs correspond to Apple TV and Apple News. Throughout the pendency of the Injunction, Apple illegally barred NPP and VPP participants from using linked-out transactions at all. The Order correctly found

9

this conduct violated the Injunction—and notably, Apple does not seek to stay that portion of the Order. Nevertheless, if Apple's motion is granted, Apple could seek to impose commissions and restrictions to continue to preclude VPP and NPP participants from using competitive external payment options. Moreover, Apple could exploit its control over the Apple TV and Apple News ecosystems, and their content prioritization algorithms, to further penalize developers who seek to use competitive payment platforms.

### III. Apple's Requested Stay Would Upend the Status Quo and Further Disrupt the Mobile App Space.

Since the district court's Order was issued on April 30, 2025, app developers and publishers have already begun rolling out changes to their apps to avail themselves of the procompetitive benefits of the Injunction. DCN members have submitted or are in the process of developing and submitting updated apps for approval. Spotify, the music streaming service, announced publicly that Apple approved its new app update.[7] In addition, Apple continues to introduce unnecessary friction in how developers can offer users alternative payment options. For example, Patreon, a platform for content creators, immediately submitted an app update using the external payment functionality on its app—only to have Apple force Patreon to

---

[7] *See* https://newsroom.spotify.com/2025-05-01/following-landmark-court-ruling-spotify-submits-new-app-update-to-apple-to-benefit-u-s-consumers/ (last accessed May 19, 2025).

10

resubmit its app so the linked-out payment options open in an external browser rather than the app's embedded browser.[8] There is no good reason to disrupt app developers' innovation efforts pending appeal.

Apple's recent actions demonstrate that, far from being chastened by the Order, Apple is undaunted and continues to pursue its anticompetitive strategy. Apple's actions to force Patreon's external payment option into a separate browser are plainly designed to induce friction and encourage "breakage" to chill user attempts to switch.  On May 16, 2025, Epic Games filed a renewed motion before the district court to enforce the Injunction, stating that Apple refused to accept a modified version of Epic's app that complied with the Injunction, and that Apple now refuses to consider Epic's app until this Court has "resolved [Apple's] pending request for a partial stay". (Dkt. 1568 (4:20-cv-05640-YGR), at 3 (quoting a letter from Apple).) Apple's brazen resistance to the Injunction and the Order—essentially *arrogating a stay to itself before this Court has even resolved the Motion*—demonstrates that Apple plans to, and will, abuse any stay to benefit itself at the expense of the public.

When the shoe was on the other foot, app developers and publishers—and the public—had to wait years before the Injunction finally went into effect. That delay

---

[8] *See* https://techcrunch.com/2025/05/16/after-adding-its-own-billing-option-on-ios-apple-asks-patreon-to-move-it-to-an-external-browser/ (last accessed May 19, 2025).

11

served Apple's purpose of maintaining the pre-Injunction baseline while it exhausted all possible avenues of appeal. During that period, app developers and publishers unilaterally bore the costs of Apple's unlawful policies. Even after the Injunction finally went into effect, Apple prolonged its scheme by violating the Injunction until the district court's Order of April 30, 2025 specifically addressed Apple's violations and enforced the Injunction. The Order has finally put an end to Apple's program of delay and obfuscation. But now Apple, unhappy with the status quo, is asking this Court to change the rules and provide Apple yet more opportunity to charge supracompetitive fees and place onerous restrictions on app design, all to continue maximizing Apple's profits at the public's expense.

The Injunction, as enforced by the district court, is now the status quo. Apple already appealed the Injunction, and lost. Apple already petitioned for certiorari to challenge the Injunction, and its petition was denied. This Court should maintain the status quo, deny Apple's Motion, and leave the Injunction in full effect.

## CONCLUSION

This Court should deny Apple's Motion.

12

Dated: May 21, 2025          Respectfully submitted,

                                         */s/ Karl Huth*

                                         Karl Huth
                                         Matthew Reynolds
                                         J. Lee Hill
                                         Jack Mitchell
                                         HUTH REYNOLDS LLP
                                         41 Cannon Court
                                         Huntington, NY 11743
                                         (631) 263-3648
                                         *Counsel for Amicus Curiae*
                                         *Digital Content Next*

## CERTIFICATE OF SERVICE

I certify that, on May 21, 2025, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court.

*/s/ Karl Huth*
Karl Huth
*Counsel for Amicus Curiae*
*Digital Content Next*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number 25-2935**

I am the attorney or self-represented party.

**This brief contains <u>2600</u> words,** excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[x] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


**Signature** */s/ Karl Huth*       **Date** May 21, 2025