# No. 25-2935

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE NINTH CIRCUIT

EPIC GAMES, INC.,

*Plaintiff-Appellee,*

v.

APPLE INC.,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Northern District of California,
No. 4:20-cv-05640-YGR
Hon. Yvonne Gonzalez Rogers

**MOTION FOR LEAVE TO FILE BRIEF OF
AMICUS CURIAE DIGITAL CONTENT NEXT IN SUPPORT OF
APPELLEE'S OPPOSITION TO APPELLANT'S MOTION FOR
PARTIAL STAY PENDING APPEAL**

Karl Huth
Matthew Reynolds
J. Lee Hill
Jack Mitchell
HUTH REYNOLDS LLP
41 Cannon Court
Huntington, NY 11743
(631) 263-3648
*Counsel for Amicus Curiae
Digital Content Next*

# CORPORATE DISCLOSURE STATEMENT

No. 25-2935

EPIC GAMES, INC.,

*Plaintiff-Appellee,*

v.

APPLE INC.,

*Defendant-Appellant.*

Under Federal Rule of Appellate Procedure 26.1, Digital Content Next certifies that it has no parent corporation, and that no publicly held company owns 10% or more of its stock.

Date: May 21, 2025

HUTH REYNOLDS LLP

*/s/ Karl Huth*
Karl Huth
*Counsel for Amicus Curiae
Digital Content Next*

i

Amicus curiae Digital Content Next ("DCN") respectfully moves for leave to file the accompanying amicus brief in support of Epic Games' opposition to Apple's motion for partial stay pending appeal. *See* Fed. R. App. P. 29(a)(3); Cir. R. 29-2, 29-3.[1] Pursuant to Circuit Rule 29-3, the undersigned counsel inquired with counsel for the parties and obtained the consent of all parties to the filing of the brief.

DCN is a national trade organization dedicated to serving the needs of high-quality digital content companies that enjoy trusted, direct relationships with consumers and advertisers.[2] DCN's members include many of the most trusted and well-respected publishing brands and media outlets in North America. Together, DCN's members have an unduplicated audience of 259 million unique visitors and reach 95 percent of the U.S. online population.

Millions of Americans get news, entertainment, and other digital content from DCN's members on their mobile devices. In light of Apple's dominant market position in the United States, DCN's member companies must work extensively with and through Apple to promote and distribute their original content and apps, engage with existing subscribers and audiences, and find new audiences. In addition, many

---

[1] No party's counsel authored this brief in whole or in part, no party or their counsel contributed money intended to fund the preparation or submission of this brief, and no person other than DCN or its counsel contributed money that was intended to fund preparing or submitting the brief.

[2] A list of DCN's members is available at https://digitalcontentnext.org/membership/members/.

1

Americans use Apple News and Apple TV to view content produced or distributed by DCN's members. Member companies that provide content to these platforms participate in Apple's Video Partner Program ("VPP") and News Partner Program ("NPP") programs, which correspond to Apple TV and Apple News.

The resolution of Apple's motion will directly affect DCN and its members. As explained in DCN's proposed brief, Apple seeks to disrupt the status quo to reimpose restrictions that the district court found violated its Injunction. The order that Apple seeks to stay was remedial, not a new injunction. As developers who were injured by Apple's violations of the Injunction, DCN's members have an interest in seeing the Injunction in effect.

The restrictions Apple seeks to reimpose will have broad real-world impacts on all app developers and their users—not just gaming apps, but including publishers and members of the press, whose critical function in U.S. society is enshrined in the First Amendment to the U.S. Constitution. App developers, including DCN members, have already taken steps in reliance on the Injunction being in effect, such as developing a new app update or submitting a revised app for Apple's approval. Chilling external payment options will have especially long-lasting effects for DCN members that rely on subscription models because subscribers who purchase a subscription via Apple's In-App Purchasing may automatically renew it for years before changing payment methods.

2

DCN's members have long been subject to Apple's anti-steering restrictions—often in direct competition with Apple's own apps and services—and have extensive experience with developing apps under Apple's App Store guidelines. DCN's members have broad experience with Apple's VPP and NPP programs in particular. DCN can provide the Court with a broader understanding of how Apple uses the App Store to restrict price competition and why the district court's recent order was lawful and necessary to enforce its Injunction.

Apple's pending motion also raises important First Amendment issues. Speech is *the* core activity of DCN's members. DCN's members put the First Amendment into practice on a daily basis. Some of DCN's members are press organizations that participated in landmark Supreme Court cases that continue to define the contours of the First Amendment's freedoms of speech and of the press. DCN's members collectively play a critical role in informing the public. DCN offers a useful counter-perspective on how Apple's anticompetitive App Store policies implicate the First Amendment. DCN therefore has a unique perspective that will aid the Court in its resolution of Apple's pending motion.

DCN participated as amicus curiae in the proceeding below and has filed an amicus brief in this Court in another case involving a large technology platform. *DZ Reserve v. Meta Platforms, Inc.*, 96 F.4th 1223, 1230 (9th Cir. 2024). Moreover, Courts of Appeal possess broad discretion over whether to grant or deny leave to

3

amici under Rule 29, and are "well advised to grant motions for leave to file amicus briefs unless it is obvious that the proposed briefs do not meet Rule 29's criteria as broadly interpreted". *Lefebure v. D'Aquilla*, 15 F.4th 670, 673, 676 (5th Cir. 2021). A brief that alerts a Court of Appeals to possible implications of a stay—as DCN's brief does—is both "relevant" and "desirable". *Cf. Neonatology Assocs., P.A. v. Comm'r*, 293 F.3d 128, 133 (3d Cir. 2002). And one of the "classic" roles of an amicus curiae is "assisting in a case of general public interest". *Miller-Whol Co., Inc. v. Comm'r of Labor & Indus., State of Mont.*, 694 F.2d 203, 204 (9th Cir. 1982). DCN fulfills that classic role.

Epic Games and Apple have both consented to the filing of the brief.

## CONCLUSION

For the foregoing reasons, DCN respectfully requests leave to file the accompanying amicus brief in support of Epic Games' opposition to Apple's motion for a partial stay pending appeal.

4

Dated: May 21, 2025　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　*/s/ Karl Huth*
　　　　　　　　　　　　　　　　　　　Karl Huth
　　　　　　　　　　　　　　　　　　　Matthew Reynolds
　　　　　　　　　　　　　　　　　　　J. Lee Hill
　　　　　　　　　　　　　　　　　　　Jack Mitchell
　　　　　　　　　　　　　　　　　　　HUTH REYNOLDS LLP
　　　　　　　　　　　　　　　　　　　41 Cannon Court
　　　　　　　　　　　　　　　　　　　Huntington, NY 11743
　　　　　　　　　　　　　　　　　　　(631) 263-3648
　　　　　　　　　　　　　　　　　　　*Counsel for Amicus Curiae*
　　　　　　　　　　　　　　　　　　　*Digital Content Next*

5

## CERTIFICATE OF COMPLIANCE

I certify that this Motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) and Circuit Rule 27-1(1)(d) because, excluding the parts of the Brief exempted by Fed. R. App. P. 27(a)(2)(B), this document contains 886 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and (6) because this document has been prepared in a proportionally spaced typeface using Times New Roman font in 14 point size.

*/s/ Karl Huth*
Karl Huth
*Counsel for Amicus Curiae*
*Digital Content Next*

## CERTIFICATE OF SERVICE

On May 21, 2025, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court.

*/s/ Karl Huth*
Karl Huth
*Counsel for Amicus Curiae*
*Digital Content Next*

7