Case No. 25-2935

# United States Court of Appeals for the Ninth Circuit

EPIC GAMES, INC.,

*Plaintiff–Appellee,*

v.

APPLE INC.,

*Defendant–Appellant.*

On Appeal from the United States District Court
for the Northern District of California (Hon. Yvonne Gonzalez Rogers)
No. 4:20-cv-05640-YGR

**REPLY IN SUPPORT OF MOTION FOR A PARTIAL STAY OF INJUNCTION PENDING APPEAL**

Cynthia E. Richman
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, DC 20036
(202) 955-8500

Mark A. Perry
Zachary D. Tripp
Joshua M. Wesneski
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7511

*Counsel for Apple Inc.*

# TABLE OF CONTENTS

Introduction .................................................................................................... 1
Discussion ...................................................................................................... 3
    I.     Apple Is Likely to Succeed on the Merits ........................................... 3
          A.     The No-Commission Rule Is Unlawful ..................................... 5
          B.     The No-Condition Rule Is Unlawful ......................................... 9
          C.     The Injunction Cannot Be Enforced Prospectively ................. 10
    II.    Apple Will Suffer Irreparable Harm Absent A Stay ......................... 11
    III.   The Remaining Factors Favor a Stay ............................................... 12
Conclusion ................................................................................................... 13

i

# **TABLE OF AUTHORITIES**

**Cases**                                                                                               **Page(s)**

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*,
   559 F.3d 1046 (9th Cir. 2009) .................................................................. 12

*Beverage v. Apple Inc.*,
   101 Cal. App. 5th 736 (2024) ............................................................. 10, 11

*Carter v. Loc. 556, Transp. Workers Union of Am.*,
   2025 WL 1340536 (5th Cir. May 8, 2025) ............................................... 4

*Cedar Point Nursery v. Hassid*,
   594 U.S. 139 (2021) ................................................................................... 8

*Doe #1 v. Trump*,
   957 F.3d 1050 (9th Cir. 2020) .................................................................. 13

*Epic Games, Inc. v. Apple Inc.*,
   559 F. Supp. 3d 898 (N.D. Cal. 2021), *aff'd* 67 F.4th 946 ................. 1, 6

*Epic Games, Inc. v. Apple, Inc.*,
   67 F.4th 946 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 681 &
   682 (2024) ................................................................................................... 8

*In re Google Play Store Antitrust Litig.*,
   2024 WL 4438249 (N.D. Cal. Oct. 7, 2024) ............................................ 7

*In re Highland Cap. Mgmt., L.P.*,
   98 F.4th 170 (5th Cir. 2024) ................................................................ 4, 7

*Horne v. Dep't of Agric.*,
   576 U.S. 350 (2015) ................................................................................... 8

*Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*,
   774 F.3d 935 (9th Cir. 2014) .................................................................... 6

*Int'l Union, United Mine Workers of Am. v. Bagwell*,
   512 U.S. 821 (1994) ................................................................................... 3

*James v. Campbell*,
   104 U.S. 356 (1881) .................................................................................. 8

*McComb v. Jacksonville Paper Co.*,
   336 U.S. 187 (1949) .................................................................................. 7

*Moody v. NetChoice, LLC*,
   603 U.S. 707 (2024) .................................................................................. 9

*State Lands Comm'n v. Plains Pipeline, LP*,
   57 Cal. App. 5th 582 (2020) .................................................................. 10

*Taggart v. Lorenzen*,
   587 U.S. 554 (2019) .................................................................................. 3

*Venoco, LLC v. Plains Pipeline, L.P.*,
   2022 WL 1090947 (9th Cir. Apr. 12, 2022) ........................................ 10

*Whittaker Corp. v. Execuair Corp.*,
   953 F.2d 510 (9th Cir. 1992) .................................................................. 5

**Other Authorities**

Fed. R. Civ. P. 60(b) ........................................................................... 10,11

Fed. R. Civ. P. 65(d) .................................................................................. 5

Brian X. Chen, *What the Changes in Apple's App Store Mean for iPhone Users*, The New York Times (May 15, 2025), https://www.nytimes.com/2025/05/15/technology/personaltech/iphone-app-store-changes.html ........................................ 13

