Case No. 25-2935

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

EPIC GAMES, INC.,

*Plaintiff-Appellee*,

v.

APPLE INC.,

*Defendant-Appellant*.

On Appeal from the United States District Court
for the Northern District of California
No. 4:20-cv-05640-YGR
Hon. Yvonne Gonzalez Rogers

**BRIEF FOR LAWYERS FOR CIVIL JUSTICE AS *AMICUS CURIAE* IN
SUPPORT OF DEFENDANT-APPELLANT**

Jonathan M. Redgrave
Gareth T. Evans
REDGRAVE LLP
4800 Westfields Blvd
Suite 250
Chantilly, VA 20151
(571) 393-5276
jredgrave@redgravellp.com

*Counsel for Amicus Curiae*
*Lawyers for Civil Justice*

**FEDERAL RULE OF APPELLATE PROCEDURE 29 STATEMENT**

The filing of this amicus curiae brief is permitted under Federal Rule of Appellate Procedure 29(a)(2) as both parties, Epic Games, Inc. and Apple Inc., have consented.

## TABLE OF CONTENTS

STATEMENT OF IDENTIFICATION.................................................................VII

RULE 29(A)(4)(E) STATEMENT ...................................................................X

SUMMARY OF THE ARGUMENT ......................................................................1

ARGUMENT .........................................................................................................4

    I.     THE SINGLE PRIMARY PURPOSE TEST SHOULD BE
           REJECTED IN THIS CONTEXT BECAUSE IT UNDERMINES
           THE PURPOSES OF THE FEDERAL RULES AND THE
           ATTORNEY-CLIENT PRIVILEGE. ....................................................4

          A.    THE SINGLE PRIMARY PURPOSE TEST IS NOT
                   PREDICTABLE.........................................................................4

          B.    THE SINGLE PRIMARY PURPOSE TEST IS
                   UNREASONABLE AND IMPRACTICABLE TO APPLY IN
                   THE CONTEXT OF EFFORTS UNDERTAKEN AT THE
                   DIRECTION OF COUNSEL TO COMPLY WITH A COURT
                   INJUNCTION. ..........................................................................7

          C.    THE SINGLE PRIMARY PURPOSE TEST LEADS TO
                   NEEDLESS COSTS AND DELAY.........................................9

          D.    THE SINGLE PRIMARY PURPOSE TEST IS
                   INCONSISTENT WITH THE GOALS OF THE ATTORNEY-
                   CLIENT PRIVILEGE AND THE FEDERAL RULES. ..........11

    II.    THE SIGNIFICANT LEGAL PURPOSE TEST SHOULD BE
           APPLIED IN THIS CONTEXT AS IT IS CONSISTENT WITH THE
            PURPOSES OF THE FEDERAL RULES AND THE ATTORNEY-
           CLIENT PRIVILEGE ......................................................................16

          A.    THE SIGNIFICANT LEGAL PURPOSE TEST IS
                     CONSISTENT WITH THE GOALS OF THE FEDERAL
                   RULES AND IS BOTH PRACTICAL AND PREDICTABLE.
                   .................................................................................17

B.     MANY COURTS, INCLUDING THIS ONE, HAVE
RECOGNIZED THE MERITS OF APPLYING THE
SIGNIFICANT LEGAL PURPOSE TEST TO DUAL-
PURPOSE COMMUNICATIONS. ..........................................19

C.     THE SIGNIFICANT LEGAL PURPOSE TEST IS
CONSISTENT WITH THE PURPOSE OF THE ATTORNEY-
CLIENT PRIVILEGE ..............................................................21

D.     THE SIGNIFICANT LEGAL PURPOSE TEST DOES NOT
EXPAND THE PRIVILEGE OR SHIELD DISCOVERABLE
MATERIALS FROM DISCOVERY. ......................................22

CONCLUSION ........................................................................................24

# TABLE OF AUTHORITIES

## Cases

*Alomari v. Ohio Dep't of Pub. Safety*
    626 F. App'x 558 (6th Cir. 2015)................................................................7

*Brogdon v. Grady Mem'l Hosp. Corp.*
    No. 1:22-CV-4512-CMS, 2025 WL 948338 (N.D. Ga. Mar. 28, 2025).......20

*ChoreTime Equip., Inc. v. Big Dutchman, Inc.*
    255 F. Supp. 1020 (W.D. Mich. 1966)........................................................11

*City of Roseville Employees' Retirement System v. Apple Inc.*
    No. 19-cv-02033, 2022 WL 3083000 (N.D. Cal. Aug. 3, 2022) .................10

*Crews v. Rivian Auto., Inc.*
    No. CV 22-1524-JLS(EX), 2025 WL 365796 (C.D. Cal. Jan. 23, 2025) .....20

*Epic Games, Inc. v. Apple Inc.*
    No. 4:20-cv-05640-YGR ...............................................................................2

*Farrell v. United States Olympic & Paralymic Comm.*
    No. 1:20-CV-01178 (FJS/CFH), 2023 WL 4033290 (N.D.N.Y. June 15, 2023) ............................................................................................................20

*Fed. Trade Comm'n v. Boehringer Ingelheim Pharms., Inc.*
    892 F.3d 1264 (D.C. Cir. 2018).......................................................... passim

*Fisher v. United States*
    425 U.S. 391 (1976).....................................................................................22

*In re General Motors LLC Ignition Switch Litigation*
    80 F. Supp. 3d 521 (S.D.N.Y. 2015) ................................................ 9, 12, 17

*In re Grand Jury*
    23 F.4th 1088 (9th Cir. 2021) ............................................................ passim

