No. 25-2935

_____

# United States Court of Appeals for the Ninth Circuit

_____

Epic Games, Inc.,
>>> *Plaintiff-Appellee*,

v.

Apple Inc.,
>>> *Defendant-Appellant*.

_____

On appeal from the U.S. District Court
for the Northern District of California
(Hon. Yvonne Gonzalez-Rogers)
No. 4:20-cv-05640-YGR

_____

**Brief of Amici Curiae State of Utah, 11 Other States, and the
District of Columbia Supporting Appellee and Affirmance**

_____

Derek Brown
Utah Attorney General
Stanford E. Purser
Utah Solicitor General

Marie W.L. Martin
Matthew Michaloski
Asst. Utah Attorneys General
160 E. 300 S., 5th floor
Salt Lake City, Utah 84111
(801)-366-0100
spurser@agutah.gov
mwmartin@agutah.gov
mmichaloski@agutah.gov

*Counsel for Amici Curiae State of Utah*
(Additional Amici Curiae Listed After the Signature Block)

# Table of Contents

Table of Authorities.................................................................ii

Interest of Amici Curiae..........................................................1

Argument ...............................................................................2

    I.    Injunctive relief must be construed to afford
        plaintiffs complete relief.............................................2

    II.   The ban on commissions is an appropriate contract
        reformation and does not contravene *Qualcomm*.............6

    III.  The district court's injunction does not violate the
        Takings Clause. ...........................................................7

    IV.  The injunction's anti-steering prohibitions for the in-
        app purchase flow do not violate the First
        Amendment...................................................................9

Conclusion ...........................................................................13

Additional Amici Curiae State Signatories.........................15

Statement of Related Cases..................................................16

Form 8. CERTIFICATE OF COMPLIANCE for Briefs ....................17

# Table of Authorities

## Cases

*Califano v. Yamasaki*,
  442 U.S. 682 (1979) ............................................................................ 5

*California v. American Stores Co.*,
  495 U.S. 271 (1990) ............................................................................ 6

*Cedar Point Nursery v. Hassid*,
  594 U.S. 139 (2021) ............................................................................ 8

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
  447 U.S. 557 (1980) .......................................................................... 10

*Epic Games, Inc. v. Apple Inc.*,
  2025 WL 1260190 (N.D. Cal. April 30, 2025) .................................. 2, 3

*Epic Games, Inc. v. Apple Inc.*,
  67 F.4th 946 (9th Cir. 2023) ............................................................ 2, 4

*Federal Trade Commission v. Qualcomm Inc.*,
  969 F.3d 974 (9th Cir. 2020) ............................................................ 6, 7

*Glickman v. Wileman Bros. & Elliott, Inc.*,
  521 U.S. 457 (1997) .......................................................................... 13

*Greater Phila. Chamber of Com. v. City of Phila.*,
  949 F.3d 116 (3d Cir. 2020) ............................................................. 10

*In re Google Play Store Antitrust Litig.*,
  No. 24-6256, 2025 WL 2167402 (9th Cir. July 31, 2025) ................. 6, 7

*In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Pracs. & Prods.
  Liab. Litig.*,
  288 F. Supp. 3d 1087 (D.N.M. 2017) ............................................... 10

*Int'l Salt Co. v. United States*,
  332 U.S. 392 (1947) ............................................................................ 6

*Lamb-Weston, Inc. v. McCain Foods, Ltd.,*
  941 F.2d 970 (9th Cir. 1991)................................................................5

*Lingle v. Chevron U.S.A. Inc.,*
  544 U.S. 528 (2005)........................................................................9

*Moody v. NetChoice, LLC,*
  603 U.S. 707 (2024)..................................................................11, 12

*Nat'l Soc'y of Pro. Eng'rs v. United States,*
  435 U.S. 679 (1978)........................................................................5

*Optronic Technologies, Inc. v. Ningbo Sunny Electronic Co, Ltd.,*
  20 F.4th 466 (9th Cir. 2021) ............................................................6

*Penn Cent. Transp. Co. v. City of New York,*
  438 U.S. 104 (1978)....................................................................8, 9

*Petro-Hunt, L.L.C. v. United States,*
  126 Fed. Cl. 367 (2016) ..................................................................9

