No. 25-2935

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

**EPIC GAMES, INC.,**

*Plaintiff-ctr-defendant - Appellee,*

v.

**APPLE INC.,**

*Defendant-ctr-claimant - Appellant.*

Appeal from the United States District Court
for the Northern District of California
No. 4:20-cv-05640-YGR (Yvonne Gonzalez Rogers, District Judge)

## APPLE INC.'S RESPONSE TO MOTION TO TAKE JUDICIAL NOTICE BY APPELLEE EPIC GAMES, INC.

Mark A. Perry
Zachary D. Tripp
Joshua M. Wesneski
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW, Suite 600
Washington, DC 20036
(202) 682-7511

Cynthia E. Richman
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, NW
Washington, DC 20036
(202) 955-8500

Theodore J. Boutrous Jr.
Daniel G. Swanson
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 229-7000

October 9, 2025

Gregory G. Garre
Roman Martinez
Soren J. Schmidt
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200

Ben Harris
Kristin C. Holladay
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

Sarah M. Ray
Nicholas Rosellini
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600

*Counsel for Defendant-ctr-claimant - Appellant Apple Inc.*

## INTRODUCTION

Apple has no objection to Epic's request for this Court to take judicial notice of Apple's filings in *Pure Sweat Basketball, Inc. v. Apple Inc.*, No. 25-cv-03858 (N.D. Cal.). But Epic's contention, that Apple's arguments in *Pure Sweat* "directly contradict" its arguments in this case, is entirely unavailing. Motion for Judicial Notice ("Mot."), ECF 153.1 at 5. As Apple has explained in this appeal, the district court's new injunction in this case grants Epic more than complete relief insofar as it extends to other developers who do not seek to link out to the Epic Games Store, and therefore the injunction must be vacated under *Trump v. CASA, Inc.*, 606 U.S. 831 (2025). Apple's arguments in *Pure Sweat* in no way conflict with that straightforward position. The two cases involve different questions, and Apple's position here is fully consistent with its arguments in *Pure Sweat*.

The issue in *Pure Sweat* is who can enforce the new injunction ordered by the district court in this case. There, Apple explained that third parties cannot enforce the injunction because Epic is the only plaintiff here—and thus the only party that can enforce the injunction. That question of *enforcement*, however, is distinct from the relevant question in this appeal: Whether by granting Epic more than complete relief, the district court's new injunction exceeds fundamental limits governing injunctive relief recognized by the Supreme Court in *CASA*. The answer to *that*

question is yes, as Apple has explained. Reply Br. 29-34. And that answer is not impacted at all by the who-can-enforce question in *Pure Sweat*.

In *CASA*, the Supreme Court clarified the "complete relief" principle and, among other things, made clear that complete relief is the *maximum* relief that can be afforded. 606 U.S. at 853-54. This Court previously identified harms to Epic as both an app developer (via its subsidiaries) and as a games distributor (via the Epic Games Store), and held that the original injunction must be applied to Epic's subsidiaries as well as "other developers' apps making purchases *through the Epic Games Store*" in order to remedy those harms. *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 1003 (9th Cir. 2023) (emphasis added). But the new injunction enjoins Apple's conduct with respect to unaffiliated developers, *regardless* of whether they seek to link out to the Epic Games Store. In other words, the injunction benefits non-party developers in ways that have nothing to do with any harm to Epic, and thus it provides Epic with far more than complete relief.

Apple's position in this case about the scope of the new injunction in no way contradicts Apple's arguments in *Pure Sweat* about who can enforce it.

## ARGUMENT

The district court's new injunction prevents Apple from "[i]mposing any commission or any fee on purchases consumers make outside an app," no matter *which* developer is involved or *where* a consumer makes a purchase. 1-ER-76. And

it restricts Apple's formatting decisions, style guidelines, and speech with respect to all developers—rather than just Epic, or even just gaming apps that want to implement linked-out purchases to the Epic Games Store. *See id.* Even though Epic is the only plaintiff in this case, the district court's injunction purports to afford "[e]very developer" a "windfall"—regardless of whether the developer uses the Epic Games Store—due to the punitive zero-commission rule and other sweeping requirements imposed by the district court. Opening Br. 41 n.4; *see* Reply Br. 3, 29-34.

