No. 25-2935

# United States Court of Appeals for the Ninth Circuit

EPIC GAMES, INC.,

*Plaintiff-Appellee,*

*v.*

APPLE INC.,

*Defendant-Appellant.*

On Appeal from the United States District Court for the Northern District of California
No. 4:20-cv-05640-YGR
Hon. Yvonne Gonzalez Rogers

## BRIEF OF FORMER FEDERAL ANTITRUST ENFORCERS AS *AMICI CURIAE* IN SUPPORT OF APPLE INC.'S PETITION FOR PANEL REHEARING AND/OR REHEARING EN BANC

KATHLEEN R. HARTNETT
COOLEY LLP
3 Embarcadero Center
20th Floor
San Francisco, CA 94111
(415) 693-2000
khartnett@cooley.com

EPHRAIM A. MCDOWELL
COOLEY LLP
1299 Pennsylvania Ave., NW
Suite 700
Washington, DC 20004-2400
(202) 842-7800
emcdowell@cooley.com

PATRICK J. HAYDEN
RJ VOGT
COOLEY LLP
55 Hudson Yards
New York, NY 10001
(212) 479-6000
phayden@cooley.com

*Counsel for Amici Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, *amici curiae* certify that none of amici have any parent corporations and that no publicly held company owns 10% or greater ownership in any of *amici*.

Date: March 12, 2026

*/s/ Ephraim A. McDowell*
Ephraim A. McDowell

# TABLE OF CONTENTS

INTEREST OF *AMICI CURIAE* .......... 1

INTRODUCTION AND SUMMARY OF ARGUMENT .......... 1

ARGUMENT .......... 3

The Panel's Proposed "Courses of Action" Are Inconsistent With Antitrust Principles .......... 3

A. Antitrust Courts Should Avoid Dictating Businesses' Prices and Terms of Dealing .......... 3

B. The Panel Opinion Improperly Seeks to Dictate Apple's Prices and Terms of Dealing .......... 6

CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AT&T Corp. v. Iowa Utils. Bd.*,
525 U.S. 366 (1999) ........ 9

*FTC v. Phoebe Putney Health Sys., Inc.*,
568 U.S. 216 (2013) ........ 4

*FTC v. Qualcomm Inc.*,
969 F.3d 974 (9th Cir. 2020) ........ 5

*Gorlick Distrib. Ctrs., LLC v. Car Sound Exhaust Sys., Inc.*,
723 F.3d 1019 (9th Cir. 2013) ........ 10

*NCAA v. Alston*,
594 U.S. 69 (2021) ........ 2, 5

*Novell, Inc. v. Microsoft Corp.*,
731 F.3d 1064 (10th Cir. 2013) ........ 9

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*,
555 U.S. 438 (2009) ........ 4

*Town of Concord v. Bos. Edison Co.*,
915 F.2d 17 (1st Cir. 1990) ........ 4, 5, 6, 7

*United States v. Colgate & Co.*,
250 U.S. 300 (1919) ........ 4

*United States v. Trenton Potteries Co.*,
273 U.S. 392 (1927) ........ 6

*Verizon Commc'ns Inc. v. Law Offices of Curtis v. Trinko, LLP*,
540 U.S. 398 (2004) ........ 4, 5, 7, 8, 9

*Winter v. Nat. Res. Def. Council*,
555 U.S. 7 (2008) ........ 9

**Other Authorities**

Phillip E. Areeda and Herbert Hovenkamp,
*Antitrust Law: An Analysis of Antitrust Principles and Their Application* (2d ed. 2017) .......... 5

## INTEREST OF *AMICI CURIAE*[1]

*Amici curiae* are former government officials with significant experience enforcing federal antitrust laws on behalf of the United States Department of Justice and/or the Federal Trade Commission. *Amici* are leading voices in the antitrust field; they have testified as experts before Congress, taught at top-tier educational institutions, published leading antitrust articles, and been cited in federal antitrust decisions.

