**No. 25-2935**
Decided via Published Opinion on December 11, 2025
The Honorable Sidney R. Thomas, Milan D. Smith, Jr., and Michael J. McShane
(sitting by designation)

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

**EPIC GAMES, INC.,**

*Plaintiff-ctr-defendant - Appellee*,

v.

**APPLE INC.,**

*Defendant-ctr-claimant - Appellant*.

Appeal from the United States District Court
for the Northern District of California
No. 4:20-cv-05640-YGR (Yvonne Gonzalez Rogers, District Judge)

## APPELLANT APPLE INC.'S MOTION FOR STAY OF THE MANDATE

| | |
|---|---|
| Mark A. Perry | Gregory G. Garre |
| Zachary D. Tripp | Roman Martinez |
| Joshua M. Wesneski | Soren J. Schmidt |
| WEIL, GOTSHAL & MANGES LLP | LATHAM & WATKINS LLP |
| 2001 M Street, NW, Suite 600 | 555 Eleventh Street, NW, Suite 1000 |
| Washington, DC 20036 | Washington, DC 20004 |
| (202) 682-7511 | (202) 637-2200 |
| | |
| Cynthia E. Richman | Ben Harris |
| GIBSON, DUNN & CRUTCHER LLP | Kristin C. Holladay |
| 1700 M Street, NW | LATHAM & WATKINS LLP |
| Washington, DC 20036 | 1271 Avenue of the Americas |
| (202) 955-8500 | New York, NY 10020 |
| | (212) 906-1200 |
| Theodore J. Boutrous Jr. | |
| Daniel G. Swanson | Sarah M. Ray |
| GIBSON, DUNN & CRUTCHER LLP | Nicholas Rosellini |
| 333 South Grand Avenue | LATHAM & WATKINS LLP |
| Los Angeles, CA 90071 | 505 Montgomery Street, Suite 2000 |
| (213) 229-7000 | San Francisco, CA 94111 |
| | (415) 391-0600 |
| April 3, 2026 | |

*Counsel for Apple Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION ............................................................................................. 1

ARGUMENT ..................................................................................................... 3

I.  THIS CASE PRESENTS SUBSTANTIAL QUESTIONS WARRANTING SUPREME COURT REVIEW ............................................ 4

II.  GOOD CAUSE EXISTS FOR A STAY .......................................................... 8

CONCLUSION ................................................................................................. 10

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bryant v. Ford Motor Co.*,
   886 F.2d 1526 (9th Cir. 1989) ............................................................4

*Doe v. Miller*,
   418 F.3d 950 (8th Cir. 2005) ............................................................7

*Epic Games, Inc. v. Apple, Inc.*,
   73 F.4th 785 (9th Cir. 2023) ...........................................................2, 3

*Georgia Power Co. v. NLRB*,
   484 F.3d 1288 (11th Cir. 2007) ........................................................5

*Goya Foods, Inc. v. Wallack Management Co.*,
   290 F.3d 63 (1st Cir. 2002).............................................................5

*Institute of Cetacean Research v. Sea Shepherd Conservation Society*,
   774 F.3d 935 (9th Cir. 2014) ...........................................................4

*NBA Properties, Inc. v. Gold*,
   895 F.2d 30 (1st Cir. 1990).............................................................5

*Perez v. Danbury Hospital*,
   347 F.3d 419 (2d Cir. 2003) ...........................................................5

*Potter v. District of Columbia*,
   126 F.4th 720 (D.C. Cir. 2025).........................................................5

*Trump v. CASA*,
   606 U.S. 831 (2025)....................................................................2, 7

*United States v. Pete*,
   525 F.3d 844 (9th Cir. 2008) ...........................................................4

*United States v. Saccoccia*,
   433 F.3d 19 (1st Cir. 2005)...........................................................2, 5, 6

*Visciotti v. Martel*,
   862 F.3d 749 (9th Cir. 2016) ...........................................................7

**Page(s)**

## OTHER AUTHORITIES

9th Cir. R. 41-1 ..............................................................................................3

Fed. R. App. P. 41(d)(1)........................................................................1, 3, 4, 6

Sup. Ct. R. 10(a)..........................................................................................7, 8

Sup. Ct. R. 10(c)..............................................................................................8

Jay Peters, *Tim Sweeney on the future of Fortnite after another win over Apple*, The Verge (Dec. 11, 2025), https://www.theverge.com/news/843265/apple-epic-games-tim-sweeney-interview (subscription required).............................................................3

## INTRODUCTION

Pursuant to Federal Rule of Appellate Procedure 41(d), Apple Inc. respectfully submits this motion for a stay of the mandate pending the filing and disposition of Apple's petition for a writ of certiorari in the Supreme Court. This Court issued its decision in this case on December 11, 2025. ECF No. 170 ("Op."). Apple timely filed a petition for panel rehearing and rehearing en banc on March 2, 2026. ECF No. 182. This Court denied that petition on March 30, 2026. ECF No. 184. Apple intends to file a petition for a writ of certiorari in this case and seeks a stay of the mandate pending disposition of that petition. Epic has indicated that it opposes this motion.

