No. 25-2935

IN THE

# United States Court of Appeals for the Ninth Circuit

EPIC GAMES, INC.,

*Plaintiff-Appellee,*

v.

APPLE INC.,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of California
No. 4:20-cv-05640-YGR
Hon. Yvonne Gonzalez Rogers

## OPPOSITION BY APPELLEE EPIC GAMES, INC. TO MOTION TO STAY MANDATE

Gary A. Bornstein
Yonatan Even
Lauren A. Moskowitz
Michael J. Zaken
M. Brent Byars
CRAVATH, SWAINE & MOORE LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001-1867
(212) 474-1000

Paul J. Riehle
FAEGRE DRINKER BIDDLE &
REATH LLP
Four Embarcadero Center
San Francisco, CA 94111-4180
(415) 591-7500

Kevin K. Russell
Daniel Woofter
RUSSELL & WOOFTER LLC
1701 Pennsylvania Ave, NW, Ste. 200
Washington, DC 20006
(202) 240-8433

*Counsel for Plaintiff-Appellee Epic Games, Inc.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Epic Games, Inc. ("Epic") states that it has no parent company and that Tencent Holdings Limited and The Walt Disney Company each own more than 10% of Epic stock.

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

ARGUMENT .......................................................................................................5

I.      Apple Has Not Shown Good Cause For A Stay.............................................6

      A.      Any Supreme Court Review Of Apple's Questions Will Not Avoid The Need For A Remand Or Change The Nature Of Those Proceedings.................................................................................7

      B.      A Stay Would Inflict Irreparable Harm On Epic And The Public, Not On Apple. ........................................................................12

II.      Apple Does Not Present A Substantial Question For Supreme Court Review. ............................................................................................................13

      A.      The Supreme Court Has Already Refused To Consider Apple's Objections To The Scope Of The Injunction. .....................................13

      B.      Apple's "Spirit of the Injunction" Objection Is Insubstantial.............16

CONCLUSION ...................................................................................................20

ii

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alley v. U.S. Dep't of Health & Hum. Servs.*,
590 F.3d 1195 (11th Cir. 2009) ...................................................................19

*AmBrit, Inc. v. Kraft, Inc.*,
812 F.2d 1531 (11th Cir. 1986) ...................................................................19

*Brown v. Plata*,
563 U.S. 493 (2011) .....................................................................................11

*Califano v. Yamasaki*,
442 U.S. 682 (1979) .....................................................................................14

*Chrysler Corp. v. United States*,
316 U.S. 556 (1942) .....................................................................................11

*Epic Games, Inc. v. Apple Inc.*,
559 F. Supp. 3d 898 (N.D. Cal. 2021) .........................................................15

*Epic Games, Inc. v. Apple Inc.*,
67 F.4th 946 (9th Cir. 2023) ...................................................................passim

*Epic Games, Inc. v. Apple Inc.*,
781 F. Supp. 3d 943 (N.D. Cal. 2025) .......................................................2, 16

*Goya Foods, Inc. v. Wallack Mgmt. Co.*,
290 F.3d 63 (1st Cir. 2002) ..........................................................................19

*In re Door*,
195 F.2d 766 (D.C. Cir. 1952) .....................................................................19

*In re Google Play Store Antitrust Litig.*,
152 F.4th 1078 (9th Cir. 2025) ...................................................................6, 13

*Inst. of Cetacean Research v. Sea Shepherd Conservation Society*,
774 F.3d 935, 953-54 (9th Cir. 2014) ..........................................................19

iii

*John B. Stetson Co. v. Stephen L. Stetson Co.*,
128 F.2d 981 (2d Cir. 1942) ...................................................................19

*McComb v. Jacksonville Paper Co.*,
336 U.S. 187 (1949).........................................................................17, 19

*Melendres v. Maricopa Cnty.*,
897 F.3d 1217 (9th Cir. 2018) ...............................................................11

