**No. 25-2935**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

**EPIC GAMES, INC.,**

*Plaintiff-ctr-defendant - Appellee,*

v.

**APPLE INC.,**

*Defendant-ctr-claimant - Appellant.*

Appeal from the United States District Court
for the Northern District of California
No. 4:20-cv-05640-YGR (Yvonne Gonzalez Rogers, District Judge)

## APPELLANT APPLE INC.'S OPPOSITION TO EPIC'S MOTION TO RECONSIDER ORDER STAYING THE MANDATE

Mark A. Perry
Zachary D. Tripp
Joshua M. Wesneski
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW, Suite 600
Washington, DC 20036
(202) 682-7511

Cynthia E. Richman
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, NW
Washington, DC 20036
(202) 955-8500

Theodore J. Boutrous Jr.
Daniel G. Swanson
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 229-7000

April 9, 2026

Gregory G. Garre
Roman Martinez
Soren J. Schmidt
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200

Ben Harris
Kristin C. Holladay
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

Sarah M. Ray
Nicholas Rosellini
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600

*Counsel for Apple Inc.*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................1

ARGUMENT ...................................................................................................2

CONCLUSION.................................................................................................9

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Armstrong v. Brown*,
  768 F.3d 975 (9th Cir. 2014) .................................................................5

*Bryant v. Ford Motor Co.*,
  886 F.2d 1526 (9th Cir. 1989) ...............................................................2

*Epic Games, Inc. v. Apple, Inc.*,
  73 F.4th 785 (9th Cir. 2023) ..................................................................1

*In re Google Play Store Antitrust Litigation*,
  152 F.4th 1078 (9th Cir. 2025) ..............................................................2

*Illinois v. Gates*,
  462 U.S. 213 (1983).................................................................................3

*McComb v. Jacksonville Paper Co.*,
  336 U.S. 187 (1949).................................................................................2

*Packwood v. Senate Select Committee on Ethics*,
  510 U.S. 1319 (1994)...............................................................................3

*Tibble v. Edison International*,
  843 F.3d 1187 (9th Cir. 2016) ...............................................................3

*Trump v. CASA, Inc.*,
  606 U.S. 831 (2025).................................................................................3

*United States v. Armour & Co.*,
  402 U.S. 673 (1971).................................................................................5

*United States v. Pete*,
  525 F.3d 844 (9th Cir. 2008) .................................................................2

*United States v. Saccoccia*,
  433 F.3d 19 (1st Cir. 2005).....................................................................2

## OTHER AUTHORITIES

9th Cir. R. 27-10 .........................................................................................1

**Page(s)**

Zac Hall, *Fornite becomes top free game on U.S. App Store*, 9to5Mac (May 21, 2025), https://9to5mac.com/2025/05/21/fortnite-becomes-top-free-game-on-u-s-app-store-overnight-but-nothing-is-settled/ ......................7

Sup. Ct. R. 13.1 ...........................................................................................7

**INTRODUCTION**

There is no reason for this Court to take the extraordinary step of reconsidering, and reversing, its order granting a stay of the mandate pending disposition of a petition for certiorari in this case. *See* 9th Cir. R. 27-10. The Court's order is squarely in line with the Court's "general practice of granting a motion for a stay if the arguments presented therein are not frivolous." *Epic Games, Inc. v. Apple, Inc.*, 73 F.4th 785, 785 (9th Cir. 2023) (M. Smith, J., concurring in the granting of the motion for a stay of the mandate pending the filing of a petition for certiorari). Epic's extended preview of its brief in opposition to certiorari takes nothing away from the substantial nature of the questions presented—the relevant question here. And Epic's arguments about alleged harms to it or others provide no basis for reconsidering this Court's stay order. Apple's interest here is not "delay," Epic's Opp. to Mot. to Stay Mandate ("Opp.") 1, ECF No. 189.2; it is securing the opportunity for Supreme Court review of the substantial questions presented when it matters—*before* the district court launches into the additional proceedings called for by this Court's decision. This Court correctly recognized in its initial order that—even if one disagrees with Apple's arguments or believes a certiorari petition ultimately would be unsuccessful—Apple is entitled to a stay pending disposition of

1

its certiorari petition under this Court's ordinary practice.[1]

## ARGUMENT

1. The questions presented are plainly substantial. As to the civil contempt standard, the circuit split identified in Apple's motion is evident: Other circuits impose an exacting rule requiring that the "words" of a court order must have "clearly and unambiguously forbidden *the precise conduct on which the contempt allegation is based.*" *United States v. Saccoccia*, 433 F.3d 19, 28 (1st Cir. 2005); *see also* Apple's Mot. to Stay the Mandate ("Mot.") 5, ECF No. 187 (citing similar cases in the D.C., Second, and Eleventh Circuits). Epic does not even acknowledge *Saccoccia*'s strict formulation, never mind try to show that it is satisfied here. There is, in short, a circuit split. And while Epic attempts to sidestep that split by pointing (Opp. 18) to *McComb v. Jacksonville Paper Co.*, 336 U.S. 187 (1949), Epic ignores that in *McComb*, the respondents violated the "terms" of the injunction itself, *id.* at 192. *See* Apple's Reply Brief ("Reply") 20-21, ECF No. 148.

