No. 25-2935

IN THE

# United States Court of Appeals for the Ninth Circuit

EPIC GAMES, INC.,

*Plaintiff-Appellee,*

v.

APPLE INC.,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of California
No. 4:20-cv-05640-YGR
Hon. Yvonne Gonzalez Rogers

## REPLY OF APPELLEE EPIC GAMES, INC. IN SUPPORT OF MOTION TO RECONSIDER ORDER STAYING THE MANDATE

Gary A. Bornstein
Yonatan Even
Lauren A. Moskowitz
Michael J. Zaken
M. Brent Byars
CRAVATH, SWAINE & MOORE LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
(212) 474-1000

Paul J. Riehle
FAEGRE DRINKER BIDDLE &
REATH LLP
Four Embarcadero Center
San Francisco, CA 94111
(415) 591-7500

Kevin K. Russell
Daniel Woofter
RUSSELL & WOOFTER LLC
1701 Pennsylvania Ave, NW, Ste. 200
Washington, DC 20006
(202) 240-8433

*Counsel for Plaintiff-Appellee Epic Games, Inc.*

**ARGUMENT**

Epic sought reconsideration of the Court's stay of the mandate, explaining that Apple's original motion (which Epic did not get a chance to oppose) misrepresented the grave implications of a stay. Any delay in the remand proceedings will suppress steering because developers are waiting to see what commission Apple will be allowed to charge before making the investments needed for steering. That, in turn, injures Epic and the public in two ways. It diminishes steering to Epic. And it protects Apple's IAP from competition from other stores and payment solutions, sustaining supracompetitive commissions that Epic and, ultimately, the public must pay. Apple does not deny that is true. Indeed, the fact that Apple is fighting so hard to *delay* the remand proceedings (that will allow it to *resume* charging a commission) tells the Court all it needs to know about what is really going on.

Epic also demonstrated that a stay will provide no real benefit because even if successful, Apple's pleas to the Supreme Court will not avoid the need for a remand or meaningfully alter the nature of the evidence and arguments the district court will need to consider. So there is no reason why the remand and certiorari proceedings should not proceed in parallel. Apple offers no convincing response to this point, either. Indeed, its opposition only reaffirms the need for this Court to reconsider the stay of the mandate.

1

1. Apple fails to show "good cause" warranting a stay of the mandate. Apple does not claim that Supreme Court review of either of its questions presented would obviate the need for a remand. So the only question is whether certiorari would materially change those proceedings. Apple fails to identify a single, concrete way that it would.

Apple claims that the remand would be different if the Supreme Court restricted contempt to violations of the letter of an injunction. Apple Opp. to Recons. 5. But as Epic explained, this Court already found that Apple did violate the letter of the Injunction with respect to the only thing that seems to matter to Apple at this point: its commission rate. Epic's Opp. to Stay Mandate 9-10. Apple offers no response.

Moreover, Apple does not dispute that even if the Court reversed every contempt finding, this Court's remand instructions independently authorize the district court to consider whether to modify the Injunction in light of Apple's conduct (even if that conduct only circumvented the Injunction but was deemed not technically contemptuous). Epic's Opp. to Stay Mandate 11. Nor does Apple contest that the power to modify a litigated injunction is independent of any finding of contempt, or that the modification power extends at least as far (indeed, further than) the power to remedy contempt. *See id.* (citing *Brown v. Plata*, 563 U.S. 493, 542 (2011); *Chrysler Corp. v. United States*, 316 U.S. 556, 562 (1942)).

Instead, Apple implies that the remand proceedings this Court has ordered would be insufficient to permit a modification of the Injunction. Apple Opp. to Recons. 5. Apple claims that such modifications are permitted "only after 'full litigation' addressing whether 'additional relief' is 'desirable to prevent the evils aimed at.'" *Id.* (quoting *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971)). But Apple made the same argument to this Court in the merits briefing (Apple Br. 36), Epic explained why it was wrong (Epic Br. 54 n.8), this Court rejected it (*see* Op. 47-48 (explaining that *Armstrong* requires only "notice and an opportunity to be heard," which the district court provided) (quoting *Armstrong*, 758 F.3d at 979-80)), and Apple is not disputing this aspect of the Court's decision. The Court then expressly held that the district court could consider modification as part of the remand proceedings as an alternative to contempt sanctions. Op. 41.

Accordingly, even complete reversal of the contempt findings would not obviate the need for a remand or affect the district court's power to modify the Injunction in light of Apple's demonstrated ability to use a commission to thwart the Injunction's purpose. Op. 27; *see also Chrysler Corp.*, 316 U.S. at 562 (the "test to be applied … is whether the change served to effectuate or to thwart the basic purpose of the original … decree"). And Apple has not identified a single thing that would actually be different—not one piece of evidence it would present, not one argument it would make, not one issue the district court would need to

decide—if the court were limited to labeling its remand order a "modification" rather than a "contempt remedy".