Kif Leswing, *Fortnite approved by Apple, returns to U.S. App Store 5 years after removal*, CNBC (May 20, 2025), https://www.cnbc.com/2025/05/20/apple-fortnite-app-store-epic-games.html .................................................................................. 12

iii

## INTRODUCTION

Epic's response is more notable for what it doesn't say than what it does. It does not explain how an injunction that says nothing about commissions suddenly sets the commission for out-of-app purchases at zero percent—in perpetuity. It does not reconcile that commission prohibition with the district court's previous recognition that Apple "could still charge a commission" for non-IAP purchases. *Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898, 1042 (N.D. Cal. 2021), *aff'd*, 67 F.4th 946 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 681 & 682 (2024). And it does not explain how a narrow injunction against precluding in-app links became a total bar on Apple's ability to regulate content within its own App Store. That is because Epic has no answer: The district court went far beyond enforcing the original Injunction, issuing new prohibitions that radically transform the narrow remedy previously upheld by this Court. These punitive sanctions violate every rule of contempt and contravene multiple constitutional protections. A partial stay is warranted.

Start with the most glaring omission in Epic's response: It fails to identify anything in the Injunction that prohibits Apple from charging a

1

commission. The silence speaks volumes. The district court admitted that the Injunction "did not select a rate," Mot., Ex. A at 58, yet the court used civil contempt to impose an arbitrary rate of zero. Epic simply ignores that passage. Epic also ignores the court's statement that the court imposed the commission prohibition—without statutory or constitutional authority—because "Apple flouted the Court's order." *Id.* at 60 n.65. That powerfully confirms that the new rule is punitive.

So too for the court's ruling barring *any* conditions on link placement or language. Again, Epic identifies nothing in the Injunction setting forth such an extreme proscription. And the district court refused to adjudicate Apple's significant objections to this new rule because of what it labeled Apple's "true motive[s]." *Id.* at 62. That exceeds the civil contempt power.

Epic also has no sound response to the conflict between state and federal judgments that precludes prospective enforcement of the original Injunction. California's courts have decided the identical state-law claim in Apple's favor, and federal courts must give full faith and credit to that judgment.

Epic does not dispute that Apple will be irreparably harmed by the no-commission and no-condition rules—by the district court's estimate, losing

2

"hundreds of millions to billions" of dollars a year. *Id.* at 16. Developers are already taking advantage of the unlawful new prohibitions to disparage and undermine the exclusivity of IAP—in contravention of this Court's mandate. By contrast, Epic fails to show how a partial stay would harm it, and fails to dispute the evidence showing that the public interest favors a stay because the Order destabilizes a platform trusted by small developers and millions of consumers. This Court should pause the no-commission and no-condition rules until this expedited appeal has been decided.

## DISCUSSION

### I. Apple Is Likely to Succeed on the Merits

Epic does not dispute that civil contempt is objective and cannot be used to punish non-compliance—regardless of any findings about subjective intent or motivation. *See Taggart v. Lorenzen*, 587 U.S. 554, 561, 565 (2019); *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826–28 (1994). Thus, while Apple strongly disagrees with many of the district court's factual findings, to which Epic devotes much of its response, they are irrelevant to this stay motion.*

---

\* Many of the findings are unsupported or clearly erroneous. For example, the district court found that Apple "knew it was violating the

3

As the Fifth Circuit recently emphasized in vacating contempt sanctions, "intent is unimportant to civil contempt." *Carter v. Loc. 556, Transp. Workers Union of Am.*, 2025 WL 1340536, at *30 (5th Cir. May 8, 2025) (quotation marks omitted); *see also In re Highland Cap. Mgmt., L.P.*, 98 F.4th 170, 176 (5th Cir. 2024) (the defendant's "intentions—and virtually all of the discovery and the … court's mini-trial—were irrelevant to civil contempt"). Indeed, such findings warrant increased appellate scrutiny: "[W]hen a court's contempt sanction in a civil matter is both overbroad in scope and undoubtedly punitive in nature, the judiciary risks appearing contemptuous like the contemnor." *Carter*, 2025 WL 1340536, at *30.