*In re Kellogg Brown & Root, Inc.*
    756 F.3d 754 (D.C. Cir. 2014)........................................................... passim

*In re Sealed Case*
    737 F.2d 94 (D.C. Cir. 1984).......................................................................22

*Intex Recreation Corp. v. Bestway (USA), Inc.*
    No. CV 19-8596-JAK(EX), 2023 WL 6193018 (C.D. Cal. Sept. 8, 2023) ..20

*Jaffee v. Redmond*
   518 U.S. 1 (1996)...........................................................5

*Jones v. Carson*
   No. 15- cv-00310, 2018 WL 11410070 (D.D.C. Mar. 30, 2018)..................17

*Jordan v. U.S. Dep't of Lab.*
   308 F. Supp. 3d 24 (D.D.C. 2018)..................................23

*Lee v. EUSA Pharma US LLC*
   No. 2:22-CV-11145, 2024 WL 250064 (E.D. Mich. Jan. 23, 2024).............20

*Metricolor LLC v. L'Oreal USA, Inc.*
   No. 2:18-CV-00364-CAS-EX, 2023 WL 5830241 (C.D. Cal. Sept. 1, 2023)
   ...................................................................20

*Metricolor LLC v. L'Oreal USA, Inc.*
   No. CV 18-364-CAS(EX), 2023 WL 2628108 (C.D. Cal. Jan. 26, 2023)....20

*Mohawk Indus., Inc. v. Carpenter*
   558 U.S. 100 (2009)......................................................13

*Oracle USA, Inc. v. Rimini St., Inc.*
   No. 210CV00106LRHVCF, 2020 WL 5750850 (D. Nev. Sept. 25, 2020) ....8

*Pitkin v. Corizon Health, Inc.*
   No. 16- cv-02235, 2017 WL 6496565 (D. Or. Dec. 18, 2017) .....................18

*SEC v. Microtune, Inc.*
   258 F.R.D. 310 (N.D. Tex. 2009)........................................22

*Swidler & Berlin v. United States*
   524 U.S. 399, 409–11 (1998) .........................................5

*Trammel v. United States*
   445 U.S. 40 (1980).......................................................21

*United States ex rel. Wollman v. Mass. Gen. Hosp., Inc.*
   475 F. Supp. 3d 45 (D. Mass. 2020)...........................................17

*United States v. Jicarilla Apache Nation*
   564 U.S. 162 (2011)......................................................4

*United States v. Rowe*
   96 F.3d 1294 (9th Cir. 1996) ......................................24

*Upjohn Co. v. United States*
   449 U.S. 383 (1981).......................................... passim

v

**Other Authorities**

24 Charles Alan Wright et al., *Federal Practice and Procedure* § 5484
(1st ed. May 21, 2025 update) ......................................................................24

Paul Rice, 1 *Attorney-Client Privilege in the U.S.*, § 7:9 (2024-2025 ed.) ...... 12, 15

**Rules**

Fed. R. Civ. P. 1 ....................................................................................... 4, 17

Fed. R. Civ. P. 26(b)(1)............................................................................. 4, 12

Fed. R. Evid. 502 Advisory Committee Notes .............................................4

Model Rules of Pro. Conduct rr. 1.1, 1.4 (Am. Bar Ass'n 2024).................... 14, 15

## STATEMENT OF IDENTIFICATION

Lawyers for Civil Justice ("LCJ") is a national coalition of defense trial lawyer organizations, law firms, and corporations that promotes excellence and fairness in the civil justice system to secure the just, speedy, and inexpensive determination of civil cases. Since 1987, LCJ has been proposing and advocating for procedural reforms that (1) promote balance in the civil justice system, (2) reduce the costs and burdens associated with litigation, and (3) make the resolution of civil disputes more consistent and efficient. LCJ and its members have deep knowledge of and interest in the substance and correct interpretation and application of the Federal Rules of Civil Procedure and Federal Rules of Evidence.

LCJ is focused on promoting a sensible and balanced approach to discovery that ensures access to needed information, while maintaining uniform and predictable application of recognized protections and privileges. LCJ submits written comments related to the Civil Rules Advisory Committee's work to develop potential amendments to the Rules—including on privilege-related issues—and acts as *amicus curiae* in cases involving the interpretation and application of the Rules to promote fairness, clarity, and certainty for all civil cases. LCJ submitted extensive public comments to the Advisory Committee on Evidence Rules of the Judicial

Conference of the United States in 2007 on the then-proposed Fed. R. Evid. 502,[1] and in 2020 submitted suggested amendments to the Federal Rules of Civil Procedure governing privilege logging.[2] LCJ has participated in proceedings to protect the attorney-client privilege[3] and the applicability of work product protections to an internal investigation.[4] LCJ's members are deeply familiar with the key changes in technology over the last 20 years that have drastically increased the volume and altered the nature of communications in business organizations, including how in-house and outside counsel interact with business clients to provide legal advice.