*Pittsburgh Press Co. v Pittsburgh Comm'n on Hum. Rels.,*
  413 U.S. 376 (1973)......................................................................10

*Reed v. Town of Gilbert, Ariz.,*
  576 U.S. 155 (2015)......................................................................12

*United States v. O'Brien,*
  391 U.S. 367 (1968)..................................................................11, 12

*United States v. U.S. Gypsum Co.,*
  340 U.S. 76 (1950)........................................................................5

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.,*
  425 U.S. 748 (1976)......................................................................10

*Vandervere v. Lloyd,*
  644 F.3d 957 (9th Cir. 2011)............................................................9

*Zauderer v. Office of Disciplinary Counsel,*
  471 U.S. 626 (1985)......................................................................13

*Zillow, Inc. v. Miller*,
   126 F.4th 445 (6th Cir. 2025) ............................................................. 10

**Statutes**

15 U.S.C. § 15c.............................................................................................2

## Interest of Amici Curiae

Amici Curiae, the States of Utah, Alaska, Indiana, Louisiana, Michigan, Minnesota, New Mexico, North Carolina, Oregon, Tennessee, Vermont, West Virginia, and the District of Columbia (Amici States), respectfully submit this brief in support of Appellee Epic Games, Inc.

The district court previously found and enjoined Apple Inc. from engaging in certain unfair and anticompetitive conduct relating to its App Store, used by app developers and iOS users. This Court upheld those findings and the injunction. Millions and millions of United States citizens use the iOS platform. And each of the Amici States has consumers that use the iOS platform and has a strong interest in ensuring a competitive marketplace for its consumers.

The district court has now held that Apple violated the injunction by continuing unfair and anticompetitive conduct. The appeal raises issues that are pertinent to federal and state law enforcement and the scope of remedies available to the attorneys general. The attorneys general of the Amici States are authorized by Congress to bring law enforcement actions to protect their citizens, including antitrust actions to protect their citizens from the harmful effects of anticompetitive

1

conduct. 15 U.S.C. § 15c. Amici States thus have a strong interest in ensuring that federal courts apply, and parties obey, clear and effective standards for antitrust liability and remedies. The attorneys general also have a strong interest in correct interpretation of the law, and in ensuring compliance with court orders.

## Argument

### I. Injunctive relief must be construed to afford plaintiffs complete relief.

After trial in 2021, the district court issued a 180-page order and one-page injunction that, in part, enjoined Apple's conduct "impeding competition with respect to in-app and out-of-app purchases." *Epic Games, Inc. v. Apple Inc.*, 2025 WL 1260190, at *1, *4 (N.D. Cal. April 30, 2025). This Court affirmed, in relevant part, in a 91-page order issued in 2023. *Id.*; *Epic Games, Inc. v. Apple Inc.*, 67 F.4th 946, 1002-03 (9th Cir. 2023). And the Supreme Court declined review the following year. *Apple Inc. v. Epic Games, Inc.*, No. 23-344 (U.S. Jan. 16, 2024); *Epic Games*, 2025 WL 1260190, at *1, *7. The permanent injunction then became effective. *Id.* at *1.

"Apple's response" to the injunction "strain[ed] credulity." *Epic Games*, 2025 WL 1260190, at *1. The district court found that "despite

knowing its obligations thereunder," Apple "thwarted the [i]njunction's goals, and continued its anticompetitive conduct solely to maintain its [multi-billion dollar] revenue stream" *Id*. So the court sanctioned Apple and enjoined it "from implementing its new anticompetitive acts to avoid compliance with the [i]njunction." *Id.* at *2, *45-*46.

Apple now argues that its new anticompetitive conduct did not violate the injunction based on a narrow interpretation of that order. But injunctive relief should not be read in a vacuum and so narrowly that the enjoined party can readily circumvent remedies to the harms addressed by the injunction. That approach denies plaintiffs complete relief. And that's especially true for injunctions against large vertically integrated entities that maintain a virtuous, or self-reinforcing, cycle: they leverage platform or contractual exclusivity to drive user engagement; that increased engagement yields more user data; and that data, in turn, enables continued investment in exclusivity, i.e., a 'flywheel' effect.