As Apple has explained, the new injunction therefore violates basic equitable principles announced by the Supreme Court in *CASA*. *CASA* holds that injunctions can provide relief only to the plaintiff(s) in a case, not to unrelated third parties. Reply Br. 29; *see CASA*, 606 U.S. at 851 (explaining that courts can fashion relief "*between the parties*" (citation omitted)); *id.* ("[T]o the extent [plaintiffs] argue that [the complete-relief principle] justifies the award of relief to nonparties, they are mistaken."). And even as to the plaintiff(s), *CASA* holds that the "maximum" remedy "a court can provide" is "complete relief." *Id.* at 853-54. After *CASA*, "the question is not whether an injunction offers complete relief to *everyone* potentially affected by an allegedly unlawful act; it is whether an injunction will offer complete relief *to the parties before the court*." *Id.* at 852.

3

The district court violated these foundational principles by affording Epic far more than complete relief. This Court previously recognized two "injuries" to Epic: (1) increasing costs to Epic (through its subsidiaries) as an app developer, and (2) "preventing other apps' users from becoming would-be Epic Games Store consumers." *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 1003 (9th Cir. 2023). In other words, as Judge Smith clarified in a separate opinion, this Court identified harms to Epic as a developer and as "a games distributor." *Epic Games, Inc. v. Apple, Inc.*, 73 F.4th 785, 786 (9th Cir. 2023) (M. Smith, J., concurring in the granting of the motion for a stay). In the latter role, Judge Smith explained that "Epic is harmed because app developers cannot direct, with the promise of lower prices, their users *to the Epic Games Store*." *Id.* (emphasis added).

The new injunction goes far beyond remedying the harms to Epic that this Court identified, both in its role as a parent company of app developers and a games distributor. It enjoins Apple with respect to *all* developers, regardless of whether such developers are Epic subsidiaries or seek to distribute apps or facilitate linked-out purchases on the Epic Games Store. That explains why others—like amici Microsoft, Spotify, and Y-Combinator—have filed briefs in this Court arguing that the new injunction should be affirmed to ensure that users of non-Epic apps can link out to complete transactions *using non-Epic purchasing mechanisms*. Microsoft

4

Amicus Br. 17-18, ECF No. 135; Spotify Amicus Br. 4-5, ECF No. 142; Y-Combinator Amicus Br. 7-8, ECF No. 128.

But requiring Apple to permit linked-out purchases to non-Epic platforms is not necessary to remedy any of the harms that this Court identified *to Epic*, the only plaintiff in this case. And Epic does not benefit if other developers can link their users to their own purchasing mechanisms. *CASA* thus requires vacating the new injunction and revisiting the scope of the original injunction. Reply Br. 30-31.[1]

That position is in no way inconsistent with Apple's arguments in *Pure Sweat*. There, plaintiff Pure Sweat Basketball—a non-party to this lawsuit—seeks to enforce the district court's injunction in this case to recoup commissions it has previously paid to Apple for in-app purchases. *See* Mot. to Dismiss ("Apple MTD") at 1, Dkt. 32, *Pure Sweat Basketball Inc. v. Apple Inc.*, No. 25-cv-03858 (N.D. Cal.); *Pure Sweat* Compl. ¶¶ 76-109, Dkt. 1. To be clear, Pure Sweat is not seeking to link out to the Epic Games Store. Instead, it is trying to indirectly "enforce" the

---

[1] The scope of the new injunction is even more extreme when viewed in the light of the separate class action brought—and settled—by other developers concerning the anti-steering rules at issue in this case. As Apple has explained, more than 99% of U.S. developers settled a class action against Apple relating to Apple's steering rules, and that settlement did not mention linked-out transactions at all. *See* Reply Br. 32 n.2. *CASA* explains that the traditional way for non-parties to secure relief is through the class action device, after satisfying its built-in protections. *See* 606 U.S. at 849-50. Here, however, the district court afforded what is effectively class-wide relief to all developers, even though Epic opted out of the then-pending developer class action and chose to pursue this action solely on its own behalf.

injunction by claiming it is owed commissions it has paid to Apple in connection with in-app purchases—on the theory that Pure Sweat would have linked out to purchases on its own website, if not for Apple's anti-steering rules. *Pure Sweat* Compl. ¶ 16.