In their capacity as former enforcement officials—and as antitrust practitioners, academics, and economists—*amici* have a substantial interest in the consistent enforcement, coherent interpretation, and predictable application of antitrust laws. Background details for each of the *amici* are set forth in an Addendum to this brief.

## INTRODUCTION AND SUMMARY OF ARGUMENT[2]

The Supreme Court recently emphasized that "caution is key"

---

[1] No party or party's counsel authored this brief in whole or in part, and no one other than *amici* and their counsel has made a monetary contribution to this brief's preparation and submission. Cooley represents Apple in other unrelated matters, and some *amici* may be affiliated with firms that similarly represent Apple in other unrelated matters.

[2] Unless otherwise indicated, all internal citations and quotations are omitted.

"[w]hen it comes to fashioning an antitrust remedy." *NCAA v. Alston*, 594 U.S. 69, 106 (2021). Caution is necessary because even well-intentioned judicial remedies can have unintended anticompetitive consequences that undermine the purpose of our antitrust laws. As a result, "markets are often more effective than the heavy hand of judicial power when it comes to enhancing consumer welfare." *Id.*

Here, the panel failed to heed that caution when it "recommend[ed] some possible courses of action to the district court regarding an appropriate commission or fee limitation on remand." Op. 41. Specifically, the panel suggested that Apple may recover only the direct costs of implementing linked-out purchases, even if a higher commission would not be "prohibitive." Op. 40; *see id.* at 41-42. If left uncorrected, the panel's dicta could deny Apple compensation for its enormous investments in developing the App Store and other benefits to developers.

The panel's statements at pages 41-42 of its opinion run counter to principles of sound antitrust enforcement. That language improperly seeks to micromanage private business dealings, despite clear evidence that courts are ill-equipped to regulate prices and that their doing so can chill innovation by reducing and even eliminating businesses' ability to

earn a return on innovations. If the panel opinion remains intact, it risks discouraging Apple and other technology companies from innovating, in contravention of the public interest.

## ARGUMENT

### THE PANEL'S PROPOSED "COURSES OF ACTION" ARE INCONSISTENT WITH ANTITRUST PRINCIPLES

The panel allowed Apple to charge *some* commission on linked-out purchases. Op. 36-40. But it held that Apple must set the commission at some unspecified rate that is not "prohibitive" and suggested that a commission should cover only Apple's direct costs in facilitating such purchases. *See* Op. 41-42. The panel stated that a commission should be "based on the costs that are genuinely and reasonably necessary for [Apple's] coordination of external links for linked-out purchases, but no more." *Id.* at 41. And it further suggested that Apple may only receive "compensation for the use of its intellectual property that is *directly used* in permitting Epic and others to consummate linked-out purchases." *Id.* at 41-42. The panel erred in seeking to micromanage Apple's charging of commissions for linked-out purchases.

#### A. Antitrust Courts Should Avoid Dictating Businesses' Prices and Terms of Dealing

"As a general rule, businesses are free to choose the parties with

whom they will deal, as well as the prices, terms, and conditions of that dealing." *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 448 (2009). For that reason, the Sherman Act "does not restrict the long recognized right" of a "private business[] freely to exercise [its] own independent discretion as to parties with whom [it] will deal." *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919). Nor does the Sherman Act mandate that a private business charge only a "fair" or "reasonable" price. *Town of Concord v. Bos. Edison Co.*, 915 F.2d 17, 25 (1st Cir. 1990) (Breyer, J.). To the contrary, "possession of monopoly power, and the concomitant charging of monopoly prices" is "not unlawful" and "is an important element of the free-market system[,]" because "[t]he opportunity to charge monopoly prices—at least for a short period—is what attracts 'business acumen' in the first place." *Verizon Commc'ns Inc. v. Law Offices of Curtis v. Trinko, LLP*, 540 U.S. 398, 407 (2004).