Multiple "substantial question[s]" warrant a stay of the mandate under Federal Rule of Appellate Procedure 41(d)(1). For example, the Court's decision raises an important question about the requirements for imposing a civil contempt sanction. This Court held that "parties may be held in contempt for violating the spirit of an injunction" and it relied on the injunction's "spirit" here to affirm the district court's ruling that held Apple in civil contempt for charging a 27% commission on linked-out purchases, even though the injunction's "text" is silent as to commissions. Op. 20, 40 n.9; *see id.* at 21-24. Other circuits, however, have held that a finding of civil contempt is inappropriate unless the actual "words of the court's order have

1

clearly and unambiguously forbidden *the precise conduct on which the contempt allegation is based.*" *United States v. Saccoccia*, 433 F.3d 19, 28 (1st Cir. 2005).

This case also presents important questions regarding the proper scope of the equitable authority of courts to fashion injunctive relief. This Court held that the district court properly extended the injunction in this case to *all* developers, irrespective of whether they link out or are reasonably likely to link out to the Epic Games Store. In *Trump v. CASA*, however, the Supreme Court held that injunctive relief generally must be confined to the parties before the Court and can extend no further than necessary to provide "complete relief" between the parties in the case. 606 U.S. 831, 854 (2025). And the Court further observed that "the broader and deeper the remedy the plaintiff wants, the stronger the plaintiff's story needs to be." *Id.* (citation omitted). Here, Epic failed to present evidence supporting the proposition that extending the injunction to developers that will never use the Epic Games Store is necessary to provide "complete relief" to Epic.

There is good cause for a stay of the mandate. This Court has adopted a "general practice of granting a motion for a stay if the arguments presented therein are not frivolous." *Epic Games, Inc. v. Apple, Inc.*, 73 F.4th 785, 785 (9th Cir. 2023) (M. Smith, J., concurring in the granting of the motion for a stay of the mandate pending the filing of a petition for certiorari). If the mandate issues now, Apple will be required to change its business model to comply with this Court's modifications

2

to the injunction before the Supreme Court can consider whether further review is appropriate. Among other things, Epic's CEO has already suggested that the Court's decision in this case allows, if not requires, only a de minimis commission on linked-out purchases[1]—a position that would significantly impact Apple's business model and its ability to secure a reasonable return on its considerable investment in establishing, and sustaining, one of the most important and innovative marketplaces in the world. Staying the mandate pending a petition for certiorari would promote judicial efficiency and avoid unnecessary expense. And a stay would not prejudice Epic because this Court's order prohibited Apple from charging any commission on linked-out purchases until the district court addresses the issue on remand.

A stay pending Apple's petition for a writ of certiorari is therefore warranted.

## ARGUMENT

A stay of the mandate pending the filing of a petition for a writ of certiorari is appropriate where "the petition would present a substantial question and . . . there is good cause for a stay." Fed. R. App. P. 41(d)(1); *see* 9th Cir. R. 41-1. This Court's "general practice" is to "grant[] a motion for a stay if the arguments presented therein are not frivolous." *Epic Games, Inc. v. Apple, Inc.*, 73 F.4th 785, 785 (9th Cir. 2023) (M. Smith, J., concurring). It is thus "often the case" that an appellate mandate will

---

[1] Jay Peters, *Tim Sweeney on the future of Fortnite after another win over Apple*, The Verge (Dec. 11, 2025), https://www.theverge.com/news/843265/apple-epic-games-tim-sweeney-interview (subscription required).

3

be stayed pending the filing of a certiorari petition. *United States v. Pete*, 525 F.3d 844, 850 & n.9 (9th Cir. 2008); *see also Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1528 (9th Cir. 1989) ("[A] party seeking a stay of the mandate following this [C]ourt's judgment need not demonstrate that exceptional circumstances justify a stay."). The criteria for staying the mandate are readily satisfied in this case.

## I.  THIS CASE PRESENTS SUBSTANTIAL QUESTIONS WARRANTING SUPREME COURT REVIEW

This case presents "substantial" questions, including, for example, the proper standards for assessing civil contempt and the appropriate scope of injunctive relief. A stay of the mandate is warranted. Fed. R. App. P. 41(d)(1).