*NLRB v. Deena Artware, Inc.*,
361 U.S. 398 (1960) (Frankfurter, J., concurring)..................................17

*Packwood v. Senate Select Committee on Ethics*,
510 U.S. 1319 (1994)...............................................................................13

*Smith v. Marsh*,
194 F.3d 1045 (9th Cir. 1999) ...............................................................15

*Taggart v. Lorenzen*,
587 U.S. 554 (2019)...........................................................................17, 19

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025)........................................................................5, 13, 14

*United States v. Nagra*,
147 F.3d 875 (9th Cir. 1998) ..................................................................15

**Other Authorities**

*Apple Magazine*, "Apple Can Charge Commission on External Payment
Links After Appeals Court Modifies Epic Ruling" (December 18, 2025),
*available at* https://applemagazine.com/apple-app-store-external-
payment-fees/ ..............................................................................................4

Prohibit, Black's Law Dictionary (12th ed. 2024) ....................................9

## INTRODUCTION

Apple's effort to stay this Court's mandate is about nothing other than delay. While Apple's commission for linked-out transactions remains subject to judicial review, most developers are reacting to the uncertainty by refraining from steering—so that most transactions continue to flow through Apple's IAP. Staying the mandate, and thereby delaying the remand proceedings that will need to happen no matter what the Supreme Court does, simply delays relief for consumers and allows Apple to continue reaping supracompetitive profits from IAP.

For well over a decade, Apple has been suppressing competition to its in-app payment solution by prohibiting developers from steering their users to cheaper and better alternatives. In 2021, the district court found that conduct unlawful and ordered Apple to stop. Op. 11. This Court affirmed liability and the resulting Injunction, including its application to developers generally, reasoning that the scope of the Injunction was necessary to provide Epic complete relief. *Epic Games, Inc. v. Apple Inc.* ("*Apple I*"), 67 F.4th 946, 999-1003 (9th Cir. 2023). No judge called for a vote on Apple's subsequent petition for rehearing *en banc*. No. 21-16506, Dkts. 224, 246. The Supreme Court then denied Apple's petition for certiorari challenging the scope of the Injunction, without dissent. *See* 144 S. Ct. 682 (2024). At Apple's request, the Injunction was stayed for the duration of the appeal process—well over two years.

1

Once the Injunction finally went into effect, instead of complying, Apple responded with evasion and defiance. It implemented multiple measures intended to prevent steering, including a new fee on steered transactions set so high that Apple knew it would make steering financially infeasible. Op. 12. It worked. When called to account, Apple did not identify a single developer that had implemented steering. Op. 27. And when ordered to explain how it arrived at its fee, Apple "outright lied" to the district court about what it had done. *Epic Games, Inc. v. Apple Inc.* ("*Apple II-Dist.Ct.*"), 781 F. Supp. 3d 943, 952, 968 (N.D. Cal. 2025). After extensive hearings, the district court held Apple in civil contempt for violating the letter and the spirit of the Injunction. *Id*. The court then entered a remedial order that included a permanent ban on any steering-targeted commission. *Id*. After denying Apple's request for a partial stay pending appeal, this Court affirmed the contempt finding and the bulk of the remedial order. *See* Op. 1, 18, 40-41. The only relevant exception was the perpetual ban on commissions, which (per Apple's request) the Court remanded for reconsideration. Op. 40-41. The full Court then denied Apple's petition for rehearing, again with no judge calling for a vote. No. 25-2935, Dkt. 184.

Apple's willful contempt has successfully delayed the restoration of competition by more than two years beyond the time the Injunction was stayed pending the merits appeal, allowing it to reap billions of dollars in what this Court

2

previously affirmed were supracompetitive fees for the use of Apple's in-app purchasing service ("IAP"). *See Apple I*, 67 F.4th at 984-85. Although the district court's remedial order barring Apple's link-out commission has been in effect during the latest round of appeals, few developers have taken advantage of their steering rights while that order has been subject to review. And developers will continue delaying implementation until they have certainty on the commission structure they will face.