---

[1] Epic cites language from an unsigned order in *In re Google Play Store Antitrust Litigation*, 152 F.4th 1078 (9th Cir. 2025). That order did not purport to change the standard for staying the mandate in this Circuit; indeed, it reaffirmed this Court's longstanding practice of "'often'" staying the mandate when a party seeks certiorari. *Id.* at 1081 (quoting *United States v. Pete*, 525 F.3d 844, 850 (9th Cir. 2008)); *see Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1528 (9th Cir. 1989) (disclaiming that "exceptional circumstances" are required).

As to the injunction's scope, Epic emphasizes that "Apple previously sought certiorari on the same ground and the Court denied the petition." Opp. 13.[2] But the mere fact that the Supreme Court granted certiorari to address a similar issue in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), underscores that the issue is cert-worthy. Moreover, in *CASA*, the Supreme Court elaborated on the complete relief principle and heightened the burden a party must show to justify relief that extends to non-parties. *See id.* at 853-54; Mot. 7. Epic claims that "Apple's objection is . . . waived." Opp. 14. That is wrong: This Court fully addressed Apple's argument under *CASA* without any mention of waiver or forfeiture, *see* Op. 50-53, meaning that the issue was both "pressed" and "passed on" by this Court, *see Illinois v. Gates*, 462 U.S. 213, 221-24 (1983). The reason the Court did not address forfeiture or waiver is that Epic never made that argument. In other words, the problem here is *Epic's*—not Apple's. *See Tibble v. Edison Int'l*, 843 F.3d 1187, 1196 (9th Cir. 2016) (M. Smith, J.) (en banc) (holding that a party "forfeited its forfeiture argument").

Nor can Epic justify extending the injunction even to those developers that do not wish to link out to the Epic Games Store. Epic claims that "[t]he only way to lower Epic's costs and fully redress Epic's injury as an app developer is to allow all

---

2   Epic's reliance on Chief Justice Rehnquist's opinion in *Packwood v. Senate Select Committee on Ethics*, 510 U.S. 1319 (1994), is misplaced. There, the Supreme Court had denied certiorari on the same question mere *weeks* earlier and there was not intervening Supreme Court decision on point.

3

developers to steer . . . in order to generate the competitive pressure needed to discipline Apple's commissions." Opp. 15. That is a different harm than the "informational harm" that this Court identified as the sole injury stemming from the UCL violation at issue. In any event, Epic—which bears the burden on this issue, *see CASA*, 606 U.S. at 853-54—has not offered any evidence buttressing the counter-intuitive theory that Epic somehow benefits when Spotify allows users to link-out to Spotify's own independent payment method, or when Microsoft sets up a competing games store for developers that do not wish to use the Epic Games Store—even though none of that has anything to do with Epic's own platform. *See* Reply 31. *CASA* sets forth a far higher burden and includes no carve-out for courts enforcing state laws targeted at "incipient" antitrust violations. *Contra* Op. 52.

Questions remain after *CASA*. This case provides an excellent opportunity in which to further clarify the requirements recognized in *CASA*, given the breadth of the injunction at issue and extraordinary implications of this relief on one of the most innovative and important markets in the country. Regardless of whether the Supreme Court ultimately grants review, the questions are at least substantial.

2. There also is good cause for a stay. Most obviously, a stay would permit the Supreme Court to decide whether to review the questions presented—*before* the district court undertakes the evidentiary and other proceedings called for by this Court's decision. The nature and shape of those proceedings will plainly be dictated

by whether this Court's decision, or a Supreme Court decision, governs.  And given the enormous economic stakes of this case—which Epic itself routinely touts—there is every reason to simply stay such proceedings, and any revised injunction, until the Supreme Court has decided whether to review this case.

Epic claims a remand proceeding will look the same regardless of whether the Supreme Court upholds the district court's civil contempt finding.  That is incorrect.  This Court's suggestions for how the district court might proceed on remand are premised on the district court holding Apple in civil contempt.  *See* Op. 41-42.  If the Supreme Court reverses the civil contempt finding, even if only as to the commission, the case will be entirely different.  Epic might still seek to modify the injunction, but only after "full litigation" addressing whether any "additional relief" is "desirable to prevent the evils aimed at."  *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971).  And Apple will be entitled to "notice and an opportunity to be heard" regarding next steps, including if the injunction should be modified *at all*.  *Armstrong v. Brown*, 768 F.3d 975, 979-80 (9th Cir. 2014).  Moreover, removing the taint of a contempt finding and this Court's related decision will necessarily impact any further proceedings, particularly given the way Epic has sought to leverage that finding and both this Court and the district court emphasized it.