Apple fares no better on *CASA*. Again, Apple does not claim that limiting the universe of developers protected by the Injunction will eliminate the need for a remand. And the only way in which it suggests the remand proceedings might be different is its newly minted and wholly unsupported claim that different developers may face different "prohibitive" commission thresholds. Apple Opp. to Recons. 6. But outside the very blunt distinction between developers who pay 30% and developers who pay 15% for IAP (the latter consisting of small developers and certain subscriptions), Apple has never imposed, or even proposed, a bespoke per-developer commission rate, and this Court's remand instructions do not contemplate such a remedy. *See* Op. 41-42. In short, this half-baked idea is just a made-for-litigation scheme to justify a stay Apple obtained under false pretenses.

2. For the reasons just discussed, a stay is not needed to avoid irreparable harm to Apple. In fact, Apple does not argue it would suffer irreparable harm absent a stay. The only "harm" Apple identifies is having to participate in remand proceedings, but as noted, those will arise whether a stay is issued or not. Nor can Apple credibly deny that a stay will irreparably harm Epic and the public.

4

Epic explained that many developers will reasonably hesitate to make the investments needed to implement steering while the remand is pending and Apple's commission rate remains in limbo. Epic Opp. to Stay Mandate 3-4 & n.1, 12. The Court need not take Epic's word for it. As industry observers predicted immediately after the panel's decision, "[d]evelopers will likely await the next phase of proceedings where that [steering] fee structure is hammered out" and, consequently, "[c]onsumers are unlikely to see immediate change." *See id*. at 4 n.1 (quoting Apple Magazine, "Apple Can Charge Commission on External Payment Links After Appeals Court Modifies Epic Ruling" (Dec. 18, 2025), http://applemagazine.com/apple-app-store-external-payment-fees/). That prediction has proven true.

For that reason, it makes no difference that Apple will not charge commissions pending certiorari. The uncertainty about the rates Apple will be able to charge after remand is now doing the work that Apple's 27% commission was doing before. The status quo does not avoid harm; it *is* the harm.

Apple nonetheless insists that the Injunction was never intended to restore competition, but only to redress an "informational harm" to Epic alone. Apple Opp. to Recons. 6. But that is wrong for the reason this Court has repeatedly given—Epic's injury can only be redressed by removing impediments so that developers *actually* steer customers, including to Epic. Op. 52. Moreover,

5

as Epic and this Court have explained, it is not sufficient that Epic be able to steer its own users to an alternative payment solution. *See* Reply on Motion for Judicial Notice at 2-3, Dkt. 155, No. 25-2935 (filed Oct. 14, 2025). Epic is injured as an app developer by the supracompetitive commissions Apple charges when Epic users use Apple's IAP. And those supracompetitive commissions can exist only because Apple has squelched competition to IAP from not only Epic, but from all developers offering for sale digital items for use in-app. *See* Epic Opp. to Stay Mandate 15-16. Apple does not claim otherwise. *See* Apple Opp. to Recons. 3-4.

Instead, Apple claims that the UCL and the Injunction are concerned only with "informational harm" without regard to competition. Apple Opp. to Recons. 6-7. But that informational harm matters because suppressing it harms competition and allows Apple to maintain higher IAP prices: Apple's anti-steering rules "threaten[ed] an incipient violation of an antitrust law" by "preventing informed choice among users of the iOS platform," which prevented competition from "driving the commission rate" and allowed Apple to extract "excessive operating margins." *Epic Games, Inc. v. Apple Inc.* ("*Epic I*"), 559 F. Supp. 3d 898, 1055, 1061 (N.D. Cal. 2021). To make an informed choice, users need not just to be *informed*, but also to have a viable *choice*. Accordingly, the Injunction was properly intended "to restore the information to consumers that is necessary to foster competition." Op. 52.

3.  Apple also fails to identify any substantial question with a reasonable probability of success in the Supreme Court.

To start, Apple makes no attempt to satisfy the standard for a stay of the mandate established by *In re Google Play Store Antitrust Litig.*, 152 F.4th 1078, 1081 (9th Cir. 2025).  Instead, Apple simply relegates that precedential decision to a footnote and brushes it aside.  *See* Apple Opp. to Recons. 2 n.1.  But this panel is bound by that precedent until it is revisited by the Court sitting *en banc* or the Supreme Court.[1]

Regardless, Apple presents no substantial question about contempt standards.  Apple confirms that none of its cases in its alleged circuit split addresses the intentional evasion this Court confronted here and the Supreme Court addressed in *McComb v. Jacksonville Paper Co.*, 336 U.S. 187 (1949).  Instead, Apple predicts that other circuits would come out differently in this case based on