The no-commission and no-condition rules that Apple seeks to stay are overbroad and punitive. Epic claims the court "simply impose[d] restrictions on the specific actions Apple took to violate the Injunction," which were "designed to be and were a *de facto* prohibition on steering." Opp'n 3, 5 (quotation marks omitted). But the new prohibitions go far beyond those actions and imposing them forever (with no opportunity to purge) is plainly

---

Injunction." Ex. A at 59. But the record shows only that "at every step Apple *considered* whether its actions would comply." *Id.* (emphasis added). Careful consideration of an injunction's requirements is a sign of good faith, not willful disobedience.

4

not "the minimum sanction necessary to obtain compliance." *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992). They permanently and categorically bar Apple from charging *any* commission or imposing *any* conditions on link placement or language. Apple is likely to succeed on the merits of its challenges to those new prohibitions.

A.   The No-Commission Rule Is Unlawful

Epic pointedly fails to identify anything in the Injunction that prohibits Apple from charging a commission on linked transactions. Epic asserts that Apple "violated the literal text," Opp'n 12 (quotation marks omitted), but it does not identify any text—literal or otherwise—that enjoined Apple from charging any commission. None exists.

Epic invokes the Rule 52 Order to argue that charging a commission frustrates the Injunction's "purpose." *Id.* at 16. But Epic does not mention Rule 65, which requires the injunction itself to "describe in reasonable detail—and not by referring to [any] other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(C). The Injunction nowhere hints that the "acts restrained" include charging any commission. Indeed, the district court acknowledged that the original Injunction "did not select a rate." Ex. A at 58.

5

Epic argues that courts can enforce an injunction's "spirit" divorced from its text. Opp'n 16 (citing *Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935 (9th Cir. 2014)). But *Sea Shepherd* found contempt where the enjoined party perpetrated an expressly enjoined act indirectly (through third parties). Epic cites no case holding a defendant in contempt for engaging in entirely new and different conduct that the injunction *does not mention*—and then entering a permanent sanction that goes far beyond the defendant's particular conduct without adjudicating the legality of the new prohibition.

Epic also overlooks the district court's prior determination (affirmed by this Court) that "in the absence of IAP, Apple could still charge a commission on developers." 559 F. Supp. 3d at 1042. That statement, and many others, *see, e.g., id.* at 1013, 1042 n.617, contextually confirm that the original Injunction did not prohibit a commission. Moreover, this Court recognized that "economically rational developer[s] would choose to use alternative [payment] processors" even if Apple "collect[ed] a commission on payments." 67 F.4th at 996 (quotation marks omitted). Epic is thus wrong that any commission is inconsistent with the Injunction.

6

Epic contends that Apple seeks "immunity from civil contempt," like in *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192 (1949). Opp'n 14. Not so. The injunction in *McComb* "[b]y its terms" enjoined future violations of the Fair Labor Standards Act, so it unambiguously enjoined the defendant's later violations of that Act. 336 U.S. at 192. By contrast, charging a commission is *unambiguously outside* the Injunction and is perfectly lawful.

Epic also has no answer to the extensive indicia—including the district court's focus on Apple's motives—that the new commission prohibition is punitive. *Cf. Highland*, 98 F.4th at 176 (finding sanctions punitive when the court "permitted extensive discovery and conducted a marathon evidentiary hearing to unearth" the defendant's "role" and "intentions"). Epic does not deny that Apple has no ability to purge the sanction, so it is not coercive. Nor does Epic claim that it is remedial. And Epic ignores the district court's refusal to adjudicate Apple's defenses because "Apple flouted the Court's order." Ex. A at 60 n.65. That is punishment.