LCJ's members both propound and respond to discovery requests and third-party subpoenas. They assert the attorney-client privilege and the work product doctrine when warranted and challenge such assertions when not. Accordingly, LCJ's interest here is to ensure that when courts evaluate the privilege status of dual-

---

[1] *See* Lawyers for Civil Justice, *Comments to the Advisory Committee on Evidence Rules of the Judicial Conference of the U.S.*, Re: Proposed Revisions to Rule 502, U.S. Courts (Jan. 5, 2007), https://www.uscourts.gov/sites/default/files/fr_import/06-EV-050.pdf.
[2] *See Privilege and Burden: the need to amend Rules 26(b)(5)(A) and 45(e)(2) to replace "document-by-document" privilege logs with more effective and proportional alternatives,* Lawyers for Civil Justice, Suggestion for Rulemaking to the Advisory Committee on Civil Rules, U.S. Courts (Aug. 4, 2020), https://www.uscourts.gov/sites/default/files/20-cv-r suggestion from lawyers for civil justice – rules 26 and 45 privilege logs 0.pdf.
[3] Brief of Amicus Curiae Lawyers for Civil Justice, *In re Grand Jury*, No. 21-1397 (Nov. 23, 2022). *See In re Grand Jury*, 143 S. Ct. 543 (2023) (dismissing the writ of certiorari as improvidently granted).
[4] Brief of Amicus Curiae Lawyers for Civil Justice, *Att'y Gen. v. Facebook, Inc.*, No. SJC-12946 (Mass. Nov. 13, 2020). *See Att'y Gen. v. Facebook, Inc.*, 487 Mass. 109, 110 (2021).

purpose communications in the context of internal corporate investigations, they apply tests that are predictable, consistent, and practical, and that work fairly for both requesting and producing parties in the context of the information age.

Because LCJ is an organization composed of both corporations and their external counsel, it has a vested interest in ensuring that privilege rules (1) are practical in light of how modern corporations communicate with their attorneys, and (2) support a robust attorney-client relationship by protecting legal advice and requests for such advice—thereby fostering open, candid communication without fear of disclosure.

## RULE 29(a)(4)(E) STATEMENT

Counsel certifies that no party's counsel authored this brief in whole or in part, no party or party's counsel contributed money that was intended to fund preparing or submitting this brief, and no person or entity other than the *amicus curiae*, its members, or its counsel contributed money that was intended to fund preparing or submitting this brief.

## SUMMARY OF THE ARGUMENT

In its opinion in the *In re Grand Jury* matter four years ago, this Court made clear that "the primary-purpose test applies to attorney-client privilege claims for dual-purpose communications" that involve both legal and non-legal considerations. 23 F.4th 1088, 1092 (9th Cir. 2021). As that opinion recognized, different courts have adopted "some version" of that test, but the precise application has varied. *Id*. at 1094. Some courts have required that the party claiming privilege establish that *the* sole primary purpose of a dual-purpose communication was to render or obtain legal advice, with that purpose predominating over all others (hereafter, the "single primary purpose test"). Other courts, following the approach articulated by the D.C. Circuit in *In re Kellogg Brown & Root, Inc*., 756 F.3d 754, 760 (D.C. Cir. 2014), have applied a more flexible test to dual-purpose communications under which the attorney-client privilege may apply so long as *a* significant purpose of the communication was to seek or provide legal advice (hereafter, "the significant legal purpose test"). The Court in *In re Grand Jury* expressly left open which version of the primary purpose test should apply in this Circuit, reasoning that because the outcome of that case would be the same regardless of which version applied, the Court did not need to reach the question. *See id*. at 1094-95 ("We Leave Open Whether the 'A Primary Purpose Test' Should Apply").

The instant case squarely presents the question this Court left open in *In re Grand Jury*. The district court issued a civil contempt order based in part on its denial of Apple's claims of privilege[5] over documents and communications related to Apple's efforts to comply with the court's injunction that addressed both legal and business considerations. In determining that those dual-purpose communications are not privileged, the district court applied the more rigid single primary purpose test, and rejected Apple's argument that the D.C. Circuit's more flexible significant legal purpose test should be applied instead.

This Court has already recognized the "merits" of applying the significant legal purpose test to dual-purpose communications in appropriate contexts, as doing so "would save courts the trouble of having to identify a predominate purpose among two (or more) potentially equal purposes." *See In re Grand Jury*, 23 F.4th 1088, 1094 (9th Cir. 2021). The Court should now take this opportunity to resolve the question it left open in *In re Grand Jury* and clarify that the significant legal purpose test is the proper method of determining whether dual-purpose communications satisfy the "primary purpose" standard for attorney-client privilege protection— particularly in situations like this, where the communications involve a context (such

---

[5] The district court relied on the Magistrate Judge's denial of Apple's privilege claims based on eleven exemplar documents, as well as the district court's order upholding the Magistrate Judge's findings in full, in holding Apple in civil contempt. *Epic Games, Inc. v. Apple Inc.*, No. 4:20-cv-05640-YGR, ECF No. 1508, at 12:14:16, citing ECF No. 1056 and 1095.

as efforts to comply with a court order) in which business and legal considerations are inherently intertwined.

Applying the significant legal purpose test will streamline the resolution of privilege disputes and enhance predictability for both parties asserting and challenging privilege claims. In contrast, affirming the district court's application of the rigid single primary purpose test would render the privilege unpredictable and unreliable in precisely the types of internal deliberations where it is most needed—those involving legal compliance with judicial mandates. As the Supreme Court has noted, the public benefits of the privilege are lost when parties cannot predictably determine whether the privilege will apply. *See Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981) ("An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all.").

Accordingly, for the reasons set forth below, *amicus curiae* respectfully recommends that this Court reverse the district court's order with respect to Apple's attorney-client privilege claims and remand with instructions to apply the significant legal purpose test.

3

**ARGUMENT**

**I.     THE SINGLE PRIMARY PURPOSE TEST SHOULD BE REJECTED IN THIS CONTEXT BECAUSE IT UNDERMINES THE PURPOSES OF THE FEDERAL RULES AND THE ATTORNEY-CLIENT PRIVILEGE.**

A central purpose of the Federal Rules is to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. In addition, the Rules expressly protect privileged information from discovery. *See* Fed. R. Civ. P. 26(b)(1) (providing that the scope of discovery extends to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case"). The single primary purpose test that the district court applied conflicts with both these purposes of the Federal Rules, as it is unworkable in practice and undermines the attorney-client privilege when applied in contexts where business and legal considerations are inextricably and unavoidably mixed.