That's what Apple was doing in this case with its anti-steering restrictions—preventing app developers from informing consumers about purchase opportunities outside Apple's universe—which increase

3

the costs of Epic's subsidiaries' apps that are still on the App Store and prevent other apps' users from becoming would-be Epic Game Store customers. The district court enjoined, and this Court affirmed the injunction prohibiting, that conduct. *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 1003 (9th Cir. 2023). Reading the injunction narrowly here would simply allow Apple to continue its anticompetitive conduct. By not allowing developers to inform consumers about alternative purchase opportunities off-app, Apple increases its own profits and funds further exclusivity, while simultaneously driving up its competitors' costs, thereby preventing consumers from becoming customers of its competitors. By preventing access to customers and data, Apple maintains its exclusive access to a scaled database of customers and data. When companies are allowed to maintain such flywheels by imposing restrictions that limit rivals' opportunities, they can create impenetrable barriers to entry. Critical assets—consumer data, Application Programming Interfaces, infrastructure, and, in this case, access to customers—remain out of reach for competitors, while consumers become locked into the flywheel.

Where defendants, like Apple, are permitted to bypass narrowly

construed injunctions intended to remedy real harm, plaintiffs will never receive complete relief. And that defies settled equitable principles. Courts' equitable powers, especially in competition cases, go beyond "a simple proscription against the precise conduct previously pursued." *Nat'l Soc'y of Pro. Eng'rs v. United States*, 435 U.S. 679, 698 (1978). So district courts are instructed to provide the necessary relief to "cure the ill effects of the illegal conduct, and assure the public freedom from its continuance." *United States v. U.S. Gypsum Co.*, 340 U.S. 76, 88 (1950). That's why "[a] district court has considerable discretion in fashioning suitable relief and defining the terms of an injunction." *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991).

To be sure, "injunctive relief should be no more burdensome to the defendants than necessary to provide complete relief to the plaintiffs." *Id.* (*quoting Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)). But complete relief for the plaintiffs in this case mandates that Apple be restrained from benefitting from its illegal conduct. *See, e.g., Nat'l Soc'y of Pro. Eng'rs*, 435 U.S. at 698 ("The standard against which the order must be judged is whether the relief represents a reasonable method of eliminating the consequences of the illegal conduct."). Otherwise, a

5

plaintiff will have "won a lawsuit and lost a cause." *Int'l Salt Co. v. United States*, 332 U.S. 392, 401 (1947).

## II. The ban on commissions is an appropriate contract reformation and does not contravene *Qualcomm*.

Apple incorrectly asserts that the district court's ban on commissions constitutes judicial rate-making. Apple Br. at 32-33. But the ban—in context—is merely a reformation of contract terms. Apple's position would bar courts from ordering that relief when warranted.

It is well-settled that some of the remedies available to eliminate the consequences of illegal conduct in competition cases include contract rescission, *California v. American Stores Co.*, 495 U.S. 271, 295 (1990) (including divestiture), and reformation, *Optronic Technologies, Inc. v. Ningbo Sunny Electronic Co, Ltd.*, 20 F.4th 466, 486 (9th Cir. 2021) (defendant ordered to supply the plaintiff on nondiscriminatory terms). Indeed, this Court recently affirmed a reasonable pricing restriction in a contract in its remedial order concerning in-app payments. *In re Google Play Store Antitrust Litig.,* No. 24-6256, 2025 WL 2167402, at *19-*20 (9th Cir. July 31, 2025).

Apple's commission-ban argument also distorts antitrust law, conflating a rejected theory of liability in *Federal Trade Commission v.*

*Qualcomm Inc.,* 969 F.3d 974, 998-1000 (9th Cir. 2020), with remedies in competition and antitrust cases. Apple Br. at 33. In *Qualcomm,* the Court rejected a requirement that a company justify its pricing decisions under the Sherman Act, stating, "We decline to adopt a theory of antitrust liability that would presume anticompetitive conduct any time a company could not prove the 'fair value' of its SEP portfolios corresponds to the prices the market appears willing to pay for those SEPs in the form of licensing royalty rates." *Qualcomm*, 969 F.3d at 999. Apple argues that, because this Court rejected the theory that a company needs to prove its patent royalties are fair to avoid antitrust liability, the district court may not order a company to not receive any commissions as a remedy. But *Qualcomm* is inapposite. The district court did not rule on whether Apple must prove the proper amount of its commissions to avoid antitrust liability. Rather, the injunction prohibits commissions as an appropriate remedy to address Apple's anticompetitive flywheel. *See, e.g.*, *In re Google Play Store*, 2025 WL 2167402, at *19-*20.