Pure Sweat's claims are not cognizable for a number of reasons, including because Pure Sweat lacks Article III standing and is bound by Apple's settlement of a class action echoing the claims that Epic pursues here. *See* Apple MTD 5-10; *supra* note 1. In addition, as Apple has explained in *Pure Sweat*, Pure Sweat, as a non-party here, cannot enforce the injunction in this case: "[N]othing in the Injunction [in this case] authorizes enforcement by third parties—nor, as *CASA* makes clear, could it." Apple MTD 12. As Apple argued in its motion to dismiss in *Pure Sweat*, "[w]hether Apple complied with" the Injunction in this case "cannot give rise to a private lawsuit by a nonparty seeking monetary recoveries." *Id.*

*Pure Sweat* thus involves the question whether a non-party can *enforce* the injunction entered in this case. It does not concern whether the injunction's sweeping scope as to other developers who are not Epic subsidiaries and do not use the Epic Games Store can be justified under the complete-relief principle recently clarified by the Supreme Court in *CASA*. Apple argued as much in its reply in *Pure Sweat*, which Epic neglects to mention in its motion. Specifically, Apple explained that, "[w]hile Apple maintains" that the injunction "imposes enormous burdens on

6

Apple with respect to developers across the country," "those issues are before" *this* Court (here)—and all that matters in *Pure Sweat* (in the district court) is that Pure Sweat "lacks any authority to enforce th[e] sweeping injunction" in this case. *Pure Sweat*, Apple's Reply in Supp. MTD 2 n.1, Dkt. 41.

Epic argues that "Apple's statements" in *Pure Sweat* "directly contradict Apple's arguments" here that the injunction improperly applies to every developer in the United States and to all third-party payment processing services. Mot. 5. That is incorrect. The injunction violates *CASA* by affording Epic more than complete relief: It benefits non-party developers who have nothing to do with this litigation or with any alleged harms to Epic by purporting to restrict Apple's conduct as to those non-party developers. That does not mean, however, that such non-party developers may *enforce* the injunction, as Pure Sweat is trying to do. Put differently, even *if* Pure Sweat were seeking to facilitate linked-out transactions to the Epic Games Store, Pure Sweat would not be authorized to enforce the injunction, which can remedy harms only to Epic. The enforcement question is a distinct issue.

In his opinion concurring in the stay of the mandate in the prior appeal, Judge Smith observed that "[a]n injunction remedying a plaintiff's harm may 'affect[] nonparties[] [if] it does so only incidentally.'" *Epic Games*, 73 F.4th at 787 (M. Smith, J., concurring in the granting of the motion for a stay) (alterations in original) (quoting *United States v. Texas*, 599 U.S. 670, 693 (2023) (Gorsuch, J.,

7

concurring)). Here, however, the only non-parties who could incidentally benefit from the injunction are Epic subsidiaries or other developers who seek to use the Epic Games Store. *Id.* at 788. Extending the injunction to any other developers—*i.e.*, developers who are not affiliated with Epic and wish to link out to their *own* purchasing mechanisms or another non-Epic platform—is not necessary to grant complete relief to Epic, and therefore not allowed under *CASA*. Indeed, *Pure Sweat* illustrates the problem: Pure Sweat claims to have long wanted to link out to purchases to *its own website*, not the Epic Games Store—and thus seeks to receive benefits under the injunction that have nothing to do with Epic whatsoever. *Pure Sweat* Compl. ¶ 16.