Those principles accord with "the fundamental national values of free enterprise and economic competition that are embodied in the federal antitrust laws." *FTC v. Phoebe Putney Health Sys., Inc.*, 568 U.S. 216, 225 (2013). If firms were compelled to "share the source of their advantage" or to charge less than the market would accept, then they

would have reduced incentives to invest. *Trinko*, 540 U.S. at 407-08. Critically here, intrusive judicial remedies can be particularly damaging to "technological markets, where innovation 'is essential to economic growth and social welfare' and 'an erroneous decision will deny large consumer benefits.'" *FTC v. Qualcomm Inc.*, 969 F.3d 974, 991 (9th Cir. 2020); *cf.* Phillip E. Areeda and Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application*, § 1739f4(C) (2d ed. 2017) ("[I]ntellectual property is often characterized by large upfront costs, and the IP holder must earn enough to cover these as well as marginal costs.").

The foregoing principles also reflect that "judges make for poor 'central planners' and should never aspire to the role." *Alston*, 594 U.S. at 103. "[A]s generalists, as lawyers, and as outsiders," courts should remain cognizant of "their limitations" when "trying to understand intricate business relationships," *id.* at 106—"*especially* in technology markets," *Qualcomm*, 969 F.3d at 990. Judges should "avoid direct price administration" in particular because it is largely impossible to "determine a 'fair price'" "without acting like a rate-setting regulatory agency, the rate-setting proceedings of which often last for several years."

*Town of Concord*, 915 F.2d at 25. Indeed, "[t]he reasonable price fixed today may through economic and business changes become the unreasonable price of tomorrow." *United States v. Trenton Potteries Co.*, 273 U.S. 392, 397 (1927) (cleaned up).

### B. The Panel Opinion Improperly Seeks to Dictate Apple's Prices and Terms of Dealing

The panel opinion's proposed "course[] of action" for remand is inconsistent with these established principles. Op. 41. That portion of the opinion micromanages granular details of Apple's dealings with developers, and it appears to restrict Apple's commissions on linked-out purchases to its direct costs—even if a commission that would adequately compensate Apple for the use of its intellectual property would not be "prohibitive." *Id.* at 40-42. The panel took these steps even though Apple's specific practices for outside-app purchases have hardly been scrutinized, let alone deemed unlawful.

To be sure, the panel modified certain aspects of the district court's order and did not accept the district court's complete ban on commissions. Op. 40-41. But the panel's recommended "courses of action" on remand raise problems of their own. As Apple explains—and as Epic has represented—the panel opinion could be read to bar all commissions

above a *de minimis* level, disregarding the value of Apple's innovation and intellectual property and effectively restoring the district court's zero-commission rule. *See id.* at 41-42; *see* Pet. 1-2, 6-7. That is precisely the type of "direct price administration" that "antitrust courts normally avoid." *Town of Concord*, 915 F.2d at 25.

Moreover, the panel opinion raises serious administrability concerns. In setting a permissible commission rate, it is far from clear how Apple—or a court—should determine which costs are "genuinely and reasonably necessary," or which intellectual property is "directly used," in facilitating linked-out purchases. Op. 41-42. As one example, the App Store provides visibility and distribution services for the apps it features—must the costs of developing the App Store somehow be apportioned to all apps in this calculus? And costs change frequently—does a permissible commission rate suddenly become "prohibitive" when Apple reduces one cost involved in purchases? The panel offers no guidance, and its amorphous direct costs standard only underscores the extent to which "identifying the proper price, quantity, and other terms of dealing" is "a role for which [courts] are ill suited." *Trinko*, 540 U.S. at 408.

If left intact, the panel's proposed approach could force Apple to share the fruits of its labor with developers at little to no cost (and with no commensurate gain). Millions of consumers and developers benefit from the App Store, and Apple incurred significant costs to develop it. Apple monetizes the App Store through its commissions, and no clear alternative monetization structure exists, especially given the wide variety of developers who use the App Store. And in particular, restrictions on outside-app purchases are necessary to prevent free-riding and to allow Apple to earn a return on its substantial investments in its intellectual property and other benefits for developers.