This case raises an important threshold question concerning the standard for imposing a civil contempt sanction. Consistent with prior circuit precedent, this Court relied on the injunction's "spirit" to affirm the district court's decision holding Apple in contempt. Op. 18-21. The Court reasoned that its previous decision in *Institute of Cetacean Research v. Sea Shepherd Conservation Society*, 774 F.3d 935 (9th Cir. 2014), "means what it says: parties may be held in contempt for violating the spirit of an injunction." Op. 20. As a result, although "the text of the Injunction does not address commissions at all," the Court held Apple in civil contempt because "the spirit of the Injunction contemplates . . . *prohibitive* commissions," *id.* at 40 n.9, and Apple "charged a prohibitive commission" on linked-out purchases, *id.* at 29.

4

Other circuits impose a different, and more demanding, civil contempt standard. Multiple circuit courts demand "'clear and convincing evidence' that the alleged contemnor has violated a clear and unambiguous order of the court." *Potter v. District of Columbia*, 126 F.4th 720, 723 (D.C. Cir. 2025) (citation omitted); *see, e.g.*, *Perez v. Danbury Hosp.*, 347 F.3d 419, 423-25 (2d Cir. 2003) (demanding that "the order the contemnor failed to comply with [be] clear and unambiguous" and looking to the "four corners" of the decree (citations omitted)); *United States v. Saccoccia*, 433 F.3d 19, 27 (1st Cir. 2005) (same); *see also Georgia Power Co. v. NLRB*, 484 F.3d 1288, 1291 (11th Cir. 2007) (holding that the "focus in a civil contempt proceeding 'is not on the subjective beliefs or intent of the alleged contemnors in complying with the order, but whether in fact their conduct complied with the order at issue'" (citation omitted)).

The First Circuit's test, for example, is exacting. That court asks "whether the putative contemnor is 'able to ascertain from the four corners of the order precisely what acts are forbidden,'" a test that "limits the inquiry to an examination of that document's *text*." *Goya Foods, Inc. v. Wallack Mgmt. Co.*, 290 F.3d 63, 76 (1st Cir. 2002) (emphasis added) (citation omitted). "It is because '[t]he consequences that attend the violation of a court order are potentially dire,' that 'courts must "read court decrees to mean rather precisely what they say."'" *Saccoccia*, 433 F.3d at 28 (alteration in original) (citations omitted); *see also NBA*

5

*Props., Inc. v. Gold*, 895 F.2d 30, 32 (1st Cir. 1990) (Breyer, J.) (similar). As a result, in the First Circuit, to support a contempt finding "the words of the court's order" must have "clearly and unambiguously forbidden *the precise conduct on which the contempt allegation is based*." *Saccoccia*, 433 F.3d at 28.

Here, the "words" of the district court's injunction did not "clearly and unambiguously" prohibit Apple from charging a commission on linked-out purchases. *Id.* Indeed, as this Court recognized, the "text of the Injunction does not address commissions at all." Op. 40 n.9. And the Court further premised its civil contempt finding on other "restrictions" Apple imposed that this Court assumed "did not violate the strict letter of the Injunction." *Id.* at 29. This Court did reason that two of Apple's design restrictions "violate[d] the strict letter of the Injunction." *Id.* But the Court did not apply the strict standard used by other circuits. And even if the text was sufficiently unambiguous to trigger the civil contempt standard in other circuits, those separate violations cannot justify the Court's conclusion that a contempt remedy was warranted targeting Apple's commission rate.

The proper standard for determining whether a civil contempt sanction is appropriate is a "substantial" question. Fed. R. App. P. 41(d)(1). As this case illustrates, a court's exercise of the civil contempt power is a momentous act that can have significant consequences. The differing standards that courts of appeals have adopted for determining whether a civil contempt sanction is appropriate

6

supports Supreme Court review on this issue. *See* Sup. Ct. R. 10(a); *Visciotti v. Martel*, 862 F.3d 749, 773 (9th Cir. 2016) (Berzon, J., concurring) ("Whether the decision below conflicts with the decisions of other courts appears to be the paramount factor at the certiorari stage."); *see also Doe v. Miller*, 418 F.3d 950, 952 (8th Cir. 2005) (identifying "conflict in authority among the courts of appeals" as a factor that could "prompt the [Supreme] Court to grant certiorari").