That is because implementing steering requires investing significant resources to modify apps and either self-supply payment services or enter into contractual relationships with competing payment solutions. Developers also must expend resources educating their users about new ways they can purchase out-of-app content, particularly because mobile users are already accustomed to making in-app purchases using IAP. Developers are understandably reluctant to undertake these investments and make the required adjustments to their apps and business models while there is uncertainty as to whether Apple may ultimately be allowed to reinstate a substantial fee on steered transactions. As a result, the increased competition that the Injunction sought to facilitate is not being fully realized, and Apple has not faced the pricing pressure that will result from robust competition, which allows Apple to continue extracting supracompetitive IAP fees. The timely

3

implementation of this Court's remand instructions is therefore vital to finally restoring competition and redressing Epic's injuries.[1]

Unsurprisingly, Apple asks this Court to put off that day of reckoning by staying the mandate and delaying the remand. But its motion provides no good cause to do so. The only conceivable purpose a stay could serve would be to avoid potentially unnecessary remand proceedings if Apple persuades the Supreme Court to intervene. But there is no genuine prospect of that happening. To start, even if the Supreme Court *did* grant certiorari and agree with Apple's view of the law, that would not eliminate the need for a remand or materially change the nature of that proceeding. Even if Apple prevails on its *CASA* argument and convinces the Supreme Court that the commission limitations should be applied to some smaller set of developers than presently allowed, remand will still be needed to apply this Court's guidance on the commission. Likewise, Apple's objection to this Circuit's "spirit of the injunction" contempt standard has no bearing on the remand proceedings, and Apple does not even explain how it could. Apple challenges the

---

[1] For example, *Apple Magazine* predicted that "[d]evelopers will likely await the next phase of proceedings where that [steering] fee structure is hammered out, alongside any design or interface rules governing how links appear relative to Apple's in-app purchase buttons" and consequently that "[c]onsumers are unlikely to see immediate change." *Apple Magazine*, "Apple Can Charge Commission on External Payment Links After Appeals Court Modifies Epic Ruling" (December 18, 2025), *available at* http://applemagazine.com/apple-app-store-external-payment-fees/.

use of the Injunction's spirit to support the finding of contempt, not the remand instructions, but that has no prospect of avoiding remand because this Court found Apple to have violated the letter of the Injunction, not simply its spirit.

Accordingly, a stay would serve no purpose other than delay. And the harm of that delay far outweighs any speculative benefit that withholding the mandate might achieve.

Nor does Apple present a substantial question likely to attract Supreme Court review. The Court has already denied certiorari on Apple's objections to the scope of the Injunction once, and nothing in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), warrants a different result the second time around. And this Court's invocation of the "spirit of the injunction" was entirely consistent with Supreme Court precedent and the law of other circuits—and, as noted, was part of a broader finding that Apple violated both the spirit and the letter of the Injunction. The motion should be denied.

## ARGUMENT

This Court may grant a stay of the mandate pending certiorari if "the petition would present a substantial question and . . . there is good cause for a stay." Fed. R. App. P. 41(d)(1); *see* Cir. R. 41-1. Under this Court's interpretation of that standard, to "obtain a stay of the mandate pending certiorari under Federal Rule of Appellate Procedure 41(d), [the movant] is required to show 1) a

reasonable probability that four members of the Court would consider the underlying issue sufficiently meritorious for the grant of certiorari; 2) a significant possibility of reversal of the lower court's decision; and 3) a likelihood that irreparable harm will result if that decision is not stayed." *In re Google Play Store Antitrust Litig.*, 152 F.4th 1078, 1081 (9th Cir. 2025) (cleaned up). A motion to stay the mandate will also be denied "if the Court determines that the petition for certiorari would be frivolous or filed merely for delay." Cir. R. 41-1.[2]

In this case, Apple fails to provide either good cause or a substantial question that warrants staying the mandate, which would only further delay final resolution of this already long-delayed case and reward Apple for its recalcitrance.