A remand proceeding would also look different if the Supreme Court limits the scope of the injunction under *CASA*.  Of course the case is different if the

5

injunction does not apply to *all* developers nationwide. For example, the rate at which a commission is "prohibitive" may be different for different developers—the costs and benefits of linking out turn on multiple factors that are not uniform across all developers. *See* Op. 27 (looking to whether a "rational developer" would implement linked-out purchases); Opp. 3 (noting that some developers may "self-supply payment services" and others might "enter into contractual relationships with competing payment solutions"). It would be premature, therefore, for the district court to commence remand proceedings without clarity regarding whether the injunction can enjoin Apple's conduct with respect to non-party developers that do not even wish to link out to the Epic Games Store. In addition, the settlement dynamics are different depending on whether an injunction applies with respect to non-parties or the plaintiff alone.

Epic argues that staying the mandate will delay "restoring competition" because developers will "await final word on what commissions Apple can charge" before implementing linked-out purchases. Opp. 12; *see also id.* at 1 (claiming that "most developers are reacting to the uncertainty" of continued judicial review "by refraining from steering"). But this case—and the only violation found in this case—concerns remedying an *informational harm*. Op. 40 n.9. Whatever its aspirational goals, Epic is wrong in arguing that the question in this UCL-based,

6

informational-harm case on remand is how to craft a nationwide injunction that will "restor[e] competition" in the online marketplace. Opp. 4.

In any event, Epic concedes that "Apple will not be charging any commissions while it seeks certiorari." *Id.* at 7; *see also* Op. 42 (explaining that Apple "should not be able to charge any commission for linked-out purchases until such time as the district court has approved an appropriate fee"). And any claimed "uncertainty" has not stopped *Epic itself*—the relevant actor here—from taking full advantage of Apple's interim zero-percent commission. Epic implemented linked-out purchases shortly after the district court's civil contempt ruling. *See* Zac Hall, *Fornite becomes top free game on U.S. App Store*, 9to5Mac (May 21, 2025), https://9to5mac.com/2025/05/21/fortnite-becomes-top-free-game-on-u-s-app-store-overnight-but-nothing-is-settled.

Epic asserts harms to *other* developers. Yet, Epic offers no factual support to show how many developers are or are not linking out—whether due to "uncertainty" or for any other reason, like a preference for IAP. Indeed, Epic's new argument that "uncertainty" caused by ongoing legal proceedings is sufficient to prevent developers from linking out is contrary to its prior argument *throughout the contempt proceedings* that Apple's commission was the reason developers did not adopt the link entitlement. Staying the mandate maintains the zero-commission rule while this appeal progresses. That prevents prejudice to Epic (and, indeed, leaves the district

court's initial injunction in place) and ensures that any remand proceedings follow the proper legal framework, reducing the need for yet another appeal.

3. Finally, Epic fails to offer any basis for this Court to short-circuit the normal certiorari process. The Supreme Court's rules provide parties 90 days from the entry of the judgment to petition for certiorari. *See* Sup. Ct. R. 13.1. Epic's request that Apple be required to file a petition by May 18, 2026, would cut that time almost in half. Mot. to Reconsider Order Granting Stay 3, ECF No. 189.1. That not only would compromise Apple's ability to prepare a petition but also jeopardize if not, in some cases, eliminate the ability of amici to participate. There is no basis for this Court to rewrite the Supreme Court's own rules and deadlines for filing certiorari petitions, nor for this Court to attempt to expedite a Supreme Court decision by a few months. The question is whether to grant a stay pending certiorari—which this Court already correctly answered in its order—not whether this Court should remark the Supreme Court's certiorari process.

*　　*　　*

In short, Epic offers no reason for the Court to reconsider its stay order. Its arguments for why certiorari is not warranted should be directed to the Supreme Court. But it has provided no reason for this Court to take the extraordinary step of reconsidering, and overturning, its justly issued stay order.

8

## CONCLUSION

For the foregoing reasons, Epic's reconsideration motion should be denied.

Dated:  April 9, 2026

Mark A. Perry
Zachary D. Tripp
Joshua M. Wesneski
WEIL, GOTSHAL & MANGES LLP
2001 M Street, NW
Suite 600
Washington, DC 20036
(202) 682-7511

Cynthia E. Richman
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, NW
Washington, DC 20036
(202) 955-8500

Theodore J. Boutrous Jr.
Daniel G. Swanson
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 229-7000

Respectfully submitted,

*s/ Gregory G. Garre*
Gregory G. Garre
Roman Martinez
Soren J. Schmidt
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200

Ben Harris
Kristin C. Holladay
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

Sarah M. Ray
Nicholas Rosellini
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600

*Counsel for Defendant-ctr-claimant - Appellant Apple Inc.*