---

[1] *See United States v. Kittson*, 161 F.4th 619, 633 (9th Cir. 2025) ("[A] panel opinion is binding on subsequent panels unless and until overruled by an en banc decision of this circuit" or unless an "intervening Supreme Court authority is clearly irreconcilable with our prior circuit authority.") (internal quotation marks and citation omitted).  The Court's recent articulation of the test accords with longstanding Supreme Court precedent.  *See, e.g.*, *White v. Florida*, 458 U.S. 1301, 1302 (1982) (noting it is "well established" that a stay pending certiorari requires "a reasonable probability that four members of the Court would consider the underlying issue sufficiently meritorious for the grant of certiorari or the notation of probable jurisdiction;" a "significant possibility of reversal of the lower court's decision;" and "a likelihood that irreparable harm will result if that decision is not stayed") (citation omitted).

the "formulation" they have used in other contexts. Apple Opp. to Recons. 2. But that prediction is not a basis for certiorari. Epic demonstrated that this Court and the Supreme Court have used similar formulations in cases not involving intentional evasion even while also applying *McComb*'s anti-circumvention principle when it applies. Epic Opp. to Stay Mandate 18-20. Apple has no response. *See* Apple Opp. to Recons. 2-3.

Apple does not even try to claim that its *CASA* objection implicates a circuit conflict. And its argument only confirms that its sole objection is to this Court's application of the settled "complete relief" principle to the facts of this particular and unusual case. *See* Apple Opp. to Recons. 3-4. Thus, while Apple says that "[q]uestions remain after *CASA*", *id.* at 4, it fails to identify a single general legal question implicated by this case, other than its dissatisfaction with this Court's fact-bound conclusion that complete relief to Epic requires a broad injunction.[2]

Apple's objection is meritless in any event. As discussed, this Court rightly understood that the UCL protects consumers' access to information as a

---

[2] Apple also does not dispute that it raised its present objection to the Injunction extending beyond developers who steer to Epic for the first time in this litigation in its reply brief in the second appeal. *See* Apple Opp. to Recons. 3. Instead, it inexplicably claims that Epic waived Apple's waiver, without explaining how Epic could have objected to an argument Apple raised for the first time in its *reply* brief.

means of protecting competition, so that any remedy must redress the damage to competition the violation inflicted. *See supra* pp. 5-6.

4. Finally, Epic requested in the alternative that any stay of the mandate be limited in a way that would permit the Supreme Court to decide whether to grant certiorari before its summer recess. Epic Mot. to Reconsider 3. Apple's complaint that this would "rewrite the Supreme Court's own rules and deadlines", Apple Opp. to Recons. 8, is baseless. The Supreme Court rules do not entitle Apple to first obtain a stay of remand proceedings *and then* proceed at a leisurely pace to file its certiorari petition. Limiting the stay of the mandate as proposed would simply give Apple the option to file sooner if it wants to delay remand proceedings pending certiorari. It is hardly unfair to require Apple to take measures to mitigate the harm its requested stay will inflict on Epic and the public.[3]

---

[3] At the very least, the Court should not extend the stay to include any extensions Apple might seek. *Cf.* Fed. R. App. P. 41(d)(2)(A) (default rule extending stay of mandate when petitioner obtains extension of time to file cert petition).

## CONCLUSION

The motion to reconsider should be granted and the stay of the mandate withdrawn. In the alternative only, if the Court is inclined to maintain the stay, the Court should revise its order to provide that the stay will automatically be lifted, and the mandate issue immediately, if Apple does not file its petition for certiorari by Monday, May 18, 2026.

April 10, 2026

Respectfully submitted,

/s/ *Gary A. Bornstein*

Gary A. Bornstein
Yonatan Even
Lauren A. Moskowitz
Michael J. Zaken
M. Brent Byars
CRAVATH, SWAINE & MOORE LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
(212) 474-1000

Paul J. Riehle
FAEGRE DRINKER BIDDLE
& REATH LLP
Four Embarcadero Center
San Francisco, CA 94111
(415) 591-7500

Kevin K. Russell
Daniel Woofter
RUSSELL & WOOFTER LLC
1701 Pennsylvania Ave, NW, Ste. 200
Washington, DC 20006
(202) 240-8433

*Counsel for Plaintiff-Appellee Epic Games, Inc.*

11

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Circuit Rule 27-1(1)(d) and Circuit Rule 32-3 because it contains 2,242 words, excluding the parts of the brief exempted by Fed. R. App. P. 27(a)(2)(B) and Fed. R. App. P. 32(f).

I certify that this brief complies with the typeface requirements of Fed. R. App. P. 27(d)(1)(E).

April 10, 2026          /s/ *Gary A. Bornstein*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system on April 10, 2026. All participants in the case are registered ACMS users, and service will be accomplished by the appellate ACMS system.

/s/ *Gary A. Bornstein*