The commission prohibition is unlawful as a matter of substantive law. California courts reject efforts to use the UCL for rate-setting. *See* Mot. 13–14 (collecting cases). Federal courts likewise refuse to engage in "detailed rate-setting." *In re Google Play Store Antitrust Litig.*, 2024 WL 4438249, at

7

\*9 (N.D. Cal. Oct. 7, 2024). Epic asserts those cases do not "immunize[] Apple's conduct" because they do not address contempt. Opp'n 17. That proves Apple's point: The original UCL Injunction could not have barred Apple from charging any commission, yet the district court has now invoked the contempt power to engage in the most extreme form of rate-setting—precluding Apple, forever, from charging for access to its property.

Worse, the no-commission rule permanently "appropriates for the enjoyment of third parties [Apple's] right to exclude." *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 149 (2021). The district court improperly deprived Apple of the right to exclude, concluding erroneously that "Apple does not have an absolute right to [its] intellectual property." Ex. A at 60 n.65. Epic's effort to cabin this right to physical takings, Opp'n 18, fails because the Takings Clause protects intellectual property as well. *See Horne v. Dep't of Agric.*, 576 U.S. 350, 359–60 (2015); *James v. Campbell*, 104 U.S. 356, 358 (1881) (intellectual property "cannot be appropriated or used by the government itself … any more than it can appropriate or use without compensation land"). The Order constitutes a judicial taking.

## B. The No-Condition Rule Is Unlawful

Epic identifies no language in the Injunction that arguably enjoins Apple from setting any conditions on link placement or language.

Epic also cannot refute that the no-condition rule contravenes the mandate: This Court held that it was "clearly lawful" for Apple to require developers to exclusively use IAP for in-app purchases. 67 F.4th at 998. Yet, as Epic does not dispute, the new no-condition rule allows developers to interfere with that exclusivity through link placement (*e.g.*, in the IAP purchase flow) or language (*e.g.*, disparagement of IAP). *See* Oliver Decl. ¶¶ 17–18. The Injunction prohibited Apple from precluding links, but said nothing about destroying the exclusivity of IAP.

Epic does not deny that the no-condition rule requires Apple to carry on its platform speech with which it disagrees. Epic tries to distinguish *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024), by asserting that "it is developers, not Apple, who own and are responsible for the content on their apps." Opp'n 20. But *NetChoice* similarly involved platforms for third-party content and found that forcing platforms to "accommodate messages [they] would prefer to exclude" triggers their own First Amendment rights. 603 U.S. at 731. So too here. Yet, the district court barred Apple from setting

9

conditions on links *without addressing* Apple's First Amendment rights as the platform operator, and it did so because of its perceptions about Apple's motivations. Both the methodology and the outcome are legally erroneous.

## C. The Injunction Cannot Be Enforced Prospectively

Rule 60(b) provides an independent basis to vacate the contempt sanctions. Epic's contention that "there is no conflicting state judgment," Opp'n 21, blinks reality. The *Beverage* trial court adjudicated the same state-law claim under the UCL, in a case brought by Epic's own customers, and the California court entered judgment *in Apple's favor* on that claim. Conflicts do not get more direct. Apple promptly brought *Beverage* to the district court's attention, but the court proceeded with the contempt proceedings anyway.

Epic has no meaningful response to *Venoco, LLC v. Plains Pipeline, L.P.*, 2022 WL 1090947, at \*2–3 (9th Cir. Apr. 12, 2022), which is strikingly similar. *See also* Mot. 19 (collecting other cases). In *Venoco*, the California appellate court broke from a prior Ninth Circuit decision because it failed to "analyz[e] the facts or reasoning of … cases that provide[d] for immunity." *State Lands Comm'n v. Plains Pipeline, LP*, 57 Cal. App. 5th 582, 587 (2020). Here too, the California appellate court

10

reached the opposite result from this Court's prior decision after breaking from that decision because it did not engage in "a rigorous analysis of the *Colgate* doctrine and its effect on UCL claims." *Beverage v. Apple Inc.*, 101 Cal. App. 5th 736, 756 n.6 (2024).

Epic also ignores the full faith and credit problem: The Injunction and Order override the *Beverage* judgment in Apple's favor on the same state-law claim, transforming Apple's win into an outright loss. Epic fails to mention comity or federalism, even though the Injunction exports nationwide the erroneous resolution of a state-law claim. And the new and erroneous prohibitions apply to all developers, even though Epic never sought to certify a class. Those serious inequities warrant Rule 60(b) relief and further support a stay pending appeal.