**A. THE SINGLE PRIMARY PURPOSE TEST IS NOT PREDICTABLE.**

As the Supreme Court has recognized, "for the attorney-client privilege to be effective, it must be predictable." *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 183 (2011). The Federal Rules have similarly recognized the importance of uniformity and predictability in rules governing privileges. *See* Fed. R. Evid. 502 Advisory Committee Notes ("The rule seeks to provide a predictable, uniform set of standards under which parties can determine the consequences of a disclosure of a

4

communication or information covered by the attorney-client privilege or work-product protection.").

To that end, the Supreme Court consistently rejects the use of balancing tests in which courts must weigh the relative importance of different interests or factors to determine when privileges apply, because these types of tests inherently make privilege determinations unpredictable. In *Upjohn Co. v. United States*, the Court rejected a test that "restricts the availability of the [attorney-client] privilege to those officers who play a 'substantial role' in deciding and directing a corporation's legal response." *Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981)*.* Similarly, in *Swidler & Berlin v. United States*, the Court rejected a test under which attorney-client communications would lose privilege protection after the client's death if the communications were of sufficiently substantial importance to a criminal investigation. *See Swidler & Berlin v. United States*, 524 U.S. 399, 409–11 (1998). In *Jaffee v. Redmond*, the Court rejected a test for the psychotherapist-patient privilege that would require balancing the evidentiary need for disclosure against a patient's privacy interests. *See Jaffee v. Redmond*, 518 U.S. 1, 17 (1996).

The single primary purpose test is just such a balancing test. It requires courts speculatively to weigh multiple purposes underlying a communication against each other to determine which is predominant—an exercise this Court has noted "can quickly become messy in practice." *In re Grand Jury*, 23 F.4th at 1094. As such, the

5

test is unpredictable and impracticable, and does not achieve the uniformity and predictability parties need. Then-Circuit Judge Kavanaugh summarized the problem of attempting to divine the "primary purpose" of an internal investigation communication in *In re Kellogg Brown & Root, Inc.*:

> Trying to find the one primary purpose for a communication motivated by two sometimes overlapping purposes (one legal and one business, for example) can be an inherently impossible task. It is often not useful or even feasible to try to determine whether the purpose was A or B when the purpose was A and B. It is thus not correct for a court to presume that a communication can have only one primary purpose[.] It is likewise not correct for a court to try to find the one primary purpose in cases where a given communication plainly has multiple purposes.

*See Kellogg*, 756 F.3d at 759–60. In *Kellogg*, the D.C. Circuit applied the "significant legal purpose" test as the proper application of the primary purpose test, and found that documentation of an internal investigation directed by counsel but also used for non-legal purposes was protected by the attorney-client privilege. *Id.* at 760.

The inherent difficulties that the single primary purpose test presents when attempting to balance legal against non-legal purposes are particularly evident in the context of the complexities of regulation and laws that impact modern corporations. Communications with corporate attorneys often provide information to an attorney that is essential to render informed legal advice, while concurrently informing business decisions. The impossibility of not only disentangling and inventorying the

6

many motivations underlying a communication but also assigning one of them primacy makes producing parties uncertain as to what privilege claims they can legitimately assert, causes requesting parties to question what privilege claims they can legitimately challenge, and leaves courts less confident in how to resolve privilege disputes.

### B. THE SINGLE PRIMARY PURPOSE TEST IS UNREASONABLE AND IMPRACTICABLE TO APPLY IN THE CONTEXT OF EFFORTS UNDERTAKEN AT THE DIRECTION OF COUNSEL TO COMPLY WITH A COURT INJUNCTION.

The impracticability of the single primary purpose test is compounded where, as here, the documents and communications are created in a context that inherently involves a combination of business and legal considerations. *See Fed. Trade Comm'n v. Boehringer Ingelheim Pharms., Inc.*, 892 F.3d 1264, 1268 (D.C. Cir. 2018) ("The decision whether and at what price to settle ultimately was a business decision as well as a legal decision."); *see also Alomari v. Ohio Dep't of Pub. Safety*, 626 F. App'x 558, 571 (6th Cir. 2015) ("Advising a client on how to respond to media inquiries has important legal implications . . . ." (citation omitted)).

While *Kellogg* arose in the context of an internal investigation, courts have not limited the significant legal purpose test to only the internal investigation context. Rather, courts have recognized the value of applying that version of the primary purpose test in other contexts where the legal and business purposes of

communications are interdependent, such that one purpose relies upon the other to make legally compliant and responsible business decisions. In *Fed. Trade Comm'n v. Boehringer Ingslheim Pharms., Inc.*, for example, the D.C. Circuit, applying the *Kellogg* significant legal purpose test, found that the company's business interest in obtaining a reverse patent settlement was dependent on crafting the settlement in such a way as to pass antitrust muster. *See Boehringer,* 892 F.3d at 1268 (2018). Providing informed legal advice required a full understanding of the business objective and related information, and the business decision as to whether to proceed with a reverse settlement required fully informed legal advice.