## III. The district court's injunction does not violate the Takings Clause.

Apple incorrectly characterizes the prohibition on commissions as

a violation of the Fifth Amendment's Takings Clause because the injunction decreased the value of Apple's intellectual property. Because there was no physical taking, Apple necessarily asserts a regulatory taking. And whether a regulatory taking has occurred, thereby triggering the Takings Clause, depends on "the economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the government action. *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 140 (2021) (citing *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978)). None of these factors support Apple's regulatory taking theory.

The injunction's impact may have negatively affected Apple's bottom line, but it reset and positively affected the economic outlook of Epic, other app developers, and consumers. More importantly, Apple can have no valid investment-backed expectation of returns—much less a cognizable property interest—in any economic value derived from unlawful business practices. Lastly, the nature of the court's action indicates that any alleged injury is incidental to the enforcement of law, following a full trial on the merits, and a statutory scheme permissibly "adjusting the benefits and burdens of economic life to promote the

common good." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 539 (2005) (quoting *Penn Central*, 438 U.S. at 124). There has been no regulatory taking.

What's more, adopting Apple's characterization of contract reformation as a taking would severely limit the courts' equitable powers to provide relief in competition cases. Although a claim for a judicial taking may exist in the abstract, *see Vandervere v. Lloyd*, 644 F.3d 957, 964 n.4 (9th Cir. 2011), any such claim requires that the plaintiff possess a cognizable property interest in the subject of the alleged taking. A defendant does not have a cognizable property interest in harming competition. Apple's suggested rule would be antithetical to restoring competition in antitrust and competition cases, depriving federal and state law enforcement of necessary tools that protect competition and consumers, and amounts to an improper collateral attack on the judgment of the district court. *See, e.g.*, *Petro-Hunt, L.L.C. v. United States*, 126 Fed. Cl. 367, 381 (2016) ("Often, a judicial takings claim is brought as a 'collateral attack' on the judgment of another tribunal.").

## IV. The injunction's anti-steering prohibitions for the in-app purchase flow do not violate the First Amendment.

Restrictions on communications within Apple's in-app payment

system do not violate the First Amendment. As an initial matter, these communications comprise commercial speech and are not entitled to heightened scrutiny. *See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 561-63 (1980). The in-app payment system is a commercial mechanism designed to route payments and collect commissions, not to provide an expressive vehicle. Courts recognize speech as commercial when it "does 'no more than propose a commercial transaction,'" *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976) (quoting *Pittsburgh Press Co. v Pittsburgh Comm'n on Hum. Rels.*, 413 U.S. 376, 385 (1973)), or is an "expression related solely to the economic interests of the speaker and its audience," *Cent. Hudson*, 447 U.S. at 561. This includes advertisements, product promotion, and economically motivated policies. *See Zillow, Inc. v. Miller*, 126 F.4th 445, 460-62 (6th Cir. 2025) (applying commercial speech test, including advertising, product reference, and economic motivation); *Greater Phila. Chamber of Com. v. City of Phila.*, 949 F.3d 116, 137 (3d Cir. 2020) (finding speech commercial where it was made with an economic motive or referred to a specific product); *In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Pracs.*

*& Prods. Liab. Litig.*, 288 F. Supp. 3d 1087, 1240 (D.N.M. 2017) (same). Restrictions on external links are designed to regulate the flow of payments, not the flow of ideas, and are therefore commercial, not expressive. Apple's First Amendment argument assumes that its platform is a single, integrated expressive product, so that any compelled conduct within it compromises its expressive identity. But that ignores the Supreme Court's recognition that compelled access to a complaining party's property does not necessarily affect the party's own expression. *See, e.g., Moody v. NetChoice, LLC*, 603 U.S. 707, 724–26, 730-31 (2024).