Epic insists that Apple's statements in *Pure Sweat* "contradict its claim in this appeal that the district court entered an overbroad injunction that went beyond what was 'necessary to provide complete relief' to Epic." Mot. 5 (quoting ECF 108.1 at 2). That is so, in Epic's view, because Apple argued in *Pure Sweat* that the injunction is "tied to Epic's injuries alone." *Id.* (citation omitted). Epic takes that statement out of context. In *Pure Sweat*, Apple quoted *this* Court's conclusion that the district court's original injunction was "tied to Epic's injuries" by addressing harms to Epic as an app developer and a games distributor. Apple MTD 12 (emphasis and citation omitted); *see also id.* at 1. This Court's reasoning supports the precise reading Apple advances here: That the injunction cannot extend beyond

8

what is necessary to remedy those two sets of harms *to Epic*, and thus must be limited to Epic subsidiaries or other developers who seek to link out to purchases *on the Epic Games Store*.

Finally, Epic disclaims that *CASA* is a legal earthquake by pointing to Apple's position in *Pure Sweat* that *CASA* "affirmed" the principle that party-specific injunctions cannot directly benefit non-parties. Mot. 2. Again, Apple's arguments are consistent. *CASA* clarified and reaffirmed equitable principles constraining the scope of injunctive relief. But in doing so, it "provide[d] fresh guidance regarding the equitable powers of federal courts." *Doe v. Trump*, 142 F.4th 109, 112 (1st Cir. 2025). As this Court has since recognized, "*CASA* severely limits the power of district courts to issue nationwide injunctions." *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, Nos. 25-3293, 25-4476, 2025 WL 2716266, at *6 (9th Cir. Sept. 19, 2025). That is why court after court has remanded injunctions for reconsideration in light of *CASA*'s impact. *E.g.*, *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1339-40 (Fed. Cir. 2025), *cert granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025); *Reps. Comm. for Freedom of the Press v. Rokita*, 147 F.4th 720, 733-34 (7th Cir. 2025); *United States v. Texas*, 144 F.4th 632, 688 (5th Cir. 2025), *reh'g en banc granted, opinion vacated*, 150 F.4th 656 (5th Cir. 2025). And it is why this Court must reexamine the scope of the new injunction in light of *CASA*. Apple's position

9

in *Pure Sweat* in no way undermines *CASA*'s significance when it comes to the permissible scope of injunctive relief—the relevant question here.

## CONCLUSION

Apple does not oppose Epic's request for judicial notice but respectfully submits that its arguments in *Pure Sweat* and position in this case are consistent.

Dated: October 9, 2025    Respectfully submitted,

                                                  *s/ Gregory G. Garre*

Mark A. Perry  
Zachary D. Tripp  
Joshua M. Wesneski  
WEIL, GOTSHAL & MANGES LLP  
2001 M Street, NW  
Suite 600  
Washington, DC 20036  
(202) 682-7511  

Cynthia E. Richman  
GIBSON, DUNN & CRUTCHER LLP  
1700 M Street, NW  
Washington, DC 20036  
(202) 955-8500  

Theodore J. Boutrous Jr.  
Daniel G. Swanson  
GIBSON, DUNN & CRUTCHER LLP  
333 South Grand Avenue  
Los Angeles, CA 90071  
(213) 229-7000  

Gregory G. Garre  
Roman Martinez  
Soren J. Schmidt  
LATHAM & WATKINS LLP  
555 Eleventh Street, NW  
Suite 1000  
Washington, DC 20004  
(202) 637-2200  

Ben Harris  
Kristin C. Holladay  
LATHAM & WATKINS LLP  
1271 Avenue of the Americas  
New York, NY 10020  
(212) 906-1200  

Sarah M. Ray  
Nicholas Rosellini  
LATHAM & WATKINS LLP  
505 Montgomery Street, Suite 2000  
San Francisco, CA 94111  
 (415) 391-0600  

*Counsel for Defendant-ctr-claimant - Appellant Apple Inc.*