Courts and antitrust enforcers have long understood the dangers of forced-sharing remedies like the one that the panel opinion appears to envision here. Such obligations are in "tension with the underlying purpose of antitrust law, since [they] may lessen the incentive for the monopolist, the rival, or both to invest in . . . economically beneficial facilities." *Trinko*, 540 U.S. at 407-08. There is no "guarantee that firms will undertake the investment necessary to produce complex technological innovations knowing that any competitive advantage deriving from those innovations will be dissipated by the sharing

requirement." *AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 429 (1999) (Breyer, J., concurring in part and dissenting in part). That is why "[e]ven a monopolist generally has no duty to share (or continue to share) its intellectual or physical property with a rival." *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1074 (10th Cir. 2013) (Gorsuch, J.). Thus, whether viewed as price setting or compulsory sharing, the panel's apparent approach to commissions is antithetical to the goals and principles of antitrust law. For that reason, the relief envisioned by the panel opinion would be contrary to "the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 32 (2008).

The panel opinion could also have important practical consequences. Apple made significant investments to create the iPhone and develop the iOS ecosystem. Forcing Apple to give developers access to its intellectual property without adequate compensation invites free riding and discourages the type of "risk taking that produces innovation and economic growth." *Trinko*, 540 U.S. at 407. Those consequences are not limited to Apple alone—any would-be developer may rationally decide not to invest in new technology with no clear path to monetizing it. And when the law discourages innovation, the ultimate losers are

consumers. *See Gorlick Distrib. Ctrs., LLC v. Car Sound Exhaust Sys., Inc.*, 723 F.3d 1019, 1026 (9th Cir. 2013) (observing that "free-riding could ultimately hurt consumers").

## CONCLUSION

For the foregoing reasons, this Court should grant Apple's rehearing petition.

Dated: March 12, 2026

Respectfully submitted,

*/s/ Ephraim A. McDowell*

EPHRAIM A. MCDOWELL
COOLEY LLP
1299 Pennsylvania Ave., NW
Suite 700
Washington, DC 20004-2400
(202) 842-7800
emcdowell@cooley.com

KATHLEEN R. HARTNETT
COOLEY LLP
3 Embarcadero Center
20th Floor
San Francisco, CA 94111
(415) 693-2000
khartnett@cooley.com

PATRICK J. HAYDEN
RJ VOGT
COOLEY LLP
55 Hudson Yards
New York, NY 10001

(212) 479-6000
phayden@cooley.com

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

**9th Cir. Case Number(s)** 25-2935

I am the attorney or self-represented party.

**This brief contains 1,969 words**, including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[X] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

[ ] it is a joint brief submitted by separately represented parties.
[ ] a party or parties are filing a single brief in response to multiple briefs.
[ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated ______________.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** *<u>/s/ Ephraim A. McDowell</u>* **Date** March 12, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2026, an electronic copy of the foregoing brief was filed with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit using the Court's CM-ECF system and was served electronically by the Notice of Docket Activity upon registered CM-ECF participants.

Dated: March 12, 2026

Respectfully Submitted,

*/s/ Ephraim A. McDowell*

EPHRAIM A. MCDOWELL
COOLEY LLP
1299 Pennsylvania Ave., NW
Suite 700
Washington, DC 20004-2400
(202) 842-7800
emcdowell@cooley.com

## ADDENDUM

**Daniel Gilman** is the Senior Scholar of Competition Policy at the International Center for Law & Economics. He previously served as an attorney advisor in the FTC's Office of Policy Planning.

**Abbott ("Tad") Lipsky, Jr.** is an Adjunct Professor at the Antonin Scalia Law School. He previously served as Deputy Assistant Attorney General for the DOJ Antitrust Division. He also served as Acting Director of the Bureau of Competition at the FTC.

**Jeremy Sandford** is a partner at Econic Partners. He previously served as an Economic Advisor to Commissioner Christine S. Wilson and an economist in the FTC's Bureau of Economics.

**Michael Vita** served as a Deputy Director in the FTC's Bureau of Economics.

**Nathan Wilson** is a partner at Econic Partners. He previously served as an Economic Advisor to Commissioner Terrell McSweeny and a Deputy Assistant Director in the FTC's Bureau of Economics.