This case also presents a substantial question on the scope of a federal court's injunctive power. In *CASA*, the Supreme Court held that longstanding equitable principles require that injunctive relief be tailored narrowly to address the specific harms at issue and to provide, at most, "complete relief" to the plaintiff in a case. 606 U.S. at 853-54. The Court further held that "the broader and deeper the remedy the plaintiff wants, the stronger the plaintiff's story needs to be." *Id.* at 854 (citation omitted). The injunction in this case nevertheless extends to all developers nationwide, including developers who will never use the Epic Games Store. Op. 51-52. In allowing that injunction, the Court reasoned that, "[w]hile there is no antitrust liability here, the scope of a permanent injunction following an incipient antitrust violation pursuant to the UCL is . . . distinguishable from the injunction's scope in *CASA*." *Id.* at 52. In addition, the Court stated that it "agree[d]" with Epic's contention that "limiting the [injunction]" in the manner proposed by Apple (to

developers who are reasonably likely to use the Epic Games Store) "would not facilitate the competition necessary to grant Epic complete relief." *Id.*

The Court's conclusion that *CASA* permits injunctive relief with respect to *all* developers raises a substantial question regarding the proper exercise of equitable power in this context. Courts are already grappling with the *CASA* decision. And this is far from a mine-run case: At issue is the fundamental business model powering one of the most successful online marketplaces in the world, and the engine that compensates Apple for the considerable investments it has made in the App Store, iOS, and iPhone. In this context, whether *CASA* and related limits on the equitable power of the federal courts permit extending the injunction to all developers across the United States—even those that will never use the Epic Games Store—warrants review by the Supreme Court. *See* Sup. Ct. R. 10(a), (c).

## II.   GOOD CAUSE EXISTS FOR A STAY

There is good cause for a stay. The questions presented are unquestionably important and, indeed, attracted significant amicus participation in this Court. In addition, as a practical matter, the resolution of this case will have important implications for one of the world's most important marketplaces. For example, Epic's CEO has claimed that the contempt injunction issued in this case limits Apple to charging a de minimis commission on linked-out purchases. Such a rate would deprive Apple of compensation for its considerable investment in the IP-protected

tools, technologies, and services that attract developers and users from around the world.  And the contempt sanction puts the courts in the role of determining what costs Apple can recover for these investments.  These serious consequences warrant delaying remand proceedings until judicial review is complete.

At the same time, this Court has already ordered that Apple "should not be able to charge any commission for linked-out purchases until such time as the district court has approved an appropriate fee."  Op. 42.  As a result, delaying any remand proceedings will not cause any prejudice to Epic.  Furthermore, the remand proceedings in this case are likely to be complex and costly.  If the district court moves ahead with those proceedings before the Supreme Court decides whether to grant review in this case or issues a decision on the merits, it could needlessly waste both judicial and party resources.  There is no reason for the parties to simultaneously litigate this complex case in both the district court and in the Supreme Court if a stay of the mandate would not cause prejudice and instead could ensure that any subsequent proceedings hew to the appropriate legal framework.  Should the Supreme Court decline to grant certiorari, the case can proceed before the district court.  The balance of the equities therefore favors staying the mandate.

9

**CONCLUSION**

For the foregoing reasons, the motion to stay the mandate should be granted.

Dated:  April 3, 2026

Respectfully submitted,

*s/ Gregory G. Garre*

| | |
|---|---|
| Mark A. Perry | Gregory G. Garre |
| Zachary D. Tripp | Roman Martinez |
| Joshua M. Wesneski | Soren J. Schmidt |
| WEIL, GOTSHAL & MANGES LLP | LATHAM & WATKINS LLP |
| 2001 M Street, NW | 555 Eleventh Street, NW |
| Suite 600 | Suite 1000 |
| Washington, DC 20036 | Washington, DC 20004 |
| (202) 682-7511 | (202) 637-2200 |
| | |
| Cynthia E. Richman | Ben Harris |
| GIBSON, DUNN & CRUTCHER LLP | Kristin C. Holladay |
| 1700 M Street, NW | LATHAM & WATKINS LLP |
| Washington, DC 20036 | 1271 Avenue of the Americas |
| (202) 955-8500 | New York, NY 10020 |
| | (212) 906-1200 |
| Theodore J. Boutrous Jr. | |
| Daniel G. Swanson | Sarah M. Ray |
| GIBSON, DUNN & CRUTCHER LLP | Nicholas Rosellini |
| 333 South Grand Avenue | LATHAM & WATKINS LLP |
| Los Angeles, CA 90071 | 505 Montgomery Street, Suite 2000 |
| (213) 229-7000 | San Francisco, CA 94111 |
| | (415) 391-0600 |

*Counsel for Defendant-ctr-claimant - Appellant Apple Inc.*

10