## I. Apple Has Not Shown Good Cause For A Stay.

As discussed below, Apple has failed to identify any substantial question for Supreme Court review. But this Court need not even reach that question in this unusual case. Even if the motion *had* presented a substantial question, Apple presents no good cause for a stay because the questions it will present to the Supreme Court have no bearing on the remand proceedings it asks this Court to delay.

---

[2] This Court's recent decision in *In re Google* thus clarifies that it is not sufficient that the movant presents arguments that are not "frivolous." *Contra* Mot. 3.

**A.      Any Supreme Court Review Of Apple's Questions Will Not Avoid The Need For A Remand Or Change The Nature Of Those Proceedings.**

Apple offers two reasons to stay the mandate. Neither withstands scrutiny.

Apple starts by claiming that "[i]f the mandate issues now, Apple will be required to change its business model," Mot. 2, which could include being limited to "charging a de minimis commission on linked-out purchases," *id*. 8. That claim is untrue.  Apple has not asked this Court to stay the district court's remedial order, so staying the mandate would simply leave in place the current prohibition on fees.  Thus, Apple will not be charging any commissions while it seeks certiorari whether this Court grants the stay or not.  Instead, staying the mandate would only serve to delay the day on which Apple may be allowed to *resume* charging some fees for linked-out purchases.

One might wonder why Apple would be asking this Court for a stay that may postpone the resumption of its commissions.  But the answer is straightforward:  Apple knows that the current uncertainty over Apple's commission structure is deterring developers from exercising their steering rights and therefore allowing Apple to continue charging supracompetitive commissions on IAP.  Apple seeks to delay the remand proceedings that will give developers the certainty they crave to start using competing payment solutions.

7

Apple claims to the contrary that it simply wants to avoid "needlessly wast[ing] both judicial and party resources" on "complex and costly" remand proceedings if its appeals to the Supreme Court are successful. Mot. 9. But that argument fails because neither of the questions Apple proposes to present to the Supreme Court will meaningfully affect the need for, or nature of, the remand proceedings.

Start with Apple's objections to the scope of the Injunction. Even if accepted, those arguments go only to the size and composition of the group of developers protected by the Injunction. *See* Mot. 7 (objecting only that the Injunction "extends to all developers nationwide, including developers who will never use the Epic Games Store"). The district court will still need to resolve on remand what the commission restrictions will be. And in deciding that question, the district court need not know how many, or which, developers will be covered by the Injunction. *See* Op. 41-42 (describing factors to consider, none of which turns on the number or identity of the protected developers).

Apple will also ask the Supreme Court to decide whether this Court erred in "rel[ying] on the injunction's 'spirit' to affirm the district court's decision holding Apple in contempt." Mot. 4. But the answer to that question, too, will not avoid the need for a remand. Contrary to Apple's claims, this Court found that Apple's commission violated the *text* of the Injunction, not simply its spirit. In the

8

relevant section of the Opinion, this Court began with the Injunction's language, noting that under its provisions "Apple could not 'prohibit[] developers from'" steering. Op. 26 (quoting Injunction). The Court then explained that "the parties' dispute turns on the meaning of the key word 'prohibit,' which can be interpreted to mean '[t]o prevent, preclude, or severely hinder.'" Op. 26 (quoting Prohibit, Black's Law Dictionary (12th ed. 2024)). Turning then to the commission, the Court explained that under this definition, it was necessary to assess "whether Apple's commission has a prohibitive effect, *in violation of the Injunction*." *Id*. (emphasis added). The Court "agree[d] with the district court that it does." *Id*. It explained that once "Apple's commission on those [linked-out] transactions was large enough, no rational developer would offer them. *The Injunction prohibits* that kind of conduct." Op. 27 (emphasis added).