## II. Apple Will Suffer Irreparable Harm Absent A Stay

Epic does not dispute that, if a stay is denied but Apple later wins its appeal, Apple will suffer irreparable harm: According to the Order, Apple stands to lose "hundreds of millions to billions" of dollars annually, and Apple will be unable to recover those sums from Epic because they will be in the pockets of non-parties. *See* Mot. 22–23. Epic asserts that "Apple's loss of revenue is not a 'harm'; it is the intended result of a fully

11

adjudicated Injunction." Opp'n 2. But that argument presupposes that Epic will win on the merits. Without a stay, Apple will suffer irreparable harm if *it* wins, which is the crux of the inquiry at this stage. *See Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1059 (9th Cir. 2009).

The no-condition rule will also cause irreparable harm. "Several prominent developers have already had applications with external purchase links placed on the App Store." Opp'n 26 n.6. Precluding Apple from restricting the content or placement of those links will cause Apple irreparable harm through the loss of IAP exclusivity and diminished commission revenue on transactions for digital content.

### III. The Remaining Factors Favor a Stay

Epic will suffer little or no harm from a stay. The sole plaintiff, Epic Games, Inc., has no apps on the App Store. On May 20, 2025, Apple agreed to allow distribution of *Fortnite* through an Epic affiliate that is not a party to this litigation. *See* https://www.cnbc.com/2025/05/20/apple-fortnite-app-store-epic-games.html. If the stay is granted, that non-party might or might not pay some indeterminate amount of commissions on

linked transactions, depending on the decisions it makes in the future. That is not an irreparable harm to Epic.

The public interest would be served from a partial stay. Apple seeks to pause sweeping changes to the App Store until this Court has an opportunity to decide this expedited appeal. Preserving the status quo is a quintessential basis for a stay. *Doe #1 v. Trump*, 957 F.3d 1050, 1068–69 (9th Cir. 2020). And that weighs particularly heavily here given that—as established by evidence that Epic does not dispute—Apple is being forced to fundamentally change core aspects of its platform. *See* Oliver Decl. ¶¶ 17–20; *see also* https://www.nytimes.com/2025/05/15/technology/personaltech/iphone-app-store-changes.html. This Court should pause the two rules at issue in this motion to avoid disruption to a platform that is trusted by small developers and millions of consumers nationwide.

## CONCLUSION

The Court should enter a partial stay pending appeal.

13

Respectfully submitted,

|  |  |
|---|---|
| Cynthia E. Richman<br>GIBSON, DUNN & CRUTCHER LLP<br>1700 M Street, N.W.<br>Washington, DC  20036<br>(202) 955-8500 | */s/ Mark A. Perry*<br>Mark A. Perry<br>Zachary D. Tripp<br>Joshua M. Wesneski<br>WEIL, GOTSHAL & MANGES LLP<br>2001 M Street NW, Suite 600<br>Washington, DC 20036<br>(202) 682-7511<br>Mark.Perry@weil.com |

May 23, 2025

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record certifies that the brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) and Circuit Rule 27-1(1)(d) because, excluding the parts of the brief exempted by Fed. R. App. P. 27(a)(2)(B), this document contains 2,591 words.

This document complies with the typeface requirements of Fed. R. App. P. 27(d) because this document has been prepared in a proportionally spaced typeface using Century Schoolbook font in 14 point size.

*/s/ Mark A. Perry*
Mark A. Perry
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7511
Mark.Perry@weil.com

May 23, 2025

15

## CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2025, I electronically filed the foregoing **Reply In Support of Motion to Stay Injunction Pending Appeal** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system, which will send notification of such filing to all ACMS participants.

> */s/ Mark A. Perry*
> Mark A. Perry
> WEIL, GOTSHAL & MANGES LLP
> 2001 M Street NW, Suite 600
> Washington, DC 20036
> (202) 682-7511
> Mark.Perry@weil.com

May 23, 2025