The communications at issue here involve compliance with a court's injunction. This context is one in which legal advice informs business decisions, just as business information and goals inform legal advice. *See Oracle USA, Inc. v. Rimini St., Inc.,* No. 210CV00106LRHVCF, 2020 WL 5750850, at *5 (D. Nev. Sept. 25, 2020) (affirming finding that draft developer instructions engineers sent to attorney to confirm compliance with copyright injunction in software licensing dispute were properly withheld as privileged). This is the same issue present where an internal investigation undertaken by counsel is motivated by anticipated litigation, in which circumstance courts have recognized that "an attorney-client privilege that fails to account for the multiple and often-overlapping purposes of internal investigations would threaten[] to limit the valuable efforts of corporate

8

counsel to ensure their client's compliance with the law." *In re General Motors LLC Ignition Switch Litigation*, 80 F. Supp. 3d 521 (S.D.N.Y. 2015).

### C. THE SINGLE PRIMARY PURPOSE TEST LEADS TO NEEDLESS COSTS AND DELAY.

The inherent subjectivity and unpredictability in ascertaining which purpose is "primary" among multiple overlapping considerations leads to problems of proof and, inevitably, to disputes that waste resources, delay cases, and seldom contribute meaningfully to resolving matters on their merits. Confronted with uncertainty, producing parties reasonably assert privilege when a legal purpose is discernible. To do otherwise would risk disclosure of properly privileged communications and lead corporate executives, employees, and lawyers to refrain from the full and frank communications on which meaningful legal advice and services depend. Facing the same uncertainty, receiving parties rightfully question privilege log entries that suggest that a communication had a nonlegal purpose and move to compel if the claim is not withdrawn or otherwise resolved. Uncertainty thus exacerbates the already costly and prolonged processes of privilege reviews, preparing privilege logs, reviewing asserted claims, and litigating privilege disputes. These problems are notable in modern large-scale litigation, where parties produce millions of documents and assert privilege over thousands of documents and where the underlying controversy has heightened significance to the parties.

The case *City of Roseville Employees' Retirement System v. Apple Inc.*, No. 19-cv-02033, 2022 WL 3083000 (N.D. Cal. Aug. 3, 2022), exemplifies the costly and prolonged resolution of disputes that arise when the single primary purpose test is applied. In that matter, the magistrate judge thoroughly examined various documents withheld on privilege grounds and supplemental attorney declarations supporting the withholding. After expressing uncertainty whether documents primarily served a legal purpose, the magistrate judge permitted the privilege claimant to file yet more supplemental declarations supporting, with detailed facts, its assertions that the documents served a specific and primarily legal purpose. *Id.* at *14, *18–19, *24–25. As a practical matter, gathering declarations or similar evidence for often thousands of disputed privilege assertions is time consuming, burdensome, and expensive—and frequently unworkable, especially for parties with limited means. The costs to opposing parties in addressing the evidence presented as well as the diversion of judicial resources are likewise substantial.

A more certain, predictable, and reasonable application of the primary purpose test for privilege—the significant legal purpose test—mitigates the encumbrances imposed on the parties and the courts. Assuredly, disputes will arise. Parties will not always reach agreement, and courts will be called upon to lend guidance or render a decision. Nonetheless, the significant legal purpose test provides the proponent of the privilege with a clearer understanding of the requisite

evidence to support a claim, expedites the assertion of claims, focuses the receiving parties' inquiries, and establishes a more efficient framework for judicial guidance and resolution.

### D. THE SINGLE PRIMARY PURPOSE TEST IS INCONSISTENT WITH THE GOALS OF THE ATTORNEY-CLIENT PRIVILEGE AND THE FEDERAL RULES.

The single primary purpose test frustrates the goals underlying the attorney-client privilege and undermines the attorney-client relationship in four ways.

*First*, the single primary purpose test threatens to improperly strip legitimate legal advice of privilege protection simply because it is combined with nonlegal content in the same communication. Even if it were possible to reliably determine that the nonlegal purpose of a communication was "primary," the communication still deserves protection if obtaining legal advice was a significant reason behind it— no matter how content related to legal advice may be bundled or transmitted with other information. As one court has observed, "[w]here a lawyer possesses multifarious talents, his [or her] clients should not be deprived of the attorney-client privilege, where applicable, simply because their correspondence is also concerned with highly technical matters." *ChoreTime Equip., Inc. v. Big Dutchman, Inc*., 255 F. Supp. 1020, 1023 (W.D. Mich. 1966). "Accordingly, an attorney-client privilege that fails to account for the multiple and often-overlapping purposes . . . would 'threaten[ ] to limit the valuable efforts of corporate counsel to ensure their client's

11

compliance with the law.'" *In re Gen. Motors LLC Ignition Switch Litig.,* 80 F. Supp. 3d 521, 530 (S.D.N.Y. 2015) (second alteration in original) (quoting *Upjohn,* 449 U.S. at 393).

Requiring the disclosure of legal advice simply because it is combined with nonlegal concerns within the same communication conflicts with the Federal Rules and would effectively broaden the scope of discovery in litigation, which is limited to nonprivileged matters. The single primary purpose test therefore effectively represents a unilateral amendment to the Rules, circumventing the Judicial Conference of the United States. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ."). Such an approach also lacks a rational basis and is fundamentally unjust. It has long been accepted that the legal portions of dual-purpose communications "deserve protection under the privilege because that protection will further its goal." Paul Rice, 1 *Attorney-Client Privilege in the U.S.*, § 7:9 (2024-2025 ed.). Under the single primary purpose test, however, legal advice that would be privileged standing alone loses that protection simply because it is intermingled with business considerations.

Moreover, a trial judge or magistrate's subjective, post-hoc evaluation of the primary purpose of a given communication based on limited information (and often only based on a review of the document out of context) will be inherently unreliable

(and unpredictable), and a party may seek appellate review of privilege decisions only in very limited circumstances. *See Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 103, 114 (2009) (holding adverse rulings about privilege do not fall within the collateral order doctrine). As a result, organizations will have little choice but to limit the free flow of information in their communications with their attorneys, even where legal advice is sought, in stark contrast to the fundamental purpose of the attorney-client privilege: "to encourage full and frank communication between attorneys and their clients." *Upjohn*, 449 U.S. at 389.