The injunction also does not trigger heightened First Amendment scrutiny because it regulates conduct and is content-neutral. The injunction's prohibition on anti-steering targets the location and means of economic activity, not expression. Conduct lacking inherent expressive content—such as the in-app purchase flow—does not trigger heightened First Amendment scrutiny. *See United States v. O'Brien*, 391 U.S. 367, 376 (1968). Assuming *arguendo* there is an expressive element to the purchase flow, the district court is justified in exercising its equitable power to remedy the consequences of anticompetitive conduct

11

even if there is an incidental effect on speech. *Id.* at 376.

Government regulation is also content-neutral if it applies regardless of the speaker's viewpoint or subject matter. *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). The injunction applies uniformly and does not depend on whether an app promotes Apple's business model, criticizes it, or says nothing about it. Apple remains free to disclaim, contextualize, or counter any developer-provided links or messaging, preserving its ability to speak independently.

Nor does Apple's operation of its in-app payment system and prohibition on developers' directing users to alternative purchasing mechanisms reflect expressive decisions. The in-app payment system facilitates and monetizes purchases between users and developers and does not result in expressive discretion. *Cf. Moody,* 603 U.S. at 725–26.

Apple's contention that the injunction impermissibly compels expressive conduct that it would prefer to exclude is incorrect. Apple relies on two cases that involve expressive media or entities where the regulated entity was required to affirmatively include or accommodate content within a clearly expressive product. Apple Br. at 40-41. That is not the case here. The compelled economic disclosures in this case fall

squarely within the framework of *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 651 (1985), which permits a mandate to disclose "purely factual and uncontroversial information" in a commercial context. That some developer messages could be "controversial" or critical of Apple does not render *Zauderer* inapplicable. *Zauderer* does not require that compelled disclosures be favorable to the regulated entity—only that they be factual and not ideological. *Id.* Commercial user interface disclosures—such as pricing information, safety warnings, or alternative terms—do not become constitutionally suspect merely because they implicate economic interests. *See, e.g.*, *Glickman v. Wileman Bros. & Elliott, Inc.*, 521 U.S. 457, 471–72 (1997) (compelled financial support for generic advertising was upheld where the program imposed no obligation on the part of the speaker to endorse a particular message).

## Conclusion

The district court correctly found Apple violated the injunction. Apple has not persuasively argued otherwise. This Court should affirm.

Respectfully submitted,

/s/ Marie W.L. Martin
Marie W.L. Martin
Matthew Michaloski
Assistant Utah Attorneys General
Stanford E. Purser
Utah Solicitor General
*Counsel for the Amicus Curiae*
*State of Utah*

## Additional Amici Curiae State Signatories

TREG R. TAYLOR
Attorney General
State of Alaska

BRIAN L. SCHWALB
Attorney General
District of Columbia

THEODORE E. ROKITA
Attorney General
State of Indiana

LIZ MURRILL
Attorney General
State of Louisiana

DANA NESSEL
Attorney General
State of Michigan

KEITH ELLISON
Attorney General
State of Minnesota

RAÚL TORREZ
Attorney General
State of New Mexico

JEFF JACKSON
Attorney General
State of North Carolina

DAN RAYFIELD
Attorney General
State of Oregon

JONATHAN SKRMETTI
Attorney General
State of Tennessee

CHARITY R. CLARK
Attorney General
State of Vermont

JOHN B. MCCUSKEY
Attorney General
State of West Virginia

## Statement of Related Cases

The undersigned is not aware of any other related cases in this matter.

_/s/ Marie W.L. Martin_

## Form 8. CERTIFICATE OF COMPLIANCE for Briefs

**9th Cir. Case Number(s)** <u>No. 25-2935</u>

I am the attorney or self-represented party.

**This brief contains 2,472 words,** including **<u>0</u>** words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).
I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[**X**] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
   [ ] it is a joint brief submitted by separately represented parties.
   [ ] a party or parties are filing a single brief in response to multiple briefs.
   [ ] a party or parties are filing a single brief in response to a

longer joint brief. [ ] complies with the length limit designated by

court order dated

_____

. [ ] is accompanied by a motion to file a longer brief pursuant to

Cir. R. 32-2(a).

**Signature** <u>*/s/ Marie W.L. Martin*</u>          **Date** <u>August 22, 2025</u>