The Court thus could not have been clearer: Apple's link-out commission was "in violation of the Injunction," not simply its spirit. A commission with a "prohibitive effect" falls easily within the dictionary definition of "prohibit" given its tendency to "severely hinder" steering. The section of the opinion affirming the contempt finding does not even mention the "spirit of the injunction" or the relevant caselaw on that theory of contempt, such as *Sea Shepherd*. *See* Op. 26-28. Thus, Apple's "spirit of the Injunction" argument

9

cannot disturb this Court's contempt finding and the need for a remand to determine the appropriate commission-related remedy.

Apple's counterarguments fail. It points out that the Injunction does not expressly mention commissions. Mot. 1. But Apple's commission still violated the text of the Injunction by "prohibiting" steering, without regard to the means by which Apple effected that prohibition. *See infra* pp. 16-20. As the panel explained, the Injunction's text bars Apple from "prohibiting" steering by *any* means, which includes imposing a fee on steering that is so high that "no rational developer would" undertake it. Op. 27. Apple also points to a footnote in the remedies section of the opinion in which this Court rejected the possibility that the district court could modify the Injunction on remand to prohibit any fee at all. *See* Mot. 1, 4 (citing Op. 40 n.9). In that context, the Court observed that "the UCL violation . . . does not require that all commissions and all fees be prohibited" because "the spirit of the Injunction contemplates the prohibitive commissions, and the text of the Injunction does not address commissions at all." Op. 40 n.9. All that means is that neither the text *nor* the spirit of the Injunction prohibits Apple from charging *any* commission. But that is entirely consistent with the Court's prior finding that Apple's commission violated the text of the Injunction by prohibiting steering.

10

Importantly, Apple's question to the Supreme Court addresses only the "proper standards for assessing civil contempt" in the first place, Mot. 4, not the scope of a court's authority to issue sanctions, or modify an injunction, in the face of proven contempt. The issues are distinct. *See, e.g.*, *Chrysler Corp. v. United States*, 316 U.S. 556, 562 (1942) (when deciding whether to modify an injunction, the "test to be applied is whether the change served to effectuate or to thwart the basic purpose of the original . . . decree"); *Melendres v. Maricopa Cnty.*, 897 F.3d 1217, 1221 (9th Cir. 2018) ("Courts have a great deal of flexibility and discretion in choosing the remedy best suited to curing the violation" when the defendant, like Apple, "has a history of noncompliance with prior orders.").

Indeed, this Court's remand instructions allow the district court to consider whether to modify or clarify the Injunction in light of Apple's conduct. Op. 41. The power to modify an injunction in light of changed circumstances is at least as broad as the court's contempt authority and does not depend on any finding of contempt. *See Brown v. Plata*, 563 U.S. 493, 542 (2011) ("The power of a court of equity to modify a decree of injunctive relief is long-established, broad, and flexible." (citation omitted)); *Chrysler Corp.*, 316 U.S. at 562 (district court may modify injunction to "effectuate . . . the basic purpose of the original . . . decree"). The district court would still have the power to modify the Injunction on remand, even without any contempt finding.

**B.    A Stay Would Inflict Irreparable Harm On Epic And The Public, Not On Apple.**

For the reasons just explained, staying the mandate is unnecessary to prevent irreparable harm to Apple.  In contrast, this Court affirmed in the last appeal that Apple's unlawful restrictions on steering were causing Epic irreparable injury in its roles as the provider of an app store and a payment solution.  *See Apple I*, 67 F.4th at 1003.  *Three years later*, Epic continues to suffer the same injuries while developers who would otherwise be open to using Epic's competing services await final word on what commissions Apple can charge.  The delay in restoring competition also continues to prop up Apple's supracompetitive commissions on sales through its own in-app payment solution.  That inflicts a continuing injury on Epic in its capacity as a developer with millions of users who make in-app purchases using Apple's payment solution.  And because consumers ultimately bear much of the cost, a stay is not in the public interest either.

This Court already gave Apple the benefit of the doubt once, staying its original mandate while Apple sought review of the liability judgment and initial Injunction.  This time is different.  Apple comes to the Court having lost those appeals and defied the Court's judgment.  While it may be "often the case" that the Court will stay its mandate, the equities in this case bring it outside any "general practice" that may apply in other contexts.  *Cf.* Mot. 3 (citations omitted).