*Second*, the unpredictability of the single primary purpose test discourages the open exchange of information between lawyer and client. Clients may forego consulting counsel out of fear that in future litigation a court may decide that while seeking legal advice may have been a purpose of the communication, it was not the primary purpose of the communication—thus exposing the communication to an adversary. In addition, clients may withhold from their counsel business information relevant to the legal advice sought, to limit communication with counsel purely to legal matters, which would hinder the attorney's ability to provide sound legal advice to the client. The result is to chill open communication between clients and attorneys and to inhibit attorneys' ability to "formulate sound advice" and "ensure their client's compliance with the law." *Id*. at 392.

13

If the single primary purpose test applies, reasonable lawyers communicating with their clients would need to assess whether the privilege protection is at risk because there are business elements to the communication that could be later considered primary. That assessment is impractical given the pace of business decision-making and the need for legal advice to follow complex law. Yet the single primary purpose test would require lawyers to try to divine mid-communication what purpose could be seen later as primary, and to then advise the client to change how it is communicating (or even to stop communicating entirely) due to the risk that the communication could later be disclosed.

*Third*, the chilling effect of the single primary purpose test creates ethical dilemmas for counsel. Besides hampering the relationship of open communication between the lawyer and client, professional ethical obligations would likely place many new burdens on the lawyer by requiring the lawyer to instruct the client on the scope of communications allowed under the single primary purpose test and the potential loss of privilege protection should the client continue to communicate about matters in a way that a court may later find did not have as its primary purpose the provision of legal advice. *See* Model Rules of Pro. Conduct r. 1.4(b) (Am. Bar Ass'n 2024) ("A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."). The resulting verbal watchdog role, combined with a nervous client's resulting reticence

14

to fully share information with the lawyer, could obstruct the lawyer's ability to fulfill his or her ethical duties to provide competent representation and to consult with the client to achieve the client's objectives. *See id.*, rr. 1.1 (duty of competence), 1.4(a)(2) (duty to "reasonably consult with the client").

Legal advice rendered by in-house counsel to a corporation cannot realistically be siloed from the corporation's business interests, as "virtually all internal legal communications are, to some extent, relevant to the business ends of the company." Rice, *supra*, § 7:2. This business reality tracks the technological evolution of communications platforms through which in-house lawyers are expected to provide, and do provide, legal advice to help companies meet legal obligations that are intermingled with nonlegal matters.

At its core, the single primary purpose test places form over substance. Under the test, legal advice that would be privileged standing alone loses that protection because it includes discussion of related business considerations such that the legal purpose might be subjectively and by chance considered (by non-participants to the conversation, and often years later) not to be the sole primary purpose. That result defies common sense and the reality of how modern organizations operate, as Professor Rice properly notes. *See id.* (noting that "in-house attorneys commonly serve multiple functions within an organization" and that "the communications to

15

them normally address the full range of legal and nonlegal issues that each writer needs to discuss.").

## II.   THE SIGNIFICANT LEGAL PURPOSE TEST SHOULD BE APPLIED IN THIS CONTEXT AS IT IS CONSISTENT WITH THE PURPOSES OF THE FEDERAL RULES AND THE ATTORNEY-CLIENT PRIVILEGE

The significant legal purpose test set forth by the D.C. Circuit is the version of the primary purpose test for dual-purpose communications that better promotes the goals of the Federal Rules and protects the attorney-client privilege in contexts where, as here, the subject matter of the communications inherently mixes business and legal considerations. This test requires litigants and courts to ask whether obtaining or providing legal advice was "one of the significant purposes of the communication." *Kellogg*, 756 F.3d at 760. If a legal purpose was a significant factor motivating the communication, then the communication is privileged. *Id*.

Unlike the single primary purpose test, the significant legal purpose test can be applied more consistently, fairly, and predictably in practice; it is in harmony with the reality of communications in today's corporate environment; and it promotes the open discourse that the attorney-client privilege was designed to protect. By clarifying that the significant legal purpose test is the proper application of the primary purpose standard in contexts where business and legal concerns are inextricably intertwined, this Court will provide needed clarification and certainty across the Ninth Circuit.

16

## A. THE SIGNIFICANT LEGAL PURPOSE TEST IS CONSISTENT WITH THE GOALS OF THE FEDERAL RULES AND IS BOTH PRACTICAL AND PREDICTABLE.

The significant legal purpose test in practice leads to greater predictability and certainty than the single primary purpose test and leads to fewer costly disputes, thereby promoting the Federal Rules' purposes of uniformity and the just, speedy and inexpensive resolution of actions. *See* Fed. R. Civ. P. 1. The significant legal purpose test requires resolving only a single question: whether obtaining or providing legal advice was a significant purpose of the communication, no matter what other purposes may have existed.[6] Once a significant legal purpose has been identified, courts need not grapple with the relative significance of any nonlegal purpose. The significant legal purpose test recognizes that "the primary purpose test, sensibly and properly applied, cannot and does not draw a rigid distinction between a legal purpose on the one hand and a business purpose on the other." *See Kellogg*, 756 F. 3d at 759–60.