## II. Apple Does Not Present A Substantial Question For Supreme Court Review.

Apple also fails to identify any substantial objection to this Court's decision that has a "reasonable probability" of garnering Supreme Court review, much less a "significant possibility of reversal." *In re Google Play Store Antitrust Litig.*, 152 F.4th at 1081.

### A. The Supreme Court Has Already Refused To Consider Apple's Objections To The Scope Of The Injunction.

This Court need not speculate how the Supreme Court will view Apple's objections to the scope of the Injunction—Apple previously sought certiorari on the same ground and the Court denied the petition. *See* Petition for a Writ of Certiorari, No. 23-344 (U.S. Sept. 28, 2023) (posing question: "Whether, in the absence of class certification, a federal court is precluded from entering an injunction that extends to nonparties without a specific finding that such relief is necessary—as to all nonparties—to redress any injury to the individual plaintiff."); 144 S. Ct. 682 (2024) (denying petition). The Court's "recent denial" in this same case "demonstrates quite clearly the unlikelihood that four Justices would vote to grant review on this issue." *Packwood v. Senate Select Committee on Ethics*, 510 U.S. 1319, 1320 (1994) (Rehnquist, C.J., in chambers).

Nothing in the Supreme Court's subsequent decision in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), suggests the second try will be more successful

13

than the first. *Contra* Mot. 7. *CASA* reaffirmed the "complete relief" principle this Court applied in the last appeal, citing the same authority. *See CASA*, 606 U.S. at 851-53 (citing *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)); *Apple I*, 67 F.4th 946, 1002 (9th Cir. 2023) (same). Apple disputes only this Court's application of this principle to this particular litigation, as it did in its prior petition. Mot. 2. That objection has no merit, for the reasons this Court has repeatedly given. And, in any event, a "petition for a writ of certiorari is rarely granted when the asserted error consists of erroneous factual findings or the misapplication of a properly stated rule of law." Sup. Ct. R. 10(b).

Apple's objection is also waived. Apple argues that the Injunction should have been limited to developers who "link out or are reasonably likely to link out to the Epic Games Store." Mot. 2. But Apple never requested that the district court adopt this middle ground. Instead, in both the initial litigation and the present contempt proceeding (both in the district court and on appeal), Apple made a strategic all-or-nothing choice to try to limit the Injunction "to Epic and its affiliates" alone. *See, e.g.*, Apple's Motion for Relief from the Judgment at 2, Dkt. 1018, No. 20-cv-5640-YGR (N.D. Cal. Sept. 30, 2024). Apple raised its narrower argument for the first time in its Reply Brief to the panel here. *Compare* Opening Br. 41 n.4 *and* Apple's Rule 28(j) Letter, Dkt. 108.1, *with* Reply Br. 32. As this Court noted, that is far too late. "When a party could have raised an issue

14

in a prior appeal but did not, a court later hearing the same case need not consider the matter." Op. 43 (quoting *United States v. Nagra*, 147 F.3d 875, 882 (9th Cir. 1998)); *see also Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) (arguments not raised below or in opening brief deemed waived). The Supreme Court is unlikely to grant certiorari to consider an argument Apple failed to preserve.

The objection is also insubstantial on its own terms. This Court "agree[d] with Epic" that Apple's proposed limitation "would not facilitate the competition necessary to grant Epic complete relief." Op. 52. Epic had explained that Apple requires Epic to offer its users the option of using IAP to purchase digital goods within apps, and Epic must pay Apple's IAP commission when they do so. *See* Reply on Motion for Judicial Notice at 2-3, Dkt. 155, No. 25-2935 (filed Oct. 14, 2025). And the evidence proved that the IAP commissions are supracompetitive because Apple's anti-steering measures had insulated IAP from competition. *Id.*; *see also Apple I*, 67 F.4th at 1001; *Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898, 1054-57 (N.D. Cal. 2021). The narrower injunction Apple proposes would leave that harm unremedied. The only way to lower Epic's costs and fully redress Epic's injury as an app developer is to allow all developers to steer to lower-priced out-of-app payment methods in order to generate the competitive pressure needed to discipline Apple's commissions. *See* Op. 52;

15

*Apple I*, 67 F.4th at 1003 (Apple's anti-steering rules "increas[ed] the costs of Epic's subsidiaries' apps").