---

[6] That a communication had at least one significant legal purpose can be established through the communication on its face, declarations of the claimant and its attorneys, or the totality of the circumstances. *See, e.g., United States ex rel. Wollman v. Mass. Gen. Hosp., Inc.*, 475 F. Supp. 3d 45, 64–65 (D. Mass. 2020) (examining the totality of the circumstances in determining that an internal investigation report was prepared with a significant purpose of providing legal advice); *Jones v. Carson*, No. 15- cv-00310, 2018 WL 11410070, at *22–23 (D.D.C. Mar. 30, 2018) (presenting document-by-document findings after in camera review); *In re Gen. Motors*, 80 F. Supp. 3d at 530–31 (examining the totality of the circumstances and outside counsel's declaration in holding that witness interview notes were privileged).

The significant legal purpose test thus necessarily involves a simpler determination than the single primary purpose test, which requires resolving that same initial question of whether a significant legal purpose exists, but then also requires identifying every possible legal and nonlegal purpose underlying the communication and weighing them against each other to determine which is predominant—often an impossible task. *See Pitkin v. Corizon Health, Inc.*, No. 16-cv-02235, 2017 WL 6496565, at \*3–4 (D. Or. Dec. 18, 2017) (rejecting the single primary purpose test as unworkable "in circumstances where a communication serves many overlapping purposes, and none of them can reasonably be considered 'primary' over any other").

By avoiding the need to engage in an after-the-fact weighing of legal and nonlegal purposes, the significant legal purpose test is "clearer, more precise, and more predictable," *Kellogg*, 756 F.3d at 760, and "helps to reduce uncertainty regarding the attorney-client privilege," *Boehringer*, 892 F.3d at 1268. This greater predictability and simplicity of application can be expected to lead to both a lesser incidence of privilege disputes (because the parties are more likely to agree on whether a significant legal purpose exists at all than whether it is the sole primary purpose of a dual-purpose communication) and reduced burden and delay when disputes do arise (because the one-step inquiry is relatively simpler and can often be resolved without resorting to extrinsic evidence).

18

## B. MANY COURTS, INCLUDING THIS ONE, HAVE RECOGNIZED THE MERITS OF APPLYING THE SIGNIFICANT LEGAL PURPOSE TEST TO DUAL-PURPOSE COMMUNICATIONS.

In *In re Grand Jury*, this Court recognized "the merits of the reasoning in *Kellogg*" that the more practicable "version" of the primary purpose test is one that requires only a showing that legal advice is one significant purpose a dual-purpose communication rather than the singular primary purpose, acknowledging that "[a] test that focuses on *a* primary purpose instead of *the* primary purpose would save courts the trouble of having to identify a predominate purpose among two (or more) potentially equal purposes." 23 F.4th at 1094. Although the Court found that it was "not require[d] to reach the *Kellogg* question" to determine whether the privilege applied to the specific dual-purpose communications at issue in *In re Grand Jury*, it expressly did not foreclose its application in other cases. *See id.* ("We Leave Open Whether the 'A Primary Purpose Test' Should Apply").

Following that opinion, district court decisions both within and outside the Ninth Circuit have recognized the same benefits the Court acknowledged, and have applied the significant legal purpose test to dual purpose communications. In at least three cases, district courts within the Ninth Circuit have cited *In re Grand Jury* (as well as *Kellogg*) and reasoned that "the correct standard for dual purpose communications should be '***a*** primary purpose.'" *See Crews v. Rivian Auto., Inc.,* No. CV 22-1524-JLS(EX), 2025 WL 365796, at *1, n.1 (C.D. Cal. Jan. 23, 2025)

19

(emphasis added); *Intex Recreation Corp. v. Bestway (USA), Inc.*, No. CV 19-8596-JAK(EX), 2023 WL 6193018, at *1, n.1 (C.D. Cal. Sept. 8, 2023); *Metricolor LLC v. L'Oreal USA, Inc*., No. CV 18-364-CAS(EX), 2023 WL 2628108, at *1, n.1 (C.D. Cal. Jan. 26, 2023), reconsideration denied, No. 2:18-CV-00364-CAS-EX, 2023 WL 5830241 (C.D. Cal. Sept. 1, 2023).

Courts outside the Ninth Circuit have similarly applied the significant legal purpose test to dual-purpose communications. That has been the case even in jurisdictions that had not previously applied the significant legal purpose test. *See, e.g., Brogdon v. Grady Mem'l Hosp. Corp.,* No. 1:22-CV-4512-CMS, 2025 WL 948338, at *3–4 (N.D. Ga. Mar. 28, 2025) (applying the significant legal purpose test and protecting as privileged communications related to reorganizations, restructurings, and other employment decisions that mixed legal and business considerations); *Lee v. EUSA Pharma US LLC,* No. 2:22-CV-11145, 2024 WL 250064, at *4 (E.D. Mich. Jan. 23, 2024) (applying the significant legal purpose test to find privileged communications related to internal employment-related investigation); *Farrell v. United States Olympic & Paralymic Comm.,* No. 1:20-CV-01178 (FJS/CFH), 2023 WL 4033290, at *7–8 (N.D.N.Y. June 15, 2023) (applying the significant legal purpose test and finding privileged files relating to investigation undertaken at the direction of counsel). Thus, although the court in *In re Grand Jury* remarked that "None of our other sister circuits have openly embraced *Kellogg* yet,"

20

23 F.4th at 1094, courts in other circuits have increasingly embraced the D.C.

Circuit's approach since *In re Grand Jury*.

### C. THE SIGNIFICANT LEGAL PURPOSE TEST IS CONSISTENT WITH THE PURPOSE OF THE ATTORNEY-CLIENT PRIVILEGE

Over forty years ago, the Supreme Court articulated the purpose and

foundations of the attorney-client privilege as follows:

> [T]o encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.