### B. Apple's "Spirit of the Injunction" Objection Is Insubstantial.

Apple also contends that the panel's invocation of the spirit of the Injunction to find Apple in contempt presents a substantial question for Supreme Court review because it conflicts with the civil contempt standards applied in the other circuits. That is wrong as well. This Court's decision was entirely consistent with the teachings of the Supreme Court and the law of other circuits. Further, because Apple violated both the text and the spirit of the Injunction, Apple's challenge will not affect the outcome of this case, making its petition an inappropriate vehicle for resolving the issues it identifies.

This case also does not implicate the general question of whether a court can *ever* look to the spirit of an injunction; it involves Apple's *intentional* attempts to defeat the decree through conduct not expressly enumerated therein. This Court affirmed the district court's decision to "look to the spirit of the injunction when a litigant applies a *dubiously literal interpretation* of the injunction, particularly where that interpretation is *designed to evade* the injunction's goals." Op. 19 (quoting *Apple II-Dist.Ct.*, 781 F. Supp. 3d at 990-91) (emphases added). In other words, this Court applied Justice Frankfurter's observation that the text of every injunction contains an "implicit command to

16

refrain from action designed to defeat it." *See* Op. 29 (quoting *NLRB v. Deena Artware, Inc.*, 361 U.S. 398, 413 (1960) (Frankfurter, J., concurring)).

The principle that courts reject dubiously literal interpretations advanced by contemnors flows directly from the Supreme Court's decision in *McComb v. Jacksonville Paper Co.*, 336 U.S. 187 (1949), a case that Apple's motion neither acknowledges nor seeks to challenge. There, the Court rejected the claim, which Apple repeats here, that "civil contempt is avoided . . . by showing that the specific plan adopted by the [defendant] was not enjoined" by the express text of an injunction. *Id*. at 192; *see also Taggart v. Lorenzen*, 587 U.S. 554, 561-62 (2019) (citing *McComb* as an example of a case suggesting that "civil contempt sanctions may be warranted when a party acts in bad faith"). Instead, the Court held, when the contemnor "took a calculated risk when under the threat of contempt," and "where as here the aim is remedial and not punitive, there can be no complaint that the burden of any uncertainty in the decree is on [Apple's] shoulders." *McComb*, 336 U.S. at 193.

Following that precedent in this case, the Court properly held that Apple's conduct—internally modeling the precise level of friction needed to prevent any viable alternative to its in-app purchasing system, then constructing pretextual justifications for imposing frictions that surpassed that level—not only violated the plain text of the Injunction ("prohibiting" steering by "severely

17

hinder[ing]" the practice, *see* Op. 26-27) but also transgressed *McComb*'s anti-evasion principle, a principle that stands independently of *Sea Shepherd*'s reliance on "the spirit of the injunction," Op. 27-28.  And even when it "assume[d] *arguendo* that Apple did not violate the strict letter of the Injunction" with some of its link design restrictions, the Court affirmed the contempt finding because Apple's actions were "designed to defeat" the Injunction, Op. 29, and had the "practical effect" of "prohibit[ing] linked-out purchases," Op. 30; *see also id.* ("Apple designed the scare screen to prevent external purchases"); Op. 31 ("Apple designed the purchasing experience to make external links as hard to use as possible.").[3]

Apple cites no case from any other circuit accepting such evasions or calling into question *McComb*'s anti-circumvention principle.  Apple's alleged circuit conflict rests instead on passages in factually distinguishable cases requiring that a contemnor's conduct violate "a clear and unambiguous order of the court" based on the "four corners" of the decree.  Mot. 5 (citations omitted).  But that formulation is in harmony with the anti-evasion principle, which both the Supreme Court and this Court have embraced alongside the requirement that injunctions be

---

[3] Although the Court did not reach the question, that same conduct falls easily within the dictionary definition of "prohibiting" steering by "severely hinder[ing]" its exercise.  *See* Epic Br. 25-27.