*Upjohn*, 449 U.S. at 389. By ensuring that requests for legal advice will not lose their

privilege protection simply because they are intertwined with discussion of nonlegal

concerns, the significant legal purpose test promotes open communication and

ensures that the client can obtain the maximum benefit from the attorney-client

relationship by permitting the client to confidently share with counsel all information

potentially relevant to securing legal advice. *See Trammel v. United States*, 445 U.S.

40, 51 (1980) ("The lawyer-client privilege rests on the need for the advocate and

counselor to know all that relates to the client's reasons for seeking representation if

the professional mission is to be carried out.").

21

### D. THE SIGNIFICANT LEGAL PURPOSE TEST DOES NOT EXPAND THE PRIVILEGE OR SHIELD DISCOVERABLE MATERIALS FROM DISCOVERY.

The attorney-client privilege withholds otherwise discoverable information from the factfinder, and thus the privilege "applies only where necessary to achieve its purpose." *Fisher v. United States,* 425 U.S. 391, 403 (1976). The party asserting the privilege must make a "clear showing" that the lawyer involved in a communication was acting "in a professional legal capacity" rather than exercising "responsibilities outside the lawyer's sphere." *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984); *see also SEC v. Microtune, Inc*., 258 F.R.D. 310, 315 (N.D. Tex. 2009) ("The proponent must provide sufficient facts by way of detailed affidavits or other evidence to enable the court to determine whether the privilege exists.").

The significant legal purpose test satisfies these requirements and is fully consistent with the narrow application of the privilege for three reasons.

*First*, as the concurrence in *Boehringer* observed, the claimant retains the burden of establishing the privilege for dual-purpose communications under the significant legal purpose test, and that burden is substantial and applies to each withheld communication:

> Where a privilege claimant has closely intertwined purposes—a legal purpose as well as a business purpose—it must still establish to a "reasonable certainty," that "obtaining or providing legal advice was one of the significant purposes" animating each communication withheld.

22

*Boehringer*, 892 F.3d at 1269 (Pillard, J., concurring) (citations omitted). Accordingly, adoption of the significant legal purpose test "should not be mistaken for an expansion of the attorney-client privilege." *Id*.

This burden of proof mitigates the risk of overreach. The significant legal purpose test leaves existing guardrails protecting the discovery interest from overbroad privilege claims intact; for example, simply copying an attorney on a communication or including an attorney in a distribution list will not make the communication privileged. *See Jordan v. U.S. Dep't of Lab*., 308 F. Supp. 3d 24, 43–44 & n.9 (D.D.C. 2018) (applying *Kellogg* and finding a communication was not privileged where the sender copied an attorney to keep him apprised of business communications in case there was a future legal dispute). For this reason, the significant legal purpose test is not a license to improperly cloak business discussions and decisions in the privilege.

*Second*, the significant legal purpose test will not unduly shield relevant business information from discovery because the relevant facts underlying a request for legal advice are not protected from disclosure. *See, e.g., Upjohn*, 449 U.S. at 395 ("The privilege only protects disclosure of communications; it does not protect the disclosure of the underlying facts by those who communicated with the attorney . . . ."). While the attorney-client privilege protects the communication of facts by the client to the attorney, see *United States v. Rowe*, 96 F.3d 1294, 1296 (9th

23

Cir. 1996), only that *communication* is protected from discovery. Given the various forms and the volume of communications among different groupings of personnel in modern organizations, any underlying relevant facts withheld from a dual-purpose communication will generally appear in other unprotected communications or documents or be obtainable through other means of discovery such as interrogatories or depositions. *See* 24 Charles Alan Wright et al., *Federal Practice and Procedure* § 5484 (1st ed. May 21, 2025 update) (observing that non-privileged information can still be discovered through testimony or an interrogatory).

*Third*, when legal and nonlegal portions of a communication are severable, redaction of the legal communications appropriately protects privileged material while allowing the production of non-privileged material. For these reasons, the information protected by the attorney-client privilege as a dual-purpose communication under the significant legal purpose test is only that which is inextricably intertwined with requests for or the provision of legal advice. The significant legal purpose test will thus not improperly expand the privilege to protect from disclosure relevant, nonlegal information that requesting parties have a right to discover.

## CONCLUSION

For the foregoing reasons, *amicus curiae* respectfully recommends that this Court should resolve the question it left open in *In re Grand Jury* and reverse the

order of the district court with respect to the privilege test applied to Apple's dual-purpose communications with instructions to apply the significant legal purpose test set forth by the D.C. Circuit in *Kellogg*.

Date: June 30, 2025

> */s/ Jonathan M. Redgrave*
> Jonathan M. Redgrave
> Gareth T. Evans
> REDGRAVE LLP
> 4800 Westfields Blvd
> Suite 250
> Chantilly, VA 20151
> (571) 393-5276
> jredgrave@redgravellp.com
>
> *Counsel for Amicus Curiae*
> *Lawyers for Civil Justice*

25

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s)** ___25-02935_____

I am the attorney or self-represented party.

**This brief contains 6,277 words,** excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[  ] complies with the word limit of Cir. R. 32-1.

[  ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[X] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[  ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[  ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

    [  ] it is a joint brief submitted by separately represented parties.
    [  ] a party or parties are filing a single brief in response to multiple briefs.
    [  ] a party or parties are filing a single brief in response to a longer joint brief.

[  ] complies with the length limit designated by court order dated _____.

[  ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** ___/s/ Jonathan M. Redgrave_____ **Date** __June 30, 2025_____

## CERTIFICATE OF SERVICE

I hereby certify that, on June 30, 2025, I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date: June 30, 2025

*/s/ Jonathan M. Redgrave*
Jonathan M. Redgrave