18

sufficiently clear. *See, e.g.*, *Taggart*, 587 U.S. at 561-62 (acknowledging that "basic fairness require[s] that those enjoined receive explicit notice of what conduct is outlawed before being held in civil contempt" but also reaffirming *McComb*) (cleaned up); *Institute of Cetacean Research v. Sea Shepherd Conservation Society*, 774 F.3d 935, 953-54 (9th Cir. 2014) (recognizing the "well-established rule that a 'vague' order may not be enforced" through civil contempt but also embracing *McComb*'s anti-circumvention rule).

At the same time, circuits Apple cites as limiting contempt to violations of the clear and unambiguous text apply *McComb*'s anti-circumvention principle as well. *See, e.g.*, *Goya Foods, Inc. v. Wallack Mgmt. Co.*, 290 F.3d 63, 75-76 (1st Cir. 2002) (applying *McComb* and holding that parties who know of a decree and act unilaterally rather than seek clarification "act[] at their peril"); *Alley v. U.S. Dep't of Health & Hum. Servs.*, 590 F.3d 1195, 1205 (11th Cir. 2009) (rejecting "narrowest conceivable interpretation" of an injunction and holding that an enjoined party cannot "assert 'an overly literal or hypertechnical reading' of an injunction in order to slip the restraints that it imposes" (quoting *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1548 n.89 (11th Cir. 1986) (citing *McComb*, 336 U.S. at 192-93))); *In re Door*, 195 F.2d 766, 770 (D.C. Cir. 1952) (holding defendant in criminal contempt for "consciously act[ing] to circumvent our impounding order"); *John B. Stetson Co. v. Stephen L. Stetson Co.*, 128 F.2d 981, 983 (2d Cir. 1942)

19

("In deciding whether an injunction has been violated it is proper to observe the objects for which the relief was granted and to find a breach of the decree in a violation of the spirit of the injunction, even though its strict letter may not have been disregarded." (collecting authorities)).

Accordingly, there is no circuit conflict, no error, and no reason to think that Apple has any real prospect of convincing the Supreme Court to intervene and reverse this Court's decision.

## CONCLUSION

The motion should be denied.

20

April 6, 2026

Respectfully submitted,

/s/ *Gary A. Bornstein*

Gary A. Bornstein
Yonatan Even
Lauren A. Moskowitz
Michael J. Zaken
M. Brent Byars
CRAVATH, SWAINE & MOORE LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
(212) 474-1000

Paul J. Riehle
FAEGRE DRINKER BIDDLE
& REATH LLP
Four Embarcadero Center
San Francisco, CA 94111
(415) 591-7500

Kevin K. Russell
Daniel Woofter
RUSSELL & WOOFTER LLC
1701 Pennsylvania Ave, NW, Ste. 200
Washington, DC 20006
(202) 240-8433

*Counsel for Plaintiff-Appellee Epic Games, Inc.*

21

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Circuit Rule 27-1(1)(d) and Circuit Rule 32-3 because it contains 4,624 words, excluding the parts of the brief exempted by Fed. R. App. P. 27(a)(2)(B) and Fed. R. App. P. 32(f).

I certify that this brief complies with the typeface requirements of Fed. R. App. P. 27(d)(1)(E).


April 6, 2026                                    /s/ *Gary A. Bornstein*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system on April 6, 2026. All participants in the case are registered ACMS users, and service will be accomplished by the appellate ACMS system.

/s/ *Gary